GIBSON, DUNN & CRUTCHER LLP
HEATHER L. RICHARDSON, SBN 246517
    HRichardson@gibsondunn.com
LAUREN M. BLAS, SBN 296823
    LBlas@gibsondunn.com
ANGELA REID, SBN 323057
    AReid@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071
Telephone:     213.229.7000
Facsimile:     213.229.7520

GIBSON, DUNN & CRUTCHER LLP
JENNAFER M. TRYCK, SBN 291088
    JTryck@gibsondunn.com
MARCUS CURTIS, SBN 307726
    MCurtis@gibsondunn.com
3161 Michelson Drive
Irvine, California  92612
Telephone:     949.451.3800
Facsimile:     949.451.4220

*Attorneys for Defendant*
*United HealthCare Services, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Reyna Dempsey, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>                    Plaintiff,<br><br>          v.<br><br>Government Employees Insurance Company, United HealthCare Services, Inc., and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 5:24-cv-00425-EJD-VKD<br><br>**DEFENDANT UNITED HEALTHCARE SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Hearing:**<br>Date:       October 10, 2024<br>Time:       9:00 a.m.<br>Place:      Courtroom 4<br><br>Hon. Edward J. Davila |

1  **TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

2          PLEASE TAKE NOTICE that on October 10, 2024 at 9:00 a.m. before the Honorable Edward

3  J. Davila in Courtroom 4 of this Court, located on the 5th Floor of the Robert F. Peckham Federal

4  Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant United

5  HealthCare Services, Inc. will, and hereby does, move the Court for an order granting its Motion to

6  Dismiss Plaintiff's First Amended Class Action Complaint.

7          This Motion is based on Federal Rules of Civil Procedure 8 and 12(b)(6) on the grounds that

8  (i) Plaintiff fails to state a plausible claim for sex discrimination under Section 1557 of the Affordable

9  Care Act, and (ii) Plaintiff fails to state a plausible claim for disparate treatment or disparate impact

10 under California's Fair Employment and Housing Act.

11          This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points

12 and Authorities, the attached Declaration of Lauren M. Blas, the concurrently filed Request for Judicial

13 Notice, the previously filed Declaration of Jane Stalinski (Dkt. 26-1), and any other matters and

14 arguments that may come before the Court, including those raised in connection with reply briefing

15 and oral argument relating to this Motion.

16

17 DATED: June 27, 2024                          Respectfully submitted,

18                                               GIBSON, DUNN & CRUTCHER LLP

19
                                                 By: _/s/ Heather L. Richardson_
20                                                    Heather L. Richardson

21                                               Attorneys for Defendant
22                                               United HealthCare Services, Inc.

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    STATEMENT OF ISSUES TO BE DECIDED ........................................................ 1

II.   INTRODUCTION ............................................................................................. 1

III.  FACTUAL ALLEGATIONS................................................................................ 3

IV.   LEGAL STANDARD......................................................................................... 6

V.    ARGUMENT .................................................................................................... 7

      A.    Plaintiff Fails To State A Plausible Claim For Sex Discrimination Under
            Section 1557 Of The Affordable Care Act. ........................................ 7

      B.    Plaintiff Fails To State A Claim For Disparate Treatment Under FEHA
            Because She Does Not Plausibly Allege Intentional Discrimination. ........ 13

      C.    Plaintiff Fails To State A Plausible Disparate Impact Claim...................... 16

            1.    Plaintiff Does Not Plead A Facially Neutral Policy........................ 17

            2.    Plaintiff Does Not Plausibly Allege Any Actual Disparity Between
                  Groups. ........................................................................ 18

            3.    Plaintiff Fails To Satisfy Her Disparate Impact Claim's Robust
                  Causality Requirement. ..................................................... 19

VI.   CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. City of Indianapolis*,
742 F.3d 720 (7th Cir. 2014) ................................................................................................19

*Alhayoti v. Blinken*,
2022 WL 2869850 (N.D. Cal. July 21, 2022) ...............................................................10, 16, 19

*Arnold v. Sessions*,
2018 WL 6728008 (N.D. Cal. Dec. 21, 2018) .....................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................6, 8, 9

*Banaga v. GEICO*,
2019 WL 2451418 (S.D. Cal. June 12, 2019) .....................................................................15

*Barrett v. Forest Laboratories, Inc.*,
39 F. Supp. 3d 407 (S.D.N.Y. 2014) ...................................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................................6

*Benton-Flores v. Santa Barbara Unified Sch. Dist.*,
2021 WL 6752214 (C.D. Cal. Sept. 23, 2021) ......................................................................11

*Bess v. Adams & Assocs., Inc.*,
2017 WL 6017015 (E.D. Cal. Dec. 5, 2017) .......................................................................14

*Borodaenko v. Twitter Inc.*,
2023 WL 3294581 (N.D. Cal. May 5, 2023) ...............................................................14, 18, 19

*Brayboy v. Sec. of Health & Human Servs.*,
2021 WL 4453146 (Fed. Cl. Aug. 30, 2021) ........................................................................9

*Cellemme v. Sessions*,
2017 WL 3749577 (D. Nev. Aug. 29, 2017) .......................................................................11

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ...........................................................................................6

*Cmty. House, Inc. v. City of Boise*,
490 F.3d 1041 (9th Cir. 2007) ...........................................................................................11

*Coghlan v. Am. Seafoods Co. LLC*,
413 F.3d 1090 (9th Cir. 2005) ...........................................................................................10

*Condry v. UnitedHealth Grp., Inc.*,
2018 WL 3203046 (N.D. Cal. June 27, 2018), *vacated in part on other grounds*,
2021 WL 4225536 (9th Cir. Sept. 16, 2021) .......................................................................12

Gibson, Dunn &
Crutcher LLP

*Cutter v. Ethicon, Inc.*,
  2020 WL 2060342 (E.D. Ky. Apr. 29, 2020) ............................................................9

*DeFrancesco v. Ariz. Bd. of Regents*,
  2021 WL 4170673 (D. Ariz. Sept. 14, 2021) ..........................................................11

*Diaz v. Safeway Inc.*,
  2008 WL 2949272 (N.D. Cal. July 28, 2008) .........................................................13

*DiBiase v. SmithKline Beecham Corp.*,
  48 F.3d 719 (3d Cir. 1995) ...............................................................................11, 12

*Doe One v. CVS Pharm., Inc.*,
  2022 WL 3139516 (N.D. Cal. Aug. 5, 2022) ...........................................................7

*Doe v. Snyder*,
  28 F.4th 103 (9th Cir. 2022) ..................................................................................7

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ..............................................................................6, 8

*EEOC v. N. Gibson Sch. Corp.*,
  266 F.3d 607 (7th Cir. 2001), *overruled in part on other grounds by EEOC v.
  Waffle House*, 534 U.S. 279 (2002) ......................................................................12

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) ...............................................................................9

*Fujishige v. Amazon.com Servs. LLC*,
  2024 WL 348826 (N.D. Cal. Jan. 30, 2024) ..........................................................20

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ..............................................................................13

*Goodline v. Suffolk Cnty. Water Authority*,
  2017 WL 1232504 (E.D.N.Y. Mar. 31, 2017) ........................................................11

*Guz v. Bechtel Nat'l Inc.*,
  24 Cal.4th 317 (2000) ..........................................................................................13

*Haney v. Pritzker*,
  563 F. Supp. 3d 840 (N.D. Ill. 2021) ....................................................................17

*Hazen Paper Co. v. Biggins*,
  507 U.S. 604 (1993) .............................................................................................14

*Henry v. NYC Health & Hosp. Corp.*,
  18 F. Supp. 3d 396 (S.D.N.Y. 2014) ................................................................11, 15

*Huddleston v. City & Cnty. of San Francisco*,
  2016 WL 4729175 (N.D. Cal. Sept. 12, 2016) .......................................................10

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ..................................................................................3

iii

*Leiland v. City and Cnty. of San Francisco*,
    576 F. Supp. 2d 1079 (N.D. Cal. 2008) ...................................................................13

*Levy v. Mandalay Corp.*,
    2015 WL 3629633 (D. Nev. June 10, 2015) ...........................................................11

*Lindsey v. United Airlines, Inc.*,
    2017 WL 2404911 (N.D. Cal. June 2, 2017) ..........................................................16

*Liu v. Uber Techs. Inc.*,
    551 F. Supp. 3d 988 (N.D. Cal. 2021) ....................................................................13

*Lopez v. Regents of Univ. of Cal.*,
    5 F. Supp. 3d 1106 (N.D. Cal. 2013) ...................................................................7, 9

*Mahler v. Jud. Council of Cal.*,
    67 Cal. App. 5th 82 (2021)...............................................................................16, 20

*Malley v. San Jose Midtown Dev. LLC*,
    2022 WL 62915 (N.D. Cal. Jan. 6, 2022) .............................................................13

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*,
    942 F.2d 106 (2d Cir. 1992)...................................................................................18

*McCarthy v. Brennan*,
    2016 WL 946099 (N.D. Cal. Mar. 14, 2016) ........................................................10

*Moussouris v. Microsoft Corp.*,
    2016 WL 4472930 (W.D. Wash. Mar. 7, 2016) ....................................................19

*Muhammad v. N. Richmond Senior Housing*,
    2016 WL 5680403 (N.D. Cal. Oct. 3, 2016)..........................................................13

*Nguyen v. Adams & Assocs., Inc.*,
    2018 WL 3913805 (E.D. Cal. Aug. 14, 2018) .......................................................14

*Nguyen v. Superior Court of Cal.*,
    2014 WL 4467850 (N.D. Cal. Sept. 9, 2014) ........................................................15

*Nielsen v. Thornell*,
    101 F.4th 1164 (9th Cir. 2024).............................................................................6, 8

*Obrien v. Amazon.com Inc.*,
    2023 WL 2207893 (N.D. Cal. Jan. 27, 2023) .................................................19, 20

*Ricci v. DeStefano*,
    557 U.S. 557 (2009) ...............................................................................................13

*Rosenfeld v. Abraham Joshua Heschel Day Sch., Inc.*,
    226 Cal. App. 4th 886 (2014)...........................................................................16, 18

*Schechner v. KPIX-TV*,
    2011 WL 109144 (N.D. Cal. Jan. 13, 2011) .........................................................16

Gibson, Dunn &
Crutcher LLP

*Stolte v. Securian Life Ins. Co.*,
   621 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................................3

*Texas Dept. of Housing & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
   576 U.S. 519 (2015) ...............................................................................16

*Thomas v. San Francisco Housing Authority*,
   2017 WL 878064 (N.D. Cal. Mar. 6, 2017) .................................................17, 18

*United Prob. Officers Ass'n v. City of New York*,
   2022 WL 875864 (S.D.N.Y. Mar. 24, 2022) .....................................................18

*Villafana v. Cnty. of San Diego*,
   57 Cal. App. 5th 1012 (2020).................................................................16, 19

*Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*,
   323 F. Supp. 3d 501 (S.D.N.Y. 2018) ...........................................................7, 10

*Wilson v. Timec Servs. Co., Inc.*,
   2023 WL 5753617 (E.D. Cal. Sept. 6, 2023) ....................................................14

*Wood v. City of San Diego*,
   678 F.3d 1075 (9th Cir. 2012)...................................................9, 10, 11, 13, 16

**Statutes**

20 U.S.C. § 1681(a) ................................................................................7

42 U.S.C. § 18116(a) ...............................................................................7

**Other Authorities**

Practice Committee of the American Society for Reproductive Medicine, *Definitions
   of Infertility and Recurrent Pregnancy Loss: A Committee Opinion*, 113 Fertility &
   Sterility 3 (2020) ..................................................................................8

Practice Committee of the American Society for Reproductive Medicine, *Definitions
   of Infertility and Recurrent Pregnancy Loss: A Committee Opinion*, 99 Fertility &
   Sterility 1 (2013) ..................................................................................8

Gibson, Dunn &
Crutcher LLP

v

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Plaintiff's claim for sex discrimination in violation of Section 1557 of the Affordable Care Act should be dismissed for failure to plead intentional discrimination on the basis of sex.

2.    Whether Plaintiff's claim for disparate treatment under California's Fair Employment and Housing Act (FEHA) should be dismissed for failure to plausibly allege intentional discrimination on the basis of sex.

3.    Whether Plaintiff's FEHA disparate impact claim should be dismissed for failure to plausibly allege a facially neutral policy, disproportionate impact, and causation.

### II.    INTRODUCTION

Plaintiff Reyna Dempsey is a woman in a non-heterosexual marital relationship and a member of a health benefit plan sponsored by her employer, Defendant GEICO (the "Plan").  During the proposed class period, the Plan provided infertility services to Plan participants who had a diagnosis of infertility.  Although GEICO funded the plan, Defendant United HealthCare Services, Inc. ("United") was responsible for day-to-day administration of the Plan's coverage, including benefits determinations.

Under the Plan, a person met the definition of "infertility" when that person was (i) unable to become pregnant following six to twelve months of regular unprotected intercourse; (ii) unable to become pregnant after six to twelve months of therapeutic donor insemination; or (iii) medically diagnosed with infertility.  Plaintiff alleges that when she and her wife began trying to have children, Defendants denied her requests for coverage of infertility services, and in doing so, discriminated against her on the basis of sex and sexual orientation.  Plaintiff's theory is that the Plan treated her and other individuals in non-heterosexual relationships less favorably than individuals in heterosexual relationships, because heterosexual couples could qualify for fertility benefits by reporting a failure to conceive after regular unprotected intercourse, while non-heterosexual couples had to pay out-of-pocket for therapeutic donor insemination before establishing "infertility" under the Plan.  That allegedly differential treatment, says Plaintiff, violates the anti-discrimination provisions of both

Gibson, Dunn &
Crutcher LLP

Section 1557 of the Affordable Care Act and California's Fair Employment and Housing Act (FEHA). Plaintiff's allegations, however, fail to state a plausible claim for relief and should be dismissed under Rule 12(b)(6).

*First*, Plaintiff fails to state a plausible claim for sex discrimination under Section 1557 because the Plan, on its face, is indifferent to sexual orientation, and because *heterosexual* individuals who cannot achieve pregnancy through regular protected intercourse are in the *exact same position* as Plaintiff with respect to satisfying the Plan's criteria for infertility. In addition, Plaintiff fails to allege any direct or circumstantial evidence to show the requisite discriminatory intent, such as discriminatory remarks by United or identifiable heterosexual individuals who received more favorable treatment than Plaintiff. Instead, she falls back on the Plan's definition of "infertility," but the Plan's definition was a standard one, widely accepted by the relevant medical community at the time of Plaintiff's employment, not a cover for United's discriminatory intent.

*Second*, Plaintiff's claim for disparate treatment under FEHA fails for many of the same reasons her Section 1557 claim fails—namely, she cannot plausibly allege she was singled out and treated differently because of her sexual orientation when heterosexual individuals who cannot conceive through intercourse were subject to the exact same criteria for obtaining coverage under the Plan. Plaintiff claims the Plan was discriminatory because she and other non-heterosexual individuals could only qualify for benefits by first paying out-of-pocket for 12 months of therapeutic donor insemination. But Plaintiff's own allegations contradict that theory: United provided her fertility coverage based on her medical diagnosis of infertility even though she never completed the requisite number of donor insemination cycles. Plaintiff cannot state a plausible disparate treatment claim when she received benefits under the very criteria she says were discriminatory.

*Third*, Plaintiff's claim for disparate impact discrimination under FEHA should be dismissed for the simple reason that she does not adequately allege the existence of a facially neutral policy. Plaintiff also fails to allege any facts or statistical evidence to show that a disparity in fertility benefits coverage actually exists, nor does she offer any facts to support an inference that any such disparity in benefits was caused by the Plan. Without such allegations, Plaintiff cannot satisfy disparate impact's "robust causality requirement," which also warrants dismissal of the disparate impact claim.

### III.    FACTUAL ALLEGATIONS

Plaintiff Dempsey is a woman in a non-heterosexual relationship who has worked for Defendant GEICO as an auto damage claims adjuster since December 2017.  Dkt. 42 (Am. Compl.) ¶¶ 1, 25. From 2017 to 2022, Plaintiff was enrolled in an employee health benefit plan sponsored by GEICO. *See id.* ¶¶ 1, 8, 44.  The GEICO plan was a "self-funded welfare plan" governed by the Employee Retirement Income Security Act of 1974 (ERISA).  Dkt. 26-1 (Declaration of Jane Stalinski[1]), Ex. 1, 2021 Summary Plan Description ("SPD") at 134; *id.*, Ex. 2, 2022 Summary Plan Description at 141.[2] During the relevant period, Defendant United HealthCare Services, Inc. ("United") was "the Plan's Claims Administrator" responsible for "day-to-day administration of the Plan's coverage."  SPD at 117, 133.  As claims administrator, United had "sole discretion" to determine what healthcare services were covered by the Plan (*id.* at 126), and what expenses "the Plan will pay for Benefits" (*id.* at 7).

Among other benefits, the Plan provided "[t]herapeutic services for the treatment of Infertility," including assisted reproductive technologies such as in vitro fertilization ("IVF").  SPD at 45; Am. Compl. ¶¶ 2-3.  To be eligible for infertility services, plan participants were required to "have a

---

[1] United previously filed the Declaration of Jane Stalinski with relevant Plan documents at Dkt. 26-1 in conjunction with United's motion to dismiss Plaintiff's original complaint.  Because the relevant Plan excerpts are the same, United cites to that previously-filed declaration in this motion to dismiss.

[2] Under the incorporation by reference doctrine, a district court ruling on a Rule 12(b)(6) motion to dismiss may consider documents not physically attached to the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Stolte v. Securian Life Ins. Co.*, 621 F. Supp. 3d 1034, 1041 (N.D. Cal. 2022) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)).  Here, Plaintiff not only "refers extensively" to the GEICO plan; she premises her entire first amended complaint on the theory that the Plan is discriminatory. Accordingly, the 2021 and 2022 Summary Plan Descriptions are properly incorporated by reference. *Stolte*, 621 F. Supp. 3d at 1041 (incorporating Summary Plan Description by reference where plaintiff challenged the denial of benefits under the plan).  Because the relevant language of the 2021 and 2022 SPDs is the same, United cites only to the 2021 SPD in this motion to dismiss.

Gibson, Dunn & Crutcher LLP

3

diagnosis of infertility." SPD at 46. Infertility was "defined by the failure to achieve a successful pregnancy after 12 months or more of appropriate, timed unprotected intercourse or Therapeutic Donor Insemination." *Id.* at 124.[3] Women ages 35 or older met this definition after six months of regular unprotected intercourse or therapeutic donor insemination. *Id.* at 46, 124. Women of any age met the definition if they could not conceive due to "sexual dysfunction," or if they otherwise received a "medical diagnosis of infertility," including a diagnosed ovulatory disorder. *See* Am. Compl. ¶¶ 3, 52; SPD at 46. These criteria applied to all women regardless of sexual orientation. *See* SPD at 45-47.

In June 2020, Plaintiff and her wife "began planning to start a family." Am. Compl. ¶¶ 8, 40. In July 2020, Plaintiff's doctor diagnosed her with "unspecified female infertility." *Id.* ¶ 40. Plaintiff then met with "Defendants' fertility specialists" and underwent blood tests as part of a formal infertility evaluation. *Id.* The in-network specialists "did not find [Plaintiff] infertile." *Id.* Plaintiff nonetheless "requested that her fertility benefits be covered by Defendants." *Id.* ¶ 41. But because she did not meet the Plan's eligibility criteria, United denied the request on April 5, 2021. *See id.*

Plaintiff then began intrauterine insemination ("IUI"). Am. Compl. ¶ 42. Plaintiff alleges that "[f]rom April 5, 2021 . . . to August 24, 2022" she "underwent eight IUI cycles over a period of 16 months." *Id.* (emphasis omitted). According to Plaintiff, these IUI treatments "required her to take significant time off work" and "cost her approximately $2,700 in medical bills, gas and medication" per treatment. *Id.* ¶ 43. Plaintiff became pregnant after her sixth IUI cycle on November 6, 2021, but she suffered a miscarriage approximately one month later. *Id.* ¶ 45.

Plaintiff alleges that during the time she was undergoing IUI, "she continued to complain and request coverage" for IVF. Am. Compl. ¶ 46. In January 2022, she sent a letter to GEICO requesting that GEICO "revisit its fertility coverage policy" because it was "discriminatory and places an unreasonable burden on non-heterosexual couples." *Id.* The request was denied. *Id.* In March 2022, Plaintiff appealed the denial, and her doctor submitted a letter of medical necessity stating that the

---

[3] "Therapeutic Donor Insemination" ("TDI") is defined as "[i]nsemination with a donor sperm sample for the purpose of conceiving a child." SPD at 131. Nothing in the Plan requires that TDI be performed by a physician, as opposed to being performed at home. *See id.* at 46-47, 131.

"appropriate course of action" for Plaintiff was IVF, rather than continuing IUI.  *Id.* ¶ 47.  Defendants denied the appeal because Plaintiff still did not meet the Plan's definition of infertility.  *Id.* ¶ 48.  Plaintiff then submitted a "second level appeal" on May 10, 2022 (which she resubmitted on August 5, 2022), even though at that time, she had completed only six (rather than 12) IUI cycles.  *Id.* ¶¶ 49-50.  That appeal was denied in September 2022.  *Id.* ¶ 50.

Plaintiff was eventually diagnosed with "ovarian dysfunction."  Am. Compl. ¶ 52.  Based on that diagnosis, United informed Plaintiff in November 2022 "that they would start covering her fertility treatment."  *Id.*  Plaintiff ultimately became pregnant in March 2023, and gave birth at the end of that year.  *Id.* ¶ 53.

Plaintiff filed this lawsuit on January 24, 2024 (Dkt. 1), and filed the operative first amended complaint on June 6, 2024 (Dkt. 42), on the theory that the Plan discriminates against individuals in non-heterosexual relationships in the provision of fertility benefits.  *See* Am. Compl. ¶¶ 1-13.  Specifically, Plaintiff claims that while heterosexual couples had "three pathways" to access IVF treatments—that is, "(a) 6 months to one year of unprotected sex not resulting in conception; (b) a medical diagnosis of infertility; or (c) 6 months to one year of failed Therapeutic Donor Insemination"—non-heterosexual couples (who cannot become pregnant through unprotected sex with their partner) have only options (b) and (c).  *Id.* ¶¶ 3, 7.  According to Plaintiff, this constitutes discrimination on the basis of sex and sexual orientation because non-heterosexual couples allegedly must spend time and money "covering their own fertility services . . . for a requisite period of time" to qualify for IVF (*id.* ¶ 7), while heterosexual couples can merely "self-report[]" having unprotected sex for one year (*id.* ¶ 13).

Plaintiff's original complaint asserted six claims on behalf of two putative classes: (1) sex discrimination in violation of FEHA on a disparate treatment theory; (2) sex discrimination in violation of FEHA on a disparate impact theory; (3) sex discrimination in violation of Section 1557 of the Affordable Care Act; (4) unlawful business practice in violation of California's Unfair Competition Law (UCL); (5) sex discrimination in violation of California's Unruh Civil Rights Act; and (6) unjust enrichment.  *See* Dkt. 1.  United moved to dismiss that complaint on April 25, 2024, arguing, among other things, that Plaintiff's state law claims were preempted by ERISA; that Plaintiff's claims for

discrimination in violation of FEHA, Section 1557, and the Unruh Act should be dismissed for failure to state a plausible claim of intentional discrimination; and that Plaintiff's UCL and unjust enrichment claims should be dismissed for failure to plead lack of an adequate legal remedy.[4] *See* Dkt. 26.  Plaintiff responded to United's motion to dismiss on June 6, 2024, with a first amended complaint that asserts only three of the six original claims: (1) sex discrimination in violation of FEHA on a disparate treatment theory; (2) sex discrimination in violation of FEHA on a disparate impact theory; and (3) sex discrimination in violation of Section 1557.

## IV.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible only when the plaintiff's "well-pleaded factual allegations" allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  This analysis is "context-specific" and requires the reviewing court to consider an "obvious alternative explanation" for defendant's behavior.  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679, 682).

The existence of such an "alternative explanation" dictates whether a plaintiff can "nudge their claims across the line from conceivable to plausible." *Eclectic Props. E.*, 751 F.3d at 997 (cleaned up).  When there are two possible explanations, "one advanced by defendant and the other advanced by plaintiff," "plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render

---

[4] Plaintiff originally sued GEICO, United, *and* United's corporate parent, UnitedHealth Group, Inc. ("UHG").  In their motion to dismiss, United and UHG argued that UHG should be dismissed from the suit because it was not a proper party defendant.  Dkt. 26 at 23-24.  Consistent with that argument, Plaintiff's first amended complaint only asserts claims against GEICO and United.

plaintiffs' allegations plausible." *Id.* (citation omitted).  "If an innocent explanation for the allegations is more likely, the complaint does not plausibly state a claim for relief." *Nielsen v. Thornell*, 101 F.4th 1164, 1169 (9th Cir. 2024).

## V.    ARGUMENT

### A.    Plaintiff Fails To State A Plausible Claim For Sex Discrimination Under Section 1557 Of The Affordable Care Act.

Section 1557 of the Affordable Care Act provides that no individual shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."  42 U.S.C. § 18116(a).  This provision incorporates Title IX of the Education Amendments of 1972 to prohibit sex discrimination in the provision of healthcare.  *See Doe One v. CVS Pharm., Inc.*, 2022 WL 3139516, at *8 (N.D. Cal. Aug. 5, 2022); *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 521 (S.D.N.Y. 2018) ("Section 1557 incorporates Title IX sex discrimination protection (and its accompanying pleading standards).").  Given this incorporation, the standard for stating a plausible claim for violation of Section 1557 tracks closely with the requirements for stating a Title IX claim— that is, a plaintiff suing under Section 1557 must show: (1) the defendant is a healthcare program receiving federal financial assistance; (2) the defendant discriminated against the plaintiff in the provision of healthcare benefits; and (3) the discrimination was "on the basis of sex." *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1120 (N.D. Cal. 2013) (quoting Title IX, 20 U.S.C. § 1681(a)); 42 U.S.C. § 18116(a); *see Weinreb*, 323 F. Supp. 3d at 521 (a plaintiff suing under Section 1557 must show "the discrimination was intentional").  Plaintiff's allegations fall well short of the mark.

***First***, Plaintiff does not plausibly allege the Plan discriminated against her "on the basis of sex." *See Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022) (discrimination based on sexual orientation is discrimination "on the basis of sex").  The Plan, on its face, was indifferent to sex—it provided fertility benefits based on "a diagnosis of infertility," not sexual orientation.  SPD at 46 ("To be eligible for the Infertility services Benefit you must have a diagnosis of infertility.").  Specifically, a woman of *any* sexual orientation met the definition of infertility under the Plan when: (i) she was unable to become pregnant after six months to one year of regular unprotected intercourse; (ii) she was unable to become

pregnant after six months to one year of "therapeutic donor insemination"; or (iii) she was unable to conceive due to "sexual dysfunction" or otherwise receives a "medical diagnosis of infertility."  Am. Compl. ¶ 3; SPD at 46.  As the Amended Complaint makes clear, Plaintiff did not satisfy any of these criteria until November 2022—she never completed the requisite 12 months of "appropriate, timed" donor insemination (SPD at 124; Am. Compl. ¶¶ 10, 44-45, 49), and United did not approve her "ovarian dysfunction" diagnosis until November 2022 (Am. Compl. ¶ 52).  In other words, Plaintiff was temporarily denied fertility benefits "on the basis of" a lack of demonstrated infertility under the terms of the Plan, not on the basis of sexual orientation.

Notably, the Plan's definition of "infertility," including its requirement of 12 months of donor insemination, was not some contrivance cooked up by United—it reflected the definition of infertility used by the American Society for Reproductive Medicine at the relevant time.  Declaration of Lauren M. Blas ("Blas Decl."), Ex. 1, Practice Committee of the American Society for Reproductive Medicine, *Definitions of Infertility and Recurrent Pregnancy Loss: A Committee Opinion*, 99 Fertility & Sterility 1, 63 (2013) ("Infertility is a disease, defined by the failure to achieve a successful pregnancy after 12 months or more of appropriate, timed unprotected intercourse or therapeutic donor insemination."); Blas Decl., Ex. 2, Practice Committee of the American Society for Reproductive Medicine, *Definitions of Infertility and Recurrent Pregnancy Loss: A Committee Opinion*, 113 Fertility & Sterility 3, 533 (2020) ("Infertility is a disease historically defined by the failure to achieve a successful pregnancy after 12 months or more of regular unprotected sexual intercourse or due to an impairment of a person's capacity to reproduce either as an individual or with her/his partner.").[5]  Plaintiff does not and cannot allege that this definition—formulated by the leading professional organization of experts in fertility and reproductive medicine—was intentionally discriminatory.  To the contrary, the fact that the Plan's definition of infertility was the same as the then widely accepted understanding of the condition

---

[5] As explained in United's Request for Judicial Notice filed concurrently with this Motion, these journal articles, and the definitions of infertility contained therein, are properly subject to judicial notice under Federal Rule of Evidence 201 because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

1   suggests that United incorporated the definition simply to align with the views of the relevant medical

2   community, not to intentionally discriminate against same-sex couples.  "As between that 'obvious

3   alternative explanation' for" the Plan's benefit criteria, "and the purposeful, invidious discrimination

4   [Plaintiff] asks [the Court] to infer, discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at

5   682; *Eclectic Props. E.*, 751 F.3d at 996-97 (a plaintiff must plead "facts tending to exclude the

6   possibility that the [innocent] alternative explanation is true[] in order to render [her] allegations

7   plausible"); *Nielsen*, 101 F.4th at 1169 ("If an innocent explanation for the allegations is more likely,

8   the complaint does not plausibly state a claim for relief.") (citing *Iqbal*, 556 U.S. at 681).

9           Plaintiff nonetheless alleges the Plan discriminated on the basis of sex because it provided

10  individuals in heterosexual relationships a way to qualify for fertility benefits that was not open to

11  individuals in non-heterosexual relationships—namely, "self-reporting" (Am. Compl. ¶ 13) a "failure

12  to conceive after six months to one year of unprotected sex" (*id.* ¶ 5).  But the mere existence of this

13  additional "pathway" does not plausibly suggest sex discrimination.  That is because a person's ability

14  to qualify for fertility services by reporting a failure to conceive after the requisite period of unprotected

15  intercourse does not depend on sexual orientation; it depends on circumstances specific to the

16  individual.

17          To take an obvious example, women in heterosexual relationships who can't have intercourse

18  due to physical or medical reasons can't demonstrate infertility by reporting a failure to conceive after

19  regular unprotected sex.  *See Cutter v. Ethicon, Inc.*, 2020 WL 2060342, at *11 n.9 (E.D. Ky. Apr. 29,

20  2020) ("Dyspareunia is a medical term for painful intercourse.") (citation omitted); *Brayboy v. Sec. of*

21  *Health & Human Servs.*, 2021 WL 4453146, at *7 n.14 (Fed. Cl. Aug. 30, 2021)  ("Dyspareunia refers

22  to 'difficult or painful sexual intercourse.'") (citation omitted).  Similarly, single women who wish to

23  become parents on their own without a partner cannot demonstrate infertility by attempting to conceive

24  through heterosexual intercourse.  All of these (heterosexual) individuals would be in the exact same

25  position as Plaintiff—that is, they could only qualify for fertility benefits under the Plan by undergoing

26  therapeutic donor insemination or receiving a medical diagnosis of infertility.  Plaintiff's assumption

27  that she and other individuals in non-heterosexual relationships are the only individuals who cannot

28  demonstrate infertility by failing to conceive after regular unprotected intercourse is not true and cannot

raise a plausible inference that United discriminated against her on the basis of sex. *See Iqbal*, 556 U.S. at 679 (determining plausibility "requires the reviewing court to draw on its judicial experience and common sense"); *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.").

*Second*, Plaintiff fails to plausibly allege United had a "discriminatory intent or motive" in denying her benefits. *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012); *see Lopez*, 5 F. Supp. 3d at 1120 ("Title IX prohibits intentional discrimination.") (citation omitted). A plaintiff can show a discriminatory motive through direct or circumstantial evidence, or "in some situations," a "facially discriminatory policy." *Wood*, 678 F.3d at 1081. Plaintiff's allegations establish neither.

A plaintiff can plead discriminatory motive through "direct evidence" of discriminatory animus, such as "clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005); *McCarthy v. Brennan*, 2016 WL 946099, at *4 (N.D. Cal. Mar. 14, 2016). The Amended Complaint contains no such allegations. Although Plaintiff alleges United denied her requests for coverage and "required [her] to undergo expensive and time-consuming IUI cycles to gain access to fertility benefits" (Am. Compl. ¶ 99), she offers no allegations that the denials were "actually motivated" by animus towards her sexual orientation. *Wood*, 678 F.3d at 1081. To the contrary, the Amended Complaint is completely "devoid of factual allegations of direct evidence of [sex] discrimination." *McCarthy*, 2016 WL 946099, at *6 (dismissing race discrimination claim in part because "[t]he [c]omplaint and documents attached thereto are devoid of factual allegations of direct evidence of race discrimination, such as an allegation that a supervisor made a derogatory comment about [p]laintiff's race"). The mere fact Plaintiff was denied benefits "is insufficient without more to raise an inference that such action was taken for a discriminatory . . . purpose." *Huddleston v. City & Cnty. of San Francisco*, 2016 WL 4729175, at *4 (N.D. Cal. Sept. 12, 2016); *see also Weinreb*, 323 F. Supp. 3d at 522 (dismissing Section 1557 sex discrimination claim where plaintiffs "alleged no facts supporting an inference that [d]efendants intentionally discriminated against [plaintiff], or that discrimination was a motivating factor in their actions").

Nor does Plaintiff plausibly allege "circumstantial evidence" of discriminatory motive, such as "allegations that similarly situated individuals outside [her] protected class were treated more favorably." *Alhayoti v. Blinken*, 2022 WL 2869850, at *6 (N.D. Cal. July 21, 2022). The most that Plaintiff alleges on this front is that hypothetical "heterosexual couples" had an additional means of establishing infertility not available to her. Am. Compl. ¶¶ 5, 7, 9, 33-34, 75. But merely referencing "heterosexual couples" is not enough to plausibly allege similarly situated comparators. Instead, to state a plausible disparate treatment claim with allegations of similarly situated individuals, a plaintiff must, at minimum, plead facts that identify comparators who were treated more favorably. *See DeFrancesco v. Ariz. Bd. of Regents*, 2021 WL 4170673, at *4 (D. Ariz. Sept. 14, 2021) ("Without an adequate identification of similarly situated comparators, [p]laintiff's disparate treatment claim fails."). Plaintiff doesn't do so here. Her vague references to "heterosexual couples" cannot state a plausible claim for sex discrimination where "she offers no facts to reveal who those [couples] are . . ." *Cellemme v. Sessions*, 2017 WL 3749577, at *3 (D. Nev. Aug. 29, 2017); *Goodline v. Suffolk Cnty. Water Authority*, 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017) (reference to a "generic class" of similarly situated employees "is insufficient even at the pleadings stage"); *see also Levy v. Mandalay Corp.*, 2015 WL 3629633, at *2 (D. Nev. June 10, 2015) ("[S]imilarly situated individuals must be identified with specificity to create an inference that the employer's motivations were based on the plaintiff's status as a member of a protected class and that similarly situated employees outside of the protected class and identified as such were treated more favorably."). Nor does Plaintiff attempt to show, as she must, "how other [couples] were similarly situated to her." *Benton-Flores v. Santa Barbara Unified Sch. Dist.*, 2021 WL 6752214, at *8 (C.D. Cal. Sept. 23, 2021). Because the Amended Complaint "fails to identify, let alone describe, any purported comparator," Plaintiff cannot state a plausible discrimination claim on this basis. *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014).

What's left then is the language of the Plan itself. "[A] discriminatory motive may *in some situations* be inferred from reliance on 'a formal, facially discriminatory policy'" (*Wood*, 678 F.3d at 1081 (emphasis added))—that is, a policy that *expressly* classifies people on the basis of a protected characteristic. *See Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1048 (9th Cir. 2007) ("A facially

discriminatory policy is one which on its face applies less favorably to a protected group."); *DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 727 (3d Cir. 1995) ("The touchstone of explicit facial discrimination is that the discrimination is apparent from the terms of the policy itself."). The Plan here, however, is not facially discriminatory. The only criterion Plaintiff alleges is discriminatory—that is, defining infertility to include a failure to conceive after six months to one year of regular unprotected sex—does not expressly differentiate based on sex because it does not favor heterosexual couples as a class. As noted above, there are obvious reasons why individuals in heterosexual relationships seeking fertility services may not be able to show a failure to conceive through regular unprotected intercourse. These individuals had the exact same "pathways" to establishing infertility under the Plan as individuals in non-heterosexual relationships. By its own terms, then, the Plan was not facially discriminatory—it treated some members of the purportedly "favored" class on the same terms as the allegedly "disfavored" class. A policy that allegedly discriminates under certain circumstances, but not others, is not a "facially discriminatory policy" that supports a discrimination claim. *See EEOC v. N. Gibson Sch. Corp.*, 266 F.3d 607, 617 (7th Cir. 2001) ("[A] facially discriminatory policy discriminates *each time that it is applied*.") (emphasis added), *overruled in part on other grounds by EEOC v. Waffle House*, 534 U.S. 279 (2002); *see also DiBiase*, 48 F.3d at 727 (explaining that a "plan cannot be said to be discriminatory on its face" when the "conclusion that the plan is facially discriminatory require[s] referencing a fact outside the policy").[6]

Even if defining infertility to include a failure to conceive after six months to one year of unprotected sex were somehow discriminatory (it isn't), Plaintiff cannot manufacture "facial discrimination" by isolating one criterion of the Plan to the exclusion of the others. *See, e.g.*, Am. Compl. ¶¶ 33-34 (alleging facial discrimination based on a "plain language reading of Option A"). As noted, there are many facets to the Plan's definition of infertility (a definition that, again, simply

---

[6] Unlike her FEHA causes of action, Plaintiff does not bring a Section 1557 claim based on a disparate impact theory. Nor could she—"disparate impact claims on the basis of sex are not cognizable under section 1557." *Condry v. UnitedHealth Grp., Inc.*, 2018 WL 3203046, at *4 (N.D. Cal. June 27, 2018), *vacated in part on other grounds*, 2021 WL 4225536 (9th Cir. Sept. 16, 2021).

incorporates the American Society for Reproductive Medicine's definition), and individuals of *any* sexual orientation satisfy the definition if they are unable to conceive due to "sexual dysfunction" or otherwise receive a "medical diagnosis of infertility."  Am. Compl. ¶ 3; SPD at 46.  Plaintiff sweeps aside these inconvenient facts and focuses exclusively on the "regular unprotected intercourse" criterion to show facial discrimination, but that pleading tactic cannot create a plausible claim— plausibility depends on the "complaint [and the Plan] in its entirety," not on any individual allegation in isolation.[7]  *Malley v. San Jose Midtown Dev. LLC*, 2022 WL 62915, at *3 (N.D. Cal. Jan. 6, 2022) (Davila, J.) ("In assessing the sufficiency of the pleadings, 'courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'") (citation omitted).  Viewed together in their entirety, the amended complaint and Plan do not give rise to a reasonable inference of intentional discrimination.  Accordingly, Plaintiff fails to state a plausible claim for sex discrimination in violation of Section 1557.

**B.    Plaintiff Fails To State A Claim For Disparate Treatment Under FEHA Because She Does Not Plausibly Allege Intentional Discrimination.**

"Disparate treatment occurs when a plaintiff is singled out on account of her [sex] or another protected characteristic and is treated less favorably than others similarly situated."  *Leiland v. City and Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1091 (N.D. Cal. 2008) (citation omitted); *see also Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).  To state a claim for disparate treatment, a plaintiff must "plead[] facts giving rise to an inference that the employer *intended* to discriminate against the

---

[7] At various points in her first amended complaint, Plaintiff tries to plead facial discrimination by alleging that "Option B"—that is, showing a medical diagnosis of infertility—"was not meant to be an avenue for individuals in same-sex relationships to qualify for fertility benefits."  Am. Compl. ¶ 12; *id.* ¶¶ 7, 35, 38.  Those allegations are both conclusory and implausible.  Plaintiff herself obtained fertility benefits after receiving a medical diagnosis of infertility, so she cannot credibly claim that the existence of the medical diagnosis "pathway" is evidence of facial discrimination.  *Muhammad v. N. Richmond Senior Housing*, 2016 WL 5680403, at *2 (N.D. Cal. Oct. 3, 2016) ("[T]he court is not required to accept as true 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'") (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

protected group." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 992 (N.D. Cal. 2021); *Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 354 n.20 (2000) (disparate treatment under FEHA "is *intentional* discrimination against one or more persons on prohibited grounds"). "[A] discriminatory motive may in some situations be inferred from reliance on 'a formal, facially discriminatory policy,' but 'liability depends on whether the protected trait . . . actually motivated the employer's decision.'"[8] *Wood*, 678 F.3d at 1081 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)); *Borodaenko v. Twitter Inc.*, 2023 WL 3294581, at *3 (N.D. Cal. May 5, 2023). "Thus, a plaintiff bringing a disparate treatment claim must allege facts that plausibly indicate defendant was motivated by a discriminatory animus." *Wilson v. Timec Servs. Co., Inc.*, 2023 WL 5753617, at *3 (E.D. Cal. Sept. 6, 2023) (cleaned up).

Here, Plaintiff cannot point to any differential treatment "because of" sexual orientation, let alone intentional discrimination by United. As explained above (*supra* pp. 7-9), the Plan's definition of "infertility" treated all persons seeking infertility services the same—that is, they must all have satisfied the definition of infertility, which required showing unsuccessful conception through sperm/egg contact over a period of time (or an inability to do so based on sexual dysfunction or a medical diagnosis of infertility), *regardless of sexual orientation*. And again, individuals in non-heterosexual relationships were not the only individuals to whom the "appropriate, timed unprotected intercourse" "pathway" of showing infertility was closed: heterosexual women who could not have intercourse because of physical or medical reasons, and heterosexual women who preferred to have a child on their own without a partner, all had to demonstrate "infertility" through means other than regular unprotected intercourse. *See supra* p. 9. In other words, Plaintiff cannot plausibly allege she was singled out and treated differently because of her sexual orientation when heterosexual individuals were subject to the same conditions for coverage under the Plan. Accordingly, Plaintiff's allegations do not give rise to a plausible inference that United acted "because of" her sexual orientation. *See Bess*

---

[8] "Because Title VII and FEHA use similar language and have the same purpose, courts often look to federal interpretations of Title VII in deciding FEHA cases." *Diaz v. Safeway Inc.*, 2008 WL 2949272, at *3 (N.D. Cal. July 28, 2008).

Gibson, Dunn &
Crutcher LLP

*v. Adams & Assocs., Inc.*, 2017 WL 6017015, at *4 (E.D. Cal. Dec. 5, 2017) (dismissing disparate treatment claim for failure to sufficiently allege discriminatory motive).

Nor does Plaintiff adequately plead that similarly situated individuals in heterosexual relationships were treated more favorably than individuals in non-heterosexual relationships with respect to receiving fertility benefits. *See Nguyen v. Adams & Assocs., Inc.*, 2018 WL 3913805, at *4 (E.D. Cal. Aug. 14, 2018) (dismissing FEHA discrimination claim because plaintiff provided no factual support for his conclusions and simply stated that "employees who were younger" were treated more favorably). Plaintiff's vague references to "heterosexual couples," without more, cannot state a viable claim for discrimination when she makes no attempt to explain who those "heterosexual couples" are and how those "heterosexual couples" are similarly situated. *Nguyen v. Superior Court of Cal.*, 2014 WL 4467850, at *4 (N.D. Cal. Sept. 9, 2014) (finding the allegation that "younger workers with less experience and seniority" were treated more favorably was conclusory and insufficient to survive dismissal of disparate treatment claim). As explained above (*supra* p. 11), a plaintiff cannot state a plausible disparate treatment claim where she "fails to identify, let alone describe, any purported comparator." *Henry*, 18 F. Supp. 3d at 409.

The district court's decision in *Banaga v. GEICO* is instructive. 2019 WL 2451418 (S.D. Cal. June 12, 2019). There, a former GEICO employee brought a FEHA disparate treatment claim based on allegations that GEICO demoted him upon his return from medical leave because of his disability. *Id.* at *9. The court dismissed the claim. In particular, the court found the plaintiff's complaint was "silent with respect to any allegations that GEICO intended to discriminate—or treated [p]laintiff differently—based on his disability," and that, "[w]ithout additional facts that support direct or circumstantial evidence of discriminatory motive, [p]laintiff cannot adequately plead his FEHA claim[]." *Id.* The court emphasized that the GEICO policy at issue was "neutrally[]applied," and that a facially neutral policy, "without more," could not state a FEHA disparate treatment claim. *Id.*

Plaintiff's allegations here are similarly lacking. Plaintiff alleges she was denied fertility benefits under the Plan, and that heterosexual couples purportedly had an additional "pathway" to obtaining such benefits, but she nowhere pleads facts (direct or circumstantial) suggesting United acted with a discriminatory motive. That's not enough—"[w]ithout additional facts that support direct or

circumstantial evidence of discriminatory motive"—such as discriminatory statements or similarly situated individuals receiving more favorable benefits coverage—"Plaintiff cannot adequately plead [her] FEHA claims for [sex] discrimination." *Id.*

Finally, this is not a situation where an allegedly "facially discriminatory" policy can support a reasonable inference of discriminatory intent. As argued above (*supra* pp. 7-8, 12), the Plan made no explicit distinction based on sexual orientation; it simply incorporated the widely accepted definition of infertility used by the relevant medical community. *See, e.g.*, Blas Decl., Ex. 1, Practice Committee of the American Society for Reproductive Medicine, *Definitions of Infertility and Recurrent Pregnancy Loss: A Committee Opinion*, 99 Fertility & Sterility 1, 63 (2013) ("Infertility is a disease, defined by the failure to achieve a successful pregnancy after 12 months or more of appropriate, timed unprotected intercourse or therapeutic donor insemination."). Nothing about United's reliance on a medical definition used by the American Society for Reproductive Medicine plausibly suggests Plaintiff's sexual orientation "actually motivated" United's decision to temporarily deny her benefits. *Wood*, 678 F.3d at 1081.

## C.    Plaintiff Fails To State A Plausible Disparate Impact Claim.

Plaintiff's FEHA disparate impact claim fares no better than her disparate treatment claim. "A claim of disparate impact differs from a claim of disparate treatment in that a plaintiff is not required to prove discriminatory motive when claiming disparate impact." *Rosenfeld v. Abraham Joshua Heschel Day Sch., Inc.*, 226 Cal. App. 4th 886, 893 (2014) (emphasis omitted). "To bring a disparate impact claim, a plaintiff must plead: (1) the existence of outwardly neutral practices; (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices; and (3) facts demonstrating a causal connection between the specific challenged practice or policy and the alleged disparate impact." *Alhayoti*, 2022 WL 2869850, at *6. This includes alleging facts to satisfy a "robust causality requirement" because "a disparity alone, 'does not, without more, establish a prima facie case of disparate impact.'" *Mahler v. Jud. Council of Cal.*, 67 Cal. App. 5th 82, 113 (2021) (quoting *Texas Dept. of Housing & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 542 (2015)). Plaintiff's allegations fail to state a plausible claim on multiple levels.

### 1.     Plaintiff Does Not Plead A Facially Neutral Policy.

Plaintiff's disparate impact claim fails as a threshold matter because she has not alleged the existence of a facially neutral policy—the "touchstone" of a disparate impact claim.  *Lindsey v. United Airlines, Inc.*, 2017 WL 2404911, at *3 (N.D. Cal. June 2, 2017); *Villafana v. Cnty. of San Diego*, 57 Cal. App. 5th 1012, 1017 (2020) (to state a disparate impact claim, a plaintiff "must plead facts that establish a facially neutral policy").    Instead, Plaintiff's theory is that the Plan was "facially discriminatory" (Am. Compl. ¶ 4) because the "plain language of the policy" (*id.* ¶ 75) "subjected non-heterosexual couples to discrimination by forcing them to pay out of pocket for fertility treatments compared to heterosexual couples" (*id.* ¶ 13).  In other words, Plaintiff does not allege a policy that is "facially neutral in [its] treatment of different groups but that in fact fall[s] more harshly on one group than another" (*Schechner v. KPIX-TV*, 2011 WL 109144, at *5 (N.D. Cal. Jan. 13, 2011))—she alleges (implausibly) that the Plan "by its very terms" singled out individuals in non-heterosexual relationships for discriminatory treatment based on their sexual orientation.  That theory "sounds in disparate treatment, not disparate impact." *Haney v. Pritzker*, 563 F. Supp. 3d 840, 864 (N.D. Ill. 2021); *see also Thomas v. San Francisco Housing Authority*, 2017 WL 878064, at *5 (N.D. Cal. Mar. 6, 2017) (dismissing disparate impact claim on the pleadings where plaintiff failed to "sufficiently plead" how the challenged policy was "facially neutral").

Courts have rejected similar efforts to recast as a disparate impact claim what is, in fact, a disparate treatment theory.  For example, in *Barrett v. Forest Laboratories, Inc.*, plaintiffs brought claims for discrimination under Title VII alleging, in part, that the defendant's policy of giving weight to managers' discriminatory performance assessments had a disparate impact on women employees by lowering their performance reviews vis-à-vis men.  39 F. Supp. 3d 407, 437-38 (S.D.N.Y. 2014).  The court rejected plaintiffs' attempt to style these allegations as a "disparate impact" claim.  The court explained that despite the label plaintiffs affixed to the allegations, the "gravamen" of the complaint was that "managers discriminated against women by giving them unjustifiably low performance evaluations . . . which resulted in reduced compensation."  *Id.* at 438.  The court concluded that "[a]ccepting the [plaintiffs] factual allegations as true, this [was] not a situation where [defendants] followed a facially-neutral practice that created a disparity; this [was] a situation in which managers

1   intentionally treated male and female employees differently." *Id.* "That," said the court, "is a disparate

2   treatment claim." *Id.*

3       The same principle applies here. Although Plaintiff purports to plead a FEHA disparate impact

4   claim, the "gravamen" of her complaint is that the Plan "intentionally treated [non-heterosexual

5   couples] and [heterosexual couples] differently." *Id.*; Am. Compl. ¶ 4 ("Defendants' policy was

6   facially discriminatory on the basis of sex and sexual orientation by denying individuals in non-

7   heterosexual relationships equal access to fertility treatments by reason of their sexual orientation.");

8   *id.* ¶ 7 ("Defendants' policy facially subjected Plaintiff and other similarly-situated individuals to

9   discrimination as it denied them, on the basis of their sex and/or sexual orientation, the benefit of

10  choosing how to establish infertility without incurring out-of-pocket costs before they could qualify for

11  fertility treatment."). "That is a disparate treatment claim." *Barrett*, 39 F. Supp. 3d at 438. And the

12  fact that Plaintiff's disparate impact theory relies on the same allegations as her disparate treatment

13  theory only reinforces the point that her complaint is really about disparate treatment. *See Rosenfeld*,

14  226 Cal. App. 4th at 889 ("Disparate impact and disparate treatment are different theories of

15  employment discrimination with different elements."). Where, as here, "[t]he facially neutral

16  employment practice that [a plaintiff] invokes as the premise for disparate impact liability coalesces

17  with the [adverse action] which he claims to have constituted disparate treatment," the claim is

18  ultimately one for disparate treatment, not disparate impact. *Maresco v. Evans Chemetics, Div. of W.R.*

19  *Grace & Co.*, 942 F.2d 106, 115 (2d Cir. 1992). To hold otherwise would allow Plaintiff to use the

20  disparate impact doctrine "to circumvent the subjective intent requirement in any disparate treatment

21  case." *Id.* The Court should dismiss Plaintiff's disparate impact claim for this reason alone.

22      **2.    Plaintiff Does Not Plausibly Allege Any Actual Disparity Between Groups.**

23      Even if Plaintiff had alleged a facially neutral policy, "Plaintiff has failed to plausibly allege

24  that a *disparity* actually exists here." *Borodaenko*, 2023 WL 3294581, at *4 (emphasis added).

25  Plaintiff claims that because "no individuals in non-heterosexual relationships could qualify under the

26  self-reporting avenue, they were impacted disproportionately compared to heterosexual individuals

27  seeking the same fertility benefits." Am. Compl. ¶ 88. But these are *assertions* of disproportionate

28  impact, not well-pleaded factual allegations that a disparity actually exists. *United Prob. Officers Ass'n*

*v. City of New York*, 2022 WL 875864, at *6 (S.D.N.Y. Mar. 24, 2022) (explaining that "[a]llegations which contend only that there is a bottom line [] imbalance" between groups are "insufficient" to state a disparate impact claim); *Thomas*, 2017 WL 878064, at *5 (dismissing disparate impact claim where plaintiff's "allegations regarding the disproportionate impact on African-American residents [were] wholly conclusory and unsupported by any factual allegations"). For example, Plaintiff does not allege that individuals in non-heterosexual relationships had to undergo therapeutic donor insemination "at higher rates than their [heterosexual] colleagues" or that individuals in non-heterosexual relationships were less able to qualify for fertility benefits by showing "sexual dysfunction" (SPD at 46) or another "medical diagnosis of infertility" (Am. Compl. ¶ 3). *Borodaenko*, 2023 WL 3294581, at *4. Such allegations are essential under Plaintiff's theory—without any facts indicating that the "regular unprotected intercourse" pathway impacted the rates at which individuals in heterosexual relationships obtain coverage for IVF vis-à-vis individuals in non-heterosexual relationships, there can be no plausible inference of a disparity. *See id.* (dismissing FEHA disparate impact claim and explaining it is "not enough" for plaintiff to assert "it is reasonable to infer" the defendant's policies would have a disparate impact; plaintiff "must provide factual support for this conclusion"); *Villafana*, 57 Cal. App. 5th at 1017 ("[T]he mere fact that each person affected by a practice or policy is also a member of a protected group does not establish a disparate impact.") (citation omitted).

### 3.    Plaintiff Fails To Satisfy Her Disparate Impact Claim's Robust Causality Requirement.

Plaintiff's disparate impact claim also fails because she does not plead "a plausible theory of causation." *Alhayoti*, 2022 WL 2869850, at *9. Although Plaintiff seems to acknowledge that offering some form of statistical evidence is the usual way to plead causation (*see* Am. Compl. ¶ 84), she doesn't offer any. *See Arnold v. Sessions*, 2018 WL 6728008, at *8 (N.D. Cal. Dec. 21, 2018) (explaining that pleading disparate impact causation is "usually accomplished" by statistics). The most that Plaintiff alleges on this point is that the "policy caused the adverse employment action of denying individuals in non-heterosexual relationships, including Plaintiff Dempsey, the same access to fertility benefits that heterosexual individuals enjoy." Am. Compl. ¶ 86. That barebones allegation comes nowhere close to the required "facts or statistical evidence demonstrating a causal connection between the challenged

policy and a significant disparate impact on the allegedly protected group." *Obrien v. Amazon.com Inc.*, 2023 WL 2207893, at *4 (N.D. Cal. Jan. 27, 2023) (emphasis added); *see also Moussouris v. Microsoft Corp.*, 2016 WL 4472930, at *10 (W.D. Wash. Mar. 7, 2016) ("Plaintiffs must allege something more than the conclusory assertion that the facially neutral policy they oppose in fact causes the disparate impact they challenge."); *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) (complaint suffered from "complete lack of factual content directed at disparate-impact liability" where there were "no factual allegations tending to show a causal link between the challenged testing protocols and a statistically significant racial imbalance" in the higher ranks).

In addition to lacking statistical evidence, Plaintiff also fails to offer any *facts* demonstrating a causal connection between the Plan and the purported disparate impact on individuals in non-heterosexual relationships.  For example, Plaintiff does not allege how or why the Plan's eligibility requirements for fertility benefits have an unusually harsh impact on individuals in non-heterosexual relationships, more so than individuals in heterosexual relationships who cannot conceive through "regular unprotected intercourse" and who must meet the Plan's definition of infertility under the same criteria allegedly required of Plaintiff.  Essentially, Plaintiff asks this Court to fill in the blanks of her causation theory for her.  And she does so without even providing the "anecdotal observations" of a disparity that this Court has previously found insufficient to plead causation for purposes of disparate impact.  *Fujishige v. Amazon.com Servs. LLC*, 2024 WL 348826, at *7 (N.D. Cal. Jan. 30, 2024) (Davila, J.) (dismissing FEHA sex discrimination claim because "[p]laintiff's anecdotal observations still fail[ed] to demonstrate the requisite causation to show a significant disparity between males and females").  Without well-pleaded allegations showing "any statistical adverse impact on the [protected] class," *Obrien*, 2023 WL 2207893, at *5, Plaintiff cannot satisfy disparate impact's "robust causality requirement," *Mahler*, 67 Cal. App. 5th at 113.  Her disparate impact claim should be dismissed on this ground too.  *See Obrien*, 2023 WL 2207893, at *5 (dismissing disparate impact claim and reasoning that the court need not make assumptions about disparities in the absence of sufficient allegations).

## VI.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's First Amended Complaint.

1    DATED: June 27, 2024                          Respectfully submitted,

2                                                  GIBSON, DUNN & CRUTCHER LLP

3

4                                                  By:  */s/ Heather L. Richardson*
                                                        Heather L. Richardson

5                                                  Attorneys for Defendant
                                                   United HealthCare Services, Inc.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

UNITED'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-00425-EJD-VKD