Lawrence A. Organ (SBN 175503)
Julianne K. Stanford (SBN 290001)
Kira Brekke (SBN 339757)
CALIFORNIA CIVIL RIGHTS LAW
GROUP
332 San Anselmo Avenue
San Anselmo, CA 94960
Tel. (415) 453-4740
Fax (415) 785-7352
Email: larry@civilrightsca.com
       julianne@civilrightsca.com
       kira@civilrightsca.com

Matthew C. Helland, (SBN 250451)
helland@nka.com
Jasjit Kaur Mundh (SBN 341455)
jmundh@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA  94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Anna P. Prakash, MN Bar No. 0351362*
aprakash@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
*Admitted Pro Hac Vice

Attorneys for Plaintiff and the Putative Class

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| Reyna Dempsey, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>Government Employees Insurance Company, United Healthcare Services, Inc., and DOES 1 through 10, inclusive,<br><br>Defendants. | **Case No.** 5:24-cv-00425-EJD-VKD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT GEICO'S AND DEFENDANT UNITED'S MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Hearing Date:   October 10, 2024<br>Hearing Time:  9:00 a.m.<br>Courtroom(s):  4, 5th Floor<br><br>Hon. Edward J. Davila |

## <u>TABLES OF CONTENTS</u>

I.    STATEMENT OF ISSUES ............................................................................................. 1

II.   INTRODUCTION ....................................................................................................... 1

III.  SUMMARY OF RELEVANT FACTS ........................................................................ 2

IV.   ARGUMENT ............................................................................................................... 4

    A. ERISA Does Not Preempt Plaintiff's State Law Claims ...................................... 4

    B. Plaintiff Pled a Plausible Claim for Disparate Treatment Under the ACA ............. 9

        i.  Plaintiff plausibly alleges discriminatory motive or intent because the Plan discriminates on its face and as applied .................................................. 11

        ii. United's proffered non-discriminatory basis for the Plan is irrelevant ..... 15

    C. Plaintiff Pled a Plausible Claim for Disparate Treatment under FEHA ............... 16

    D. Plaintiff Has Adequately Pled Her Disparate Impact Claim ................................ 20

    E. Plaintiff Adequately Pled Class Claims .............................................................. 22

    F. The Court Should Grant Leave to Amend .......................................................... 24

V.    CONCLUSION .......................................................................................................... 25

# **TABLES OF AUTHORITIES**

**Cases**

*Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781 (N.D. Cal. 2015) .......................................... 19

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015).............. 20 n.10

*Alhayoti v. Blinken,* 2022 WL 2869850 (N.D. Cal. July 21, 2022) ...................................... 14 n.6

*Allen v. City of Long Beach*, 2006 WL 2218220 (Cal. App., Aug. 4, 2006) .......................... 16-17

*Alston v. Atl. Elec. Co.*, 962 F. Supp. 616 (D.N.J. 1997) ..................................................... 7

*Arnold v. Sessions*, 2018 WL 6728008 (N.D. Cal. Dec. 21, 2018)................................... 22 n.14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 4

*Banaga v. GEICO*, 2019 WL 2451418 (S.D. Cal. June 12, 2019) ........................................ 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 4, 15

*Benton-Flores v. Santa Barbara Unified Sch. Dist*, 2021 WL 6752214 (C.D. Cal. Sept. 23, 2021) ............................................................................................................... 14-15 n.6

*Berton v. Aetna Inc.,* 2024 WL 869651 (N.D. Cal. Feb. 29, 2024) .......................... 10, 12, 13, 17

*Bess v. Adams & Assocs., Inc.,* 2017 WL 6017015 (E.D. Cal. Dec. 5, 2017) ............................ 19

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096 (9th Cir. 1999) .......................... 24

*Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215 (9th Cir. 2023)............ 21, 22

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020) ...................................... 6, 9, 10, 11, 15

*Briscoe v. Health Care Serv. Corp.* 281 F. Supp. 3d 725 (N.D. Ill. 2017)..................................... 9

*Brown v. Sysco Food Servs. of Metro New York LLC*, 2014 WL 5410650 (D.N.J. Oct. 22, 2014). 7

*Castaneda v. Burger King Corp.*, 597 F. Supp. 2d 1035 (N.D. Cal. 2009)................................. 24

*Cellemme v. Sessions*, 2017 WL 3749577 (D. Nev. Aug. 29, 2017) ...................................... 14 n.6

*Clerkin v. MyLife.Com*, 2011 WL 3809912 (N.D. Cal., Aug. 29, 2011)...................................... 23

*Coghlan v. Am. Seafoods Co. LLC,* 413 F.3d 1090 (9th Cir. 2005)....................................... 15 n.6

*Comm. House, Inc. v. City of Boise*, 490 F.3d 1041 (9th Cir. 2007)................................... 10, 12

*C. P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, 2022 WL 17788148 (W.D. Wash. Dec. 19, 2022)....................................................................................... 5 n.2

*Cruz v. Sky Chefs, Inc.*, 2013 WL 1892337 (N.D. Cal. May 6, 2013)....................................... 23

*De La Cruz v. Tormey*, 582 F.2d 45 (9th Cir. 1978)................................................. 17-18

*DeFrancesco v. Arizona Bd. Of Regents*, 2021 WL 4170673 (D. Ariz. Sept. 14, 2021) ........ 15 n.6

*DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719 (3d Cir. 1995) ................................. 11, 12, 13

*Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020) ..................................................... 4 n.2

*Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) ..................................................................... 11

*Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022) .................................................................................. 9

*Doe v. Univ. of Denver,* 1 F.4th 822 (10th Cir. 2021) ................................................................. 11

*Doe v. Univ. of Scis.,* 961 F.3d 203 (3d Cir. 2020) ..................................................................... 11

*Dollar v. Goleta Water Dist.*, 2022 WL 5176904 (C.D. Cal. Oct. 3, 2022) .......................... 18 n.8

*E.E.O.C. v. Local 350, Plumbers and Pipefitters* ("Local 350"), 998 F.2d 641 (9th Cir. 1992) .......

.................................................................................................................................................... 10, 17

*EEOC v. N. Gibson Sch. Corp.*, 266 F.3d 607 (7th Cir. 2001) ............................................... 12 n.5

*Fletcher v. Alaska*, 443 F. Supp. 3d 1024 (D. Alaska 2020) ....................................................... 13

*Frank v. United Airlines, Inc.*, 216 F.3d 845 (9th Cir. 2000) ..................................................... 17

*Fujishige v. Amazon.com Servs. LLC*, 2024 WL 348826 (N.D. Cal. Jan. 30, 2024) .................... 22

*Garcia v. Spun Steak Co.*, 998 F.2d 1480 (9th Cir. 1993) ......................................................... 20

*Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810 (5th Cir. 1996) ................................................ 21

*Gerdom v. Continental Airlines, Inc.*, 692 F.2d 602 (9th Cir. 1982) ................................ 10, 11, 17

*Goodline v. Suffolk Cnty. Water Authority,* 2017 WL 1232504 (E.D.N.Y. Mar. 31, 2017) ..... 15 n.6

*Hung Ping Wang v. Hoffman*, 694 F.2d 1146 (9th Cir. 1982) ..................................................... 21

*Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317 (2000) ........................................................... 16, 20 n.11

*Harris v. Forklift Sys, Inc.*, 510 U.S. 17 (1993) ........................................................................... 8

*Henry v. NYC Health and Hosp. Corp.*, 18 F. Supp. 3d 396 (S.D.N.Y 2014) ................... 15 n.6, 19

*Huddleston v. City & Cnty. Of San Francisco*, 2016 WL 4729175 (N.D. Cal. Sept. 12, 2016) .......

.................................................................................................................................................... 14 n.6

*Hung Ping Wang v. Hoffman*, 694 F.2d 1146 (9th Cir. 1982) ..................................................... 21

*Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324 (1977) ................................................. 16

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) ......................................................... 9

*Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464 (S.D.N.Y. 2009) .......................... 22

*Johnson v. United Cont'l Holdings, Inc.*, 2013 WL 6354210 (N.D. Cal. Dec. 5, 2013) .............. 20

*Kittel v. City of Oxnard*, 2018 WL 6004524 (C.D. Cal. Feb. 20, 2018) ........................................ 24

*Kohler v. Inter-Tel Techs.*, 244 F.3d 1167 (9th Cir. 2001) ............................................................ 6

*Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014) ................................................................................ 17

*Le v. Applied Biosystems*, 886 F. Supp. 717 (N.D. Cal. 1995) .................................................... 6

*Leiland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079 (N.D. Cal. 2008) .............. 13, 18

*Levy v. Mandalay Corp.*, 2015 WL 3629633 (D. Nev. June 10, 2015) .................................. 15 n.6

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ............................................................................ 4

*Majo v. Sony Interactive Ent. LLC*, 2022 WL 1188871 (N.D. Cal. Apr. 21, 2022) ..................... 23

*Makor v. BNSF Ry. Co.*, 2015 WL 13344903 (C.D. Cal. Mar. 20, 2015) ............................. 18 n.8

*McCarthy v. Brennan,* 2016 WL 946099 (N.D. Cal. Mar. 14, 2016) .................................... 14 n.6

*Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096 (N.D. Cal. 2014) .............................. 23

*Mgmt. Emps. of AT&T v. AT&T*, 1999 WL 334751 (D.N.J. Apr. 23, 1999) ................................ 7

*Molsbergen v. United States*, 757 F.2d 1016 (9th Cir. 1985) ...................................................... 22

*Murphy v. Health Care Serv. Corp.*, 2023 WL 6847105 (N.D. Ill. Oct. 17, 2023) ..................... 13

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ...................................................... 8

*Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669 (1983) ......................... 8

*Nguyen v. Adams & Assocs., Inc.*, 2018 WL 3913805 (E.D. Cal. Aug. 14, 2018) ...................... 19

*Nguyen v. Superior Court of Cal.*, 2014 WL 4467850 (N.D. Cal. Sept. 9, 2014) ....................... 19

*Nolan v. Otis Elevator Co.*, 505 A.2d 580 (N.J. 1986) ............................................................ 7, 8

*Ovieda v. Sodexo Operations, LLC*, 2012 WL 1627237 (C.D. Cal. May 7, 2012) ...................... 23

*Quinn v. U.S. Bank NA*, 129 Cal. Rptr. 3d 166 (Cal. Ct. App. 2011) ................................. 6, 7-8, 9

*Raytheon v. Hernandez*, 540 U.S. 44 (2003) .............................................................................. 20

*Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) .................................................... 4

*Reno v. Baird*, 957 P.2d 1333 (Cal. 1998) .................................................................................. 6

*Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) .........

................................................................................................................................... 23, 24

*Schmitt v. Kaiser Foundation Health Plan of Washington*, 965 F.3d 945 (9th Cir. 2020) .............. 9

*Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940 (9th Cir. 2020) ............................................ 10, 11

*Serv. Women's Action Network v. Mattis*, 352 F. Supp.3d 977 (N.D. Cal. 2018) ........................ 11

*Shaw v. Delta Air Lines Inc.*, 463 U.S. 85 (1983) ..................................................... 5, 6

*Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230 (4th Cir. 2021) ......................................... 11

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)..................................................... 22

*Tovar v. Essentia Health*, 342 F. Supp. 3d 947 (D. Minn. 2018) ...................................... 5 n.2

*Trans World Airlines, Inc. v. Thurston* ("*Thurston*"), 469 U.S. 111 (1985) ................................ 16

*Vasquez v. Bank of Am., N.A.*, 2013 WL 6001924 (N.D. Cal. Nov. 12, 2013)................ 19-20 n.10

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)..................................................... 23

*Warren v. Oil, Chem. & Atomic Workers*, 729 F. Supp. 563 (E.D. Mich. 1989) ........................... 7

*Weinreb v. Xerox Business Services, LLC Health and Welfare Plan*, 323 F. Supp. 3d 501 (D. Md. 2018)......................................................................................................................... 14

*Wood v. City of San Diego* 678 F.3d 1075 (9th Cir. 2012) ......................................... 14

*Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994)..................................................... 11

*Zamora v. Penske Truck Leasing Co., L.P.*, 2021 WL 809403 (C.D. Cal. March 3, 2021) ..... 23-24

**Statutes**

29 U.S.C. § 1144(a) ........................................................................................................... 5

29 U.S.C.§ 1144(d) ........................................................................................................... 5

42 U.S.C. § 2000e-2(a) ...................................................................................................... 6

42 U.S.C. § 2000e-5(e)(1)................................................................................................. 9

42 U.S.C. § 18116(a) ........................................................................................................ 9

20 U.S.C. § 1681 *et seq.*................................................................................................... 9

**Rules**

Fed. R. Civ. P. 8(d)........................................................................................................... 22

Fed. R. Civ. P. 15(a)(2) .................................................................................................... 22

**Federal Guidance**

U.S. Dept. of Health and Human Servs., Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972, 86 Fed. Reg. 27984 (May 25, 2021)...................................................................................... 9

I.    **STATEMENT OF ISSUES**

The issues are: (1) whether Plaintiff's Fair Employment and Housing Act ("FEHA") claims are subject to Employee Retirement Income Security Act of 1974 ("ERISA") preemption, (2) whether Plaintiff plausibly pleads discrimination on the basis of sex under her Affordable Care Act ("ACA") claim; (3) whether Plaintiff plausibly alleges disparate treatment on the basis of sex under FEHA; (4) whether Plaintiff plausibly alleges disparate impact under FEHA; (5) whether Plaintiff plausibly alleges class claims, and (6) whether the Court should grant leave to amend.

II.    **INTRODUCTION**

Up until July of 2023, Defendant Government Employees Insurance Company's ("GEICO") and Defendant United Healthcare Services, Inc.'s ("United") (together, "Defendants") discriminatory Health Plan (hereinafter "Plan") forced individuals in non-heterosexual relationships (as defined in the First Amended Complaint ("FAC"), ECF No. 42, ¶ 1, fn. 1) to undergo expensive and invasive medical procedures to obtain fertility benefits while individuals in a heterosexual relationship were not subject to such requirements. Specifically, the Plan provided three options to receive fertility benefits: (A) Undergo six-months to one year of sexual intercourse without a successful pregnancy; (B) Receive a diagnosis of medical infertility; or (C) Undergo Therapeutic Donor Insemination ("TDI") for six months to one year. Naturally, because individuals in non-heterosexual relationships cannot conceive through sexual intercourse, Defendants only provided such individuals with Options B and C.  But Defendants provided individuals in a heterosexual relationship *full* access to the Plan's three options, since such individuals could attempt to conceive through sexual intercourse without enduring any costs or invasive medical procedures prior to receiving benefits. This differential treatment is facially discriminatory.

When Plaintiff Reyna Dempsey ("Plaintiff"), a woman who is married to a woman, was ready to start a family in 2020, she learned her limited access to the Plan required her to undergo medically invasive and expensive TDI unless she received a medical diagnosis of infertility prior to commencing TDI. By providing individuals in non-heterosexual relationships with *fewer* options to qualify for fertility benefits, the Plan was facially discriminatory on the basis of sex and sexual orientation because it imposed an unequal burden on same-sex couples as compared to opposite-

-1-

sex couples. Plaintiff brings this lawsuit on behalf of all similarly situated individuals who, by reason of their sex and sexual orientation, were also denied full access to the Plan.

The Court should deny both Defendants' motions to dismiss. Plaintiff's state law claims are not preempted by ERISA because preemption would impair the enforcement of Title VII in violation of ERISA's savings clause.  And Plaintiff states a claim under both the ACA and FEHA because, by providing individuals in heterosexual relationships with a no-cost, non-invasive path to fertility benefits that it did not provide to Plaintiff and similarly situated individuals, the Plan is facially discriminatory or, in the alternative, had a disparate impact on this protected class.

## III.   <u>SUMMARY OF RELEVANT FACTS</u>

Since 2017, Plaintiff has been employed by GEICO and enrolled in Defendants' health insurance Plan. (FAC ¶¶ 8, 24, 64.) Prior to July 2023, Defendants' Plan required that an individual meet its definition of infertility through one of three means to qualify for fertility benefits: (a) six months to one year (depending on age) of sexual intercourse without a pregnancy ("Option A"); (b) a medical diagnosis of infertility unrelated to voluntary sterilization or failed reversal of voluntary sterilization ("Option B"); or (c) six months to one year of failed Therapeutic Donor Insemination ("TDI") without a pregnancy ("Option C"). (*Id.* ¶¶ 31-32, 38.) "Plaintiff and other similarly-situated individuals could not choose Option A, by reason of their [sex and] sexual orientation, as they do not have the ability to become pregnant through sexual intercourse with each other. Heterosexual couples, however, could choose Option A and merely represent having unprotected sex for 6 months to one year without pregnancy to receive fertility benefits." (*Id.* at ¶ 34.). Under the Plan's language, Option A could *only* apply to heterosexual intercourse and as such, Plaintiff Dempsey, and others similarly situated, *could never qualify for* this burden-free option. (FAC ¶ 33.) This reading is bolstered by the fact that Defendants changed its Plan to add having a same-sex partner to the definition of infertility. (*Id.* ¶¶ 12, 38.)

Plaintiff Dempsey is just one example of many who were forced into Defendants' discriminatory Plan. When she and her wife began planning to start a family, she learned this harsh truth: to qualify for covered fertility benefits, she would have to undergo one year of invasive and expensive TDI procedures because Option A, a no-cost, burden-free option, did not extend to her

as an individual in a non-heterosexual relationship where sexual intercourse could not result in conception.[1] (*Id.* ¶¶ 8-9, 33-36, 40.) Yet, under a plain language reading of Option A, individuals in a heterosexual relationship could merely self-report having unprotected sex for one year to qualify for fertility benefits. (*Id.* ¶¶ 5-6, 9, 33.) Prior to undergoing intrauterine insemination ("IUI"), one of the recognized types of TDI procedures under the Plan, and recognizing the disparate treatment based on her sexual orientation, Plaintiff requested her fertility benefits be covered by Defendants. She was denied coverage on April 5, 2021. (*Id.* ¶¶ 9, 36, 41.)

Plaintiff then underwent eight cycles of IUI over the course of <u>sixteen months</u> at Defendants' direction, costing her approximately $2,700 *per cycle* (including gas and medications) and causing her emotional distress. (*Id.* ¶¶ 8, 42-44, 46, 49-50, 54.) Each IUI cycle required her to visit the clinic (two hours away from her home) before and after—often more than once in a week— for various medical procedures and shots that left her with side effects. (*Id.* ¶ 42.) From May 8, 2021 to November 16, 2021, Plaintiff visited the clinic approximately 20 times. (*Id.* ¶ 44.) She complained to Defendants about their discriminatory policy on December 15, 2021 and January 3, 2022—explicitly pointing out that their policy is "discriminatory against non-heterosexual individuals, including same sex couples*." (*Id.* ¶ 46.) She continued to be denied benefits. (*Id.*)

After completing a year of IUI cycles, Plaintiff wrote to Defendants on May 10, 2022 again pleading: "[B]y requiring individuals like myself in same-sex relationships to first expend tens of thousands of dollars in IUI treatments prior to extending coverage you are inflicting a monetary burden that other individuals under the plan do not have to shoulder. This is clear discrimination based on my sexual orientation." (*Id.* ¶49.) She resubmitted this letter again on August 5, 2022 after Defendants ignored it due to a technicality. (*Id.* ¶50.) Defendants again denied her coverage on September 7, 2022. (*Id.*) In November of 2022, Defendants finally began covering her fertility

---

[1] Plaintiff also did not receive a diagnosis of medical infertility from Defendants' doctors nor would they accept Plaintiff's own doctor's diagnosis of unspecified female infertility, which eliminated Option B. (*Id.* ¶¶ 7, 35, 40.)

1    benefits. (*Id.* ¶52.) Shortly after undergoing covered IVF treatments, a statistically more successful

2    form of TDI, Plaintiff became pregnant in March 2023 and gave birth that December. (*Id.* ¶ 53.)

3    **IV.    <u>ARGUMENT</u>**

4          To state a claim under Rule 12(b)(6), a plaintiff need only allege "enough facts to state a

5    claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

6    A claim is facially plausible when the plaintiff pleads facts permitting the court to "draw the

7    reasonable inference that the defendant is liable for the misconduct alleged," though allegations

8    must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*,

9    556 U.S. 662, 678 (2009) (citation omitted). In evaluating a Rule 12(b)(6) motion, the court must

10   accept as true all well-pleaded allegations and construe them in the light most favorable to plaintiff.

11   *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). If the court concludes that the

12   motion should be granted, the "court should grant leave to amend even if no request to amend the

13   pleading was made, unless it determines that the pleading could not possibly be cured by the

14   allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation omitted).

15         The Court should deny both motions. GEICO argues ERISA preempts Plaintiff's FEHA

16   state law claims. But preemption would improperly impair the enforcement of Title VII in violation

17   of ERISA's savings clause. And the ACA and FEHA expressly forbid exactly what Defendants'

18   Plan did here – treat individuals differently on the basis of a protected category. Individuals in non-

19   heterosexual relationships, a categorization only determined by one's sex and sexual orientation,

20   were not only denied full access to Defendants' Plan, but that denial forced them to undergo costly,

21   unnecessary medical procedures. Plaintiff states a claim for all causes of action.

22         **A.  ERISA Does Not Preempt Plaintiff's State Law Claims**

23         The Court should reject GEICO's argument that Plaintiff's FEHA claims are preempted by

24   ERISA[2]. Section 514(a) provides that ERISA preempts "any and all State laws insofar as they may

---

[2] Plaintiff's ACA claims are not subject to ERISA. *See generally Doe v. CVS Pharmacy, Inc.*, 982
F.3d 1204 (9th Cir. 2020) (allowing plaintiff to assert a claim of sex discrimination in violation of

-4-

1    now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, Section

2    514(d) of ERISA provides that nothing in the section "shall be construed to alter, amend, modify,

3    invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued

4    under any such law." 29 U.S.C. § 1144(d). Because preemption of Plaintiff's FEHA claims would

5    impair the enforcement of Title VII, those claims are not preempted under Section 514(d).

6            The Supreme Court addressed preemption of state law discrimination claims under ERISA

7    in *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85 (1983). The Court found that preemption of a New

8    York anti-discrimination statute would impair the enforcement of Title VII because the state statute

9    prohibited the same discriminatory acts that Title VII prohibits. *See id.* at 101-103. The Court

10   recognized that "[s]tate laws obviously play a significant role in the enforcement of Title VII" and

11   "Title VII requires recourse to available state administrative remedies [*e.g.*, the EEOC's referral of

12   charges to the specific state agency and assignment of substantial weight to state administrative

13   determinations]". *Id.* at 101-102 (citing cases). In denying preemption, the Court reasoned:

14           Given the importance of state fair employment laws to the federal enforcement
         scheme, pre-emption of the [state] Human Rights Law would impair Title VII to the
15       extent that the Human Rights Law provides a means of enforcing Title VII's
         commands. Before the enactment of ERISA, an employee claiming discrimination
16       in connection with a benefit plan would have had his complaint referred to the New
         York State Division of Human Rights. If ERISA were interpreted to pre-empt the
17       Human Rights Law entirely with respect to covered benefit plans, the State no longer
         could prohibit the challenged employment practice and the state agency no longer
18       would be authorized to grant relief. The EEOC thus would be unable to refer the
         claim to the state agency. This would frustrate the goal of encouraging joint
19       state/federal enforcement of Title VII; an employee's only remedies for
         discrimination prohibited by Title VII in ERISA plans would be federal ones. Such
20       a disruption of the enforcement scheme contemplated by Title VII would, in the
         words of § 514(d), "modify" and "impair" federal law.
21

22   ─────────────────

23   Section 1557 for benefits provided by a group health plan governed by ERISA); *see also C. P. by*

24   *& through Pritchard v. Blue Cross Blue Shield of Illinois*, 2022 WL 17788148, at *8 (W.D.

25   Wash. Dec. 19, 2022) ("ERISA expressly provides that it is not to be construed to impair laws

26   like Section 1557."); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 954 (D. Minn. 2018) ("The

27   Court will not construe ERISA to impair Section 1557."). Neither Defendant argues otherwise.

28

-5-

*Id.* at 102. The Court held that to the extent any state law prohibits employment practices that are lawful under Title VII, such laws would be preempted. *Id.* at 103, 105-6.

This Court has applied the same reasoning in holding that ERISA preemption of FEHA would impair enforcement of the ADA. *See Le v. Applied Biosystems*, 886 F. Supp. 717, 720-21 (N.D. Cal. 1995). In *Le*, the plaintiff alleged that the defendant fired him to avoid payment of medical benefits to his daughter. *Id.* at 719. The Court held that since the alleged facts would violate both FEHA and the ADA, the plaintiff's FEHA claim was parallel to the ADA and could not be preempted. *Id.* at 720-21. The reasoning applies equally here.

The objectives and statutory language of FEHA and Title VII are so similar that "California courts consistently look to Title VII for guidance in interpreting FEHA." *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1172 (9th Cir. 2001); *see also Reno v. Baird*, 957 P.2d 1333, 1337 (Cal. 1998). Plaintiff's FEHA sex discrimination claims allege acts that are also prohibited by and unlawful under Title VII. *See* 42 U.S.C. § 2000e-2(a); *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020) (holding it is unlawful to discriminate against an individual "because of" sex under Title VII based on sexual orientation). Preemption of Plaintiff's FEHA claims would therefore impair the enforcement of Title VII. *See Shaw*, 463 U.S. at 101-103; *Le*, 886 F. Supp. at 720-21; *Quinn v. U.S. Bank NA*, 129 Cal. Rptr. 3d 166, 177-80 (Cal. Ct. App. 2011). FEHA plays a significant role in the federal enforcement scheme under Title VII, as Plaintiff pled. (FAC ¶¶ 69, 81.)

Moreover, Section 709 of Title VII encourages the EEOC to cooperate with Fair Employment Practices Agencies, such as the California Civil Rights Department ("CRD") which enforces FEHA, and requires the EEOC provide data to such agencies. (FAC ¶¶ 69, 81.) The CRD and EEOC have a work-sharing agreement to "manage charges of employment discrimination," "share relevant data," "provide training," and may even "work together on investigations of some cases" of employment discrimination. *Id.* The U.S. Supreme Court relied on this work sharing agreement when it found that ERISA preemption of state law claims would impede state and federal enforcement of Title VII under Section 709. *See Shaw*, 463 U.S. at 102-03.

GEICO argues there should be no preemption because Plaintiff relies on FEHA's statute of limitations, which is longer than that in Title VII. In support, GEICO relies principally on a New

-6-

Jersey state supreme court case and its progeny, including an unpublished Sixth Circuit case analyzing Michigan's state anti-discrimination statute. *See* GEICO Memo. at 9-10 (citing *Nolan v. Otis Elevator Co.*, 505 A.2d 580 (N.J. 1986)). These cases, which conclude that ERISA's savings cause does not prevent preemption of state laws to the extent their statutes of limitation are longer than federal law, are not binding on this Court. Plaintiff respectfully submits that decisions regarding preemption of New Jersey and Michigan state law should not guide this Court's determination of whether California law is preempted here. Significantly, New Jersey and Michigan state laws do not contain an exhaustion requirement, which is an important distinction from the work-sharing agreement present in California law and on which the United States Supreme Court relied in *Shaw*. *See Nolan*, 505 A.2d at 588 ("[The NJLAD] allows claimants to bypass the Division and bring suit directly in Superior Court".); *Alston v. Atl. Elec. Co.*, 962 F. Supp. 616, 625 (D.N.J. 1997) (no state exhaustion requirement); *Mgmt. Emps. of AT&T v. AT&T*, 1999 WL 334751 (D.N.J. Apr. 23, 1999) (same); *Brown v. Sysco Food Servs. of Metro New York LLC*, 2014 WL 5410650, at *4 (D.N.J. Oct. 22, 2014) (same); *Warren v. Oil, Chem. & Atomic Workers*, 729 F. Supp. 563, 567 (E.D. Mich. 1989) (same, as to Michigan's Elliott–Larsen Act).

In California, the Court of Appeal found no preemption in similar circumstances in a case involving the National Bank Act ("NBA"). *See Quinn v. U.S. Bank NA*, 129 Cal. Rptr. 3d 166, 177-80 (2011). Here, the defendant argued that the statute of limitations under FEHA (at the time, one-year to exhaust with the administrative agency and one-year to sue after a right-to-sue letter) was preempted by the shorter statute of limitations under the ADA (either 180 days or 300 days to exhaust and a 90 day right-to-sue) and that the plaintiff's entire action was time-barred under the federal deadlines. *Id.* at 180-81. The Court, after analyzing *Shaw*, rejected both arguments, holding that the plaintiff's failure to comply with the statute of limitations imposed by the ADA was not necessary to satisfy Congress's intent as expressed within Section 24 of the NBA, as amended by the ADA. *Id.* at 181. Permitting states to impose different statutes of limitations than those imposed under federal anti-discrimination laws would not impact Congress's intent to subject national banks to a uniform and universal banking system and would not subject banks to diverse and duplicative superintendence. *Id.* The Court highlighted that statutes of limitations have no substantive

-7-

regulatory effects on the defendant banks—the subject of the NBA—and only regulate when a plaintiff must file a claim. *Id.* Further, the California Court of Appeal noted that the statute of limitations imposed by the ADA already differs from state to state (180 days vs. 300 days depending on if the state has an agency to seek relief from such practice). *Id.* at 181-182. The Court of Appeal concluded that Section 24 of the NBA did not preempt FEHA's statute of limitations. *Id.* at 182.

The Court should reach the same conclusion here. Plaintiff originally filed a timely EEOC charge, which was cross-filed with the CRD and put GEICO on notice of the claim against it. (FAC ¶ 22.) Although Plaintiff did not file federal suit within the 90-day time period, Plaintiff filed a timely CRD charge on December 14, 2023 alleging her individual claims and class claims. (*Id.*) As pled, all putative class members were subject to the Plan until July 2023. (FAC ¶ 39.) She received her right-to-sue letter on December 20, 2023 and filed her complaint in federal court on January 24, 2024, in compliance with the administrative procedure and within the limitations periods established by FEHA, and within 300-days from the last day all putative class members were last subject to the discriminatory policy as required by Title VII.

Requiring Plaintiff to comply with the 90-day right to sue deadline imposed by Title VII is not necessary to satisfy Congress's intent in enacting Title VII. With Title VII, Congress intended to "strike at the entire spectrum of disparate treatment of men and women in employment". *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotations omitted) (citing *Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 21 (1993)). Indeed, in discussing Title VII's protection for pregnant spouses of male employees, the Supreme Court has noted that "Congress had always intended to protect *all* individuals from sex discrimination in employment". *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 681 (1983).

Allowing Plaintiff to continue with her FEHA claims, which imposes a longer statute of limitations than Title VII, would in no way conflict with—but rather supports—Congress's intent of protecting all individuals from sex discrimination. *See Quinn*, 129 Cal. Rptr. 3d. at 181; *see also Nolan*, 505 A.2d at 588 ("The critical question is whether the suit brought under the longer period of limitation, without any state mediative process, furthers the goals of the ADEA so as to escape ERISA preemption."). Further, similar to the ADA, Title VII also imposes different statutes of

limitation depending on the particulars of state law from the discriminatory practice (42 U.S.C. § 2000e-5(e)(1)). *See Quinn*, 129 Cal. Rptr. 3d. at 181-182. Allowing states to also apply longer statutes of limitations would only regulate a plaintiff's time to file a complaint and has no substantive effect on the employers—the subjects of Title VII. *See id.* at 181. Because preempting Plaintiff's state law claims would impair the enforcement of Title VII, Plaintiff's FEHA claims cannot be preempted by ERISA under Section 514(d).[3]

### B.  Plaintiff Pled a Plausible Claim for Disparate Treatment under the ACA

Section 1557 of the ACA, 42 U.S.C. § 18116(a), provides that an individual shall not "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity" receiving federal funding, "including…contracts of insurance." *Schmitt v. Kaiser Foundation Health Plan of Washington*, 965 F.3d 945, 950 (9th Cir. 2020). "The enforcement mechanisms provided for and available under" Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*) apply to violations of the ACA. Title IX "implies a private right of action to enforce its prohibition on intentional sex discrimination." *Briscoe v. Health Care Serv. Corp.* 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017) (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, (2005)). Following the Supreme Court's ruling in *Bostock,* 140 S. Ct. 1731 (2020), the U.S. Department of Health and Human Services stated it "will interpret and enforce Section 1557's prohibition on discrimination on the basis of sex to include: 1) Discrimination on the basis of sexual orientation; and 2) discrimination on the basis of gender identity." U.S. Dept. of Health and Human Servs., Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972, 86 Fed. Reg. 27984 (May 25, 2021); *see also Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022) (applying *Bostock* and holding that discrimination on the basis of sexual orientation constitutes discrimination "because of sex").

Under Title IX and by extension Section 1557, a plaintiff states a viable claim for sex discrimination by plausibly alleging: (1) the defendant is a healthcare program that receives federal financial assistance; (2) that she was excluded from participation in, denied the benefits of, or

---

[3] Plaintiff concedes that the additional remedies of FEHA would not apply here.

subjected to discrimination in the provision of healthcare services; and (3) this discriminatory treatment occurred on the basis of sex. *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 946 (9th Cir. 2020). Defendant United (the only entity Plaintiff sued under the ACA) does not dispute that it receives federal funding, that Plaintiff was enrolled in the Plan, or that she could not satisfy Option A, satisfying the first and second elements. That leaves the third element, which a plaintiff can satisfy by alleging that a healthcare plan, on its face, applied "less favorably" to a protected group on the basis of sex. *Gerdom v. Continental Airlines, Inc*., 692 F.2d 602, 608 (9th Cir. 1982); *see also Comm. House, Inc. v. City of Boise*, 490 F.3d 1041, 1048 (9th Cir. 2007) ("A facially discriminatory policy is one which on its face applies less favorably to a protected group."); *E.E.O.C. v. Local 350, Plumbers and Pipefitters* ("Local 350"), 998 F.2d 641, 645 (9th Cir. 1992) (noting that a facially discriminatory policy is one that treats similarly situated persons differently). Accordingly, the question is whether Plaintiff's allegations raise a plausible inference that United discriminated against Plaintiff on the basis of sex. The answer to this question is a resounding "yes*". See Berton v. Aetna Inc.,* 2024 WL 869651, at *4 (N.D. Cal. Feb. 29, 2024).

In *Berton*, the plaintiff challenged Aetna's fertility policy that gave same-sex couples only one pathway to receive fertility benefits, similar to the TDI option here, while providing heterosexual couples with an additional pathway to benefits via six months to one year of unprotected sex. The Court held that "Plaintiff plausibly alleges that this differential treatment on the basis of sexual orientation is facially discriminatory because it imposes an unequal burden on same-sex couples as compared to opposite-sex couples," denying Defendant's motion to dismiss. *Id.* at *4. This follows from the Supreme Court's conclusion that "if changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred." *Bostock*, 590 U.S. 644 at 660. There is no distinction between sex and sexual orientation under the ACA; "homosexuality…[is] inextricably bound up with sex. Not because homosexuality…[is] related to sex in some vague sense or because discrimination on these bases has some disparate impact on one sex or another, but because to discriminate on these grounds requires an employer to intentionally treat individual employees differently because of their sex." *Id.* at 661.

To survive a Rule 12(b)(6) motion, a plaintiff must only plead factual allegations that support an inference that sex was a "motivating factor" behind the discrimination she faced. *See Schwake,* 967 F.3d at 946 (9th Cir. 2020); *Sheppard v. Visitors of Va. State Univ.,* 993 F.3d 230, 236 (4th Cir. 2021); *Doe v. Univ. of Denver,* 1 F.4th 822, 830 (10th Cir. 2021) (decision on summary judgment); *Doe v. Univ. of Scis.,* 961 F.3d 203, 209 (3d Cir. 2020); *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). It does not "matter that, when an employer treats one employee worse because of that individual's sex, other factors may contribute to the decision." *Bostock*, 590 U.S. 644 at *661.

Like the plaintiff in *Burton*, Plaintiff Dempsey pled that she "and other similarly-situated individuals could not choose Option A, by reason of their [sex and] sexual orientation, as they do not have the ability to become pregnant through sexual intercourse with each other. Heterosexual couples, however, could choose Option A and merely represent having unprotected sex for 6 months to one year, depending on age and without additional requirements, without pregnancy to receive fertility benefits." (FAC ¶ 34). This unequal access to the Plan, as enforced by United, imposed harder requirements on non-heterosexual couples on the basis of sex. "[I]t is impossible to discriminate against a person for being homosexual…without discriminating against that individual based on sex." *Bostock*, 590 U.S. 644, at 660. Thus, Plaintiff plausibly alleged that the Plan discriminated "on the basis of sex."

### i.    Plaintiff plausibly alleges discriminatory motive or intent because the Plan discriminates on its face and as applied

Where a claim of discriminatory treatment is based upon facial discrimination, like here, a plaintiff "need not otherwise establish the presence of discriminatory intent." *Gerdom*, 692 F.2d 602, 608; see also *Serv. Women's Action Network v. Mattis*, 352 F. Supp.3d 977, 988 (N.D. Cal. 2018) (holding where a case "involves a facially discriminatory policy that treats men and women differently," there is "no need to inquire into the deliberative process and discern intent and motive.") "[I]n a facial disparate treatment case, the protected trait by definition plays a role in the decision-making process, inasmuch as the policy explicitly classifies people on that basis." *DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 726 (3d Cir. 1995).

Here, Plaintiff pled that the Plan was facially discriminatory *because*, *per the text of the Plan,* it treated those in non-heterosexual relationship differently based on their sex and sexual orientation. The Plan allowed individuals in heterosexual partnerships to choose one of *three options*, the first of which (Option A) did not accrue out-of-pocket costs given they *could* become pregnant through sexual intercourse. Without a medical diagnosis of infertility *prior* to undergoing TDI, Plaintiff (and others in non-heterosexual relstionships) only had *one option*: undergo expensive IUI. Plaintiff plausibly alleged that Option A, by its plain terms, applied only to heterosexual intercourse, a reading bolstered by Defendants' later change to explicitly include individuals in a same-sex relationship in the definition of infertility. (FAC ¶¶ 33, 38.)[4] The Plan need not specifically reference "sexual orientation," or "same-sex relationships" to be facially discriminatory because "the exclusion of these terms is not determinative as to the Policy's real-world effect." *Berton,* 2024 WL 869651 at *4. As such, the Plan discriminated on its face.[5]

United seeks to move the goalposts for challenging a facially discriminatory policy by creating its own definition of facial discrimination: "a policy that *expressly* classifies people on the basis of a protected characteristic." (United Mem. at 18.) In support, United cites *Community House, Inc. v. City of Boise*, 490 F.3d 1041 (9th Cir. 2007). But that case merely held that "[a] facially discriminatory policy is one which on its face applies less favorably to a protected group." *Id.* at 1048. United also cites *DiBiase* for the proposition that "[t]he touchstone of explicit facial discrimination is that the discrimination is apparent from the terms of the policy itself." 48 F.3d 719 at 727. That is true, but neither *Community House* nor *DeBiase* mandate that a policy use specific language such as "sex" or "sexual orientation" to be facially discriminatory.

---

[4] As outlined in Plaintiff's Opposition to United's Request for Judicial Notice, the Court should reject United's attempt to introduce expert testimony regarding the definition of "infertile".

[5] *EEOC v. N. Gibson Sch. Corp.*, 266 F.3d 607, 617 (7th Cir. 2001) is inapposite because it was decided on summary judgment and because the reference to a facially discriminatory policy discriminating each time it applies was in the context of the continuing violation doctrine.

In *DiBiase*, for example, the plaintiffs challenged a reduction in force and accompanying release of claims. 48 F.3d at 722. Although the release language applied equally to all affected, the plaintiffs argued it was facially discriminatory because it required employees over 40 to release an extra claim for age discrimination. The Court held the policy was not facially discriminatory because it "required referencing a fact outside the policy—namely the [Age Discrimination in Employment Act]" which provided the additional cause of action. *DiBiase,* 48 F.3d at 727. Because the policy was *only* discriminatory due to the additional potential claim afforded by the ADEA, the Court held the policy was not facially discriminatory. *Id.* That is not the case here. Plaintiff does not rely on the existence of an external statute or policy that caused the Plan to treat people differently. The Plan discriminated because it "impose[d] inherently different and more demanding burdens on same-sex partners." *Berton*, 2024 WL 869651, at *4.

United compares Plaintiff to a heterosexual woman who experiences pain during sex. This argument fails for many reasons. First, it relies on the assumption that this hypothetical woman would never have sexual intercourse—an inappropriate assumption on a motion to dismiss. Second, Option A does not impose any requirements regarding the "timing and/or frequency of intercourse" (FAC ¶ 6), suggesting that the hypothetical woman could have intercourse once in a year and satisfy the policy. Third, even if the hypothetical woman could never have sexual intercourse, "negative treatment of other employees outside the protected class also does not defeat a plaintiff's prima facie case." *Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1099 (N.D. Cal. 2008).

The Court should follow *Berton* and deny United's motion because the Plan "on its face, [] impose[d] inherently different and more demanding burdens on same-sex partners." *Berton,* 2024 WL 869651, at *4; *see also Murphy v. Health Care Serv. Corp.*, 2023 WL 6847105, at *1 (N.D. Ill. Oct. 17, 2023) (inferring that "the policy intentionally discriminates against LGBTQ members by excluding them from a cost-free method of demonstrating they meet the definition of infertility."); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1030 (D. Alaska 2020) (holding defendant's policy to be facially discriminatory because it treated a transgender woman, differently by denying her insurance coverage for the same procedures it provided to "natal" women).

Even if this Court does not find the Plan to be facially discriminatory, the Court can infer discriminatory intent or motive because Defendant applied the plan to exclude Option A for individuals in a protected class. Plaintiff alleged more than just adoption of a policy known to disfavor a protected group; she alleged that Defendants *applied* the policy in a discriminatory manner by denying coverage to individuals in non-heterosexual relationships who could not become pregnant through intercourse by virtue of their sex and sexual orientation an option made available to individuals in heterosexual relationships. (See generally FAC.) This case is therefore different than *Wood v. City of San Diego,* where the court rejected the plaintiff's argument that discriminatory intent should be inferred from the adoption of *a facially neutral* policy that was known to have a discriminatory impact on a protected group. 678 F.3d 1075, 1081 (9th Cir. 2012).

*Weinreb v. Xerox Business Services, LLC Health and Welfare Plan,* 323 F. Supp. 3d 501 (D. Md. 2018) is also inapposite. There, the court rejected an argument that a facially neutral healthcare plan that covered fentanyl only for individuals with cancer diagnoses constituted sex discrimination where the plaintiff, who had been prescribed fentanyl for a condition that only affected women but did not have cancer, was denied coverage. 323 F. Supp. 3d. at 522. The healthcare plan in *Weinreb*, unlike here, was applied neutrally to deny coverage to *all* individuals without cancer, not on the basis of any protected class; the plan affected *everyone* equally regardless of any other protected category and as, such, no discriminatory inference could be drawn. Here, United excluded a targeted group of individuals in a non-heterosexual relationship from coverage under Option A, since no amount of intercourse would result in pregnancy.[6]

---

[6] United also cites a string of inapposite cases—many of which are unpublished decisions in matters brought by *pro se* litigants who were given leave to amend—where, unlike here, there was no challenge to a discriminatory policy. *E.g., McCarthy v. Brennan*, 2016 WL 946099 (N.D. Cal. Mar. 14, 2016); *Huddleston v. City & Cnty. Of San Francisco*, 2016 WL 4729175, at *4 (N.D. Cal. Sept. 12, 2016); *Alhayoti v. Blinken,* 2022 WL 2869850 (N.D. Cal. July 21, 2022); *Cellemme v. Sessions*, 2017 WL 3749577 (D. Nev. Aug. 29, 2017); *Benton-Flores v. Santa Barbara Unified Sch. Dist*,

-14-

ii.    **United's proffered non-discriminatory basis for the Plan is irrelevant**

On a Rule 12(b)(6) motion, the Court need only decide whether a plaintiff has plausibly stated a claim for relief. *Twombly,* 550 U.S. at 570. United urges this Court to do more by asking it to weigh their justifications for the Plan (infertility status) against Plaintiff's allegations. But Plaintiff met her burden by pleading that the Plan, either facially or in effect, was discriminatory because it treated a targeted group—individuals in non-heterosexual relationships—less favorably. Regardless, United's argument that it applied its Plan on the basis of infertility status, not sex, is unconvincing. As the *Bostock* Court recognized, "homosexuality…[is] inextricably bound up with sex" such that discrimination on the basis of sex is also on the basis of sexual orientation. *Bostock,* 590 U.S. 644 at 661. So too is the ability to achieve pregnancy through intercourse part and parcel with one's sexual orientation. The two cannot be divorced. Under Defendants' Plan, individuals in in heterosexual relationships could meet the definition of infertility by simply having unprotected sex, whereas individuals in non-heterosexual relationship, like Plaintiff, could not.

Regardless of the definition United used for infertility[7], as the Plan was applied an individual in a non-heterosexual relationship had to jump through costly, burdensome hoops to obtain coverage that would not have been required of them if they were in a heterosexual relationship. United's argument that "a woman of *any* sexual orientation" met the definition of infertility through Options A, B, or C (United Mtn. p. 14), ignores the facts as pled: that Option A applies to heterosexual sexual intercourse and therefore is not available to individuals like Plaintiff—unless, of course United argues that the Plan forced non-heterosexual women to have

---

2021 WL 6752214 (C.D. Cal. Sept. 23, 2021); *DeFrancesco v. Arizona Bd. Of Regents*, 2021 WL 4170673 (D. Ariz. Sept. 14, 2021); *Goodline v. Suffolk Cnty. Water Authority,* 2017 WL 1232504 (E.D.N.Y. Mar. 31, 2017); *Levy v. Mandalay Corp.*, 2015 WL 3629633 (D. Nev. June 10, 2015); *Henry v. NYC Health and Hosp. Corp.,* 18 F. Supp. 3d 396 (S.D.N.Y 2014); *Coghlan v. Am. Seafoods Co. LLC,* 413 F.3d 1090 (9th Cir. 2005).

[7] United's motion does not suggest that it actually used the cited research to draft the Plan.

-15-

heterosexual sex to qualify for benefits, which would be discriminatory. As alleged, United's addition of having a same-sex partner as qualifying for fertility benefits is proof that Option A was previously unavailable to Plaintiff and others similarly situated. (FAC ¶ 12.) United's suggestion that the Plan applied only based on fertility status therefore ignores that infertility, defined under Option A of the Plan, was necessarily dependent on an individual's sex and sexual orientation.

### C.  Plaintiff Pled a Plausible Claim for Disparate Treatment under FEHA

The Plan is facially discriminatory under FEHA, just as it is facially discriminatory under the ACA, given FEHA is modeled after Title VII on which the ACA relies. Under FEHA, disparate treatment means "the employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). A plaintiff alleging disparate treatment must show: (1) She belongs to a protected class; (2) She was qualified for the position; (3) She was subject to an adverse employment action; and (4) some other circumstance suggests discriminatory motive. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000). Defendants do not dispute that Plaintiff Dempsey alleged she belonged to a protected class, that she was qualified for the position or that she was subject to an adverse employment action. As such, the operative question rests on this fourth prong: whether Plaintiff's lack of full access to Defendants' Policy suggests discriminatory motive because it is facially discriminatory. Like under the ACA, the answer can only be "yes." *See Trans World Airlines, Inc. v. Thurston* ("*Thurston*"), 469 U.S. 111, 121 (1985).

In *Thurston*, the Court found the challenged policy—which did not specifically identify a group of protected individuals by name—was nonetheless facially discriminatory under the ADEA because, as applied, it provided a benefit to some that it discriminatorily denied to others on the basis of age. *Thurston*, 469 U.S. at 120-21. Applying *Thurston*, the California Court of Appeal analyzed under FEHA a challenge to a policy that prohibited spouses from working in the same department. *Allen v. City of Long Beach*, 2006 WL 2218220 (Cal. App., Aug. 4, 2006). The court rejected the City's argument that the policy was facially neutral because it applied to all individuals at the company, regardless of marital status, and was focused on avoiding conflicts of interest. *Id*. at *4. The court instead held the policy was facially discriminatory because of its *effect* on targeted

-16-

married individuals. *Id*. The same is true here. Plaintiff alleged that Defendants' Plan was facially discriminatory because it excluded Plaintiff and others similarly situated from accessing benefits in a way that those in heterosexual relationships could access them. United's repeated argument that the Plan only operated based on fertility status ignores that individuals in non-heterosexual relationships were forced to Option C not because of infertility, but because they were in a non-heterosexual relationship.  Plaintiff and others similarly situated could not qualify for Option A because of their sex and sexual orientation i.e., whether they could reasonably attempt to conceive through intercourse based on their sex and the sex of their partner.

GEICO argues the Plan is facially neutral because "there is no reference to sex or sexual orientation in the Plan's fertility-qualification criteria." (GEICO Mem. at 20.) The *Berton* court rejected that very argument. *Berton*, 2024 WL 869651, at *4 ("the exclusion of these terms is not determinative as to the Policy's real-world effect"); *see also Frank v. United Airlines, Inc.*, 216 F.3d 845, 854 (9th Cir. 2000) (holding that United Airlines' weight policy was facially discriminatory because it created a "sex-differentiated" standard that "impose[d] unequal burdens on men and women"); *Latta v. Otter*, 771 F.3d 456, 467–68 (9th Cir. 2014) (holding that Idaho and Nevada laws that banned same-sex marriage discriminated on the basis of sexual orientation, even though the laws did so by classifying couples based on "procreative capacity" instead of sexual orientation). Even if the Plan did not explicitly refer to sex and sexual orientation, as a practical matter, as alleged it "applie[d] less favorably" to same-sex partners. *Gerdom*, 692 F.3d at 608; *see also Local 350,* 998 F.2d at 645 (noting that a facially discriminatory policy is one that treats similarly situated persons differently).

GEICO misinterprets *De La Cruz v. Tormey*, 582 F.2d 45, 49 (9th Cir. 1978). The *De La Cruz* court held that the actions and decisions of the defendants—who female Plaintiffs sued for discrimination on the basis of sex for failing to implement childcare facilities on campuses, thus depriving them of educational opportunities—were not facially discriminatory because childcare facilities were equally accessible to men and women. The holding was not contingent on any "classification" language as GEICO argues; rather, the Court focused on child facilities not being "restricted in their application to the members of one sex or the other; on-campus childcare facilities

-17-

are equally unavailable to both men and women, and to those both with and without child-rearing responsibilities." *De La Cruz*, 582 F.2d at 50. Here, the Plan—specifically Option A's no-cost option—*was* restricted given Plaintiff could *never* qualify for it.[8]

GEICO compares single heterosexual men and women with Plaintiff, arguing that no discriminatory animus exists if certain heterosexual individuals were unable to qualify for Option A. This argument falls flat. Any heterosexual person, whether married or otherwise, could qualify for Option A by having unprotected sex for six months to a year.[9] Plaintiff did not have that option available to her. And it matters not that some heterosexual individuals might voluntarily incur costs in hopes of increasing their chances of becoming pregnant. Defendants' plan is discriminatory because it forced Plaintiff to *involuntarily* incur costs (not to mention unwanted intrusion in her body) before benefits became available to her. And even if it were true that the policy had ancillary negative effects on others, "negative treatment of other employees outside the protected class also does not defeat a plaintiff's prima facie case." *Leland,* 576 F. Supp. 2d at 1099.

Both Defendants argue that Plaintiff needs to identify specific comparators or similarly situated heterosexuals who were treated more favorably to prove intent. But this is merely *one* way

---

[8] GEICO cites cases that are distinguishable because they were decided on summary judgment or under a different standard. *See Makor v. BNSF Ry. Co.*, 2015 WL 13344903, at *5-6 (C.D. Cal. Mar. 20, 2015) (decided on summary judgment and holding the plaintiff provided *no evidence* that the disputed policy demonstrated a discriminatory animus without inference or presumption); *Dollar v. Goleta Water Dist.*, 2022 WL 5176904, at *4-5 (C.D. Cal. Oct. 3, 2022) (decided under the Equal Protection Clause's "strict scrutiny" heightened standard).

[9] GEICO argues that the ability for heterosexual couples to self-report is speculation and conjecture on Plaintiff's part, but the plain language of the policy does not place *any* additional requirements on individuals to satisfy Option A beyond demonstrating "6 months to one year of sexual intercourse without a pregnancy." (FAC ¶ 6.)

a plaintiff may show intent. "A plaintiff may [also] show 'other similarly situated employees outside of the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" *Bess v. Adams & Assocs., Inc.,* 2017 WL 6017015, at *3 (E.D. Cal. Dec. 5, 2017) (citing *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 800 (N.D. Cal. 2015) (emphasis added). Plaintiff sufficiently pled these "other circumstances": a facially discriminatory policy that did not allow her to qualify for the no-cost Option A *because* of her sex and sexual orientation. That is evidence of discriminatory intent and motive. *Banaga v. GEICO*, cited by Defendants, is inapposite, because there the challenged policy, which did not account for medical leave in establishing bonus quotas, was both permitted by the Family Medical Leave Act and applied equally to *all* employees, regardless of the type of leave taken. 2019 WL 2451418, at *9 (S.D. Cal. June 12, 2019). Here, in her FAC, Plaintiff pled that the Plan did *not* apply neutrally because Plaintiff could never qualify for Option A.

The other cases United cites are similarly inapposite because they are wrongful terminations or failure to hire cases, which *relied upon* comparators as evidence of discriminatory motive. *See Nguyen v. Adams & Assocs., Inc.*, 2018 WL 3913805, at *4 (E.D. Cal. Aug. 14, 2018); *Nguyen v. Superior Court of Cal.*, 2014 WL 4467850, at *4 (N.D. Cal. Sept. 9, 2014); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014). Plaintiff's allegations at the pleading stage do not, and need not, rely on comparators, given her allegations of a policy that treated her and others similarly situated less favorably. Rather, Plaintiff relies on the plain language of Defendants' Plan, which denied her and others similarly situated a no-cost option that *was* provided to individuals in heterosexual couples who could become pregnant through intercourse.[10]

---

[10] In a footnote, GEICO argues Plaintiffs' pleadings did not put it on notice. (GEICO Mtn., p. 11 fn. 6.) But Plaintiff complied with Rule 8(a)'s notice requirement by asserting that GEICO is liable as an employer under FEHA and United is liable under FEHA as an agent of GEICO. (FAC ¶¶ 70, 87.) This is sufficient to place both Defendants "reasonably on notice of the claims against them." *Vasquez v. Bank of Am., N.A.*, 2013 WL 6001924, at *6 (N.D. Cal. Nov. 12, 2013) (allegations

-19-

1

### D. Plaintiff Has Adequately Pled Her Disparate Impact Claim

2    Under a disparate impact theory, "claims involve employment practices that are facially

3    neutral in their treatment of different groups but that in fact fall more harshly on one group than

4    another and cannot be justified by business necessity." *Raytheon v. Hernandez*, 540 U.S. 44, 52

5    (2003) (internal quotation and citation omitted).[11] To state a claim for disparate impact, a plaintiff

6    must allege facts that 1) "identify[] the specific employment practice that is challenged"[12] and 2)

7    show a causal relationship between such a practice and its adverse impact on a protected class.

8    *Johnson v. United Cont'l Holdings, Inc.*, 2013 WL 6354210, at *15 (N.D. Cal. Dec. 5, 2013). Here,

9    throughout her FAC, Plaintiff alleged that the Plan adversely impacted her and others similarly

10   situated by denying full access to the Plan, requiring them to undergo burdensome and costly

11   procedures not required of individuals in heterosexual relationships. *See generally* FAC; *see also*

12   *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1485-1486 (9th Cir. 1993) ("a disparate impact claim

13   may be based upon a challenge to a practice or policy that has a significant adverse impact on the

14   'terms, conditions, or privileges' of the employment of a protected group"). Unlike with disparate

15   treatment cases, "intent is irrelevant to a disparate impact theory." *Garcia*, 998 F.2d at 1484.

16

17   sufficient where plaintiff alleged both defendants jointly liable under agency principles). GEICO

18   cites *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015), which also

19   found that allegations against collective "Defendants" to be sufficient where the term was defined.

20   *Id.* at 964-65. Plaintiff similarly defines "Defendants" as including both GEICO and United. FAC

21   ¶ 2. Plaintiff's allegations are sufficient under Rule 8(a).

22

23   [11] "Because of the similarity between state and federal employment discrimination laws, California

24   courts look to pertinent federal precedent" when applying California law. *Guz,* 24 Cal. 4th at 354.

25   [12] GEICO argues Plaintiff fails to identify the challenged practice. (GEICO Mem. at 14.) Not so.

26   The "employment practice being challenged is the insurance policy and its discriminatory

27   restrictions dictating when an employee qualified for fertility benefits." (FAC ¶ 85.)

28

-20-

Here, the disparate impact is obvious: Option A was *never* available to individuals in a non-heterosexual relationship, including Plaintiff Dempsey, thus providing her and others similarly-situated with less access to the Plan's full benefits than individuals in heterosexual relationships[13]. *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1227 (9th Cir. 2023) is instructive. There, the plaintiff, a Jehovah's Witness, was required to take an oath to uphold the United States and California Constitutions to obtain employment with the state. *Id.* at 1219. However, the plaintiff alleged that his faith forbid him and other Jehovah's Witnesses from "swearing primary allegiance to any human government," which meant that "all or substantially all" Jehovah's Witnesses would be impacted by the oath requirement. *Id.* 1228. The Ninth Circuit held that "[t]his is precisely the sort of obvious impact that a plaintiff need not support with statistics to plead a prima facie case." *Id.* (citing *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 813 (5th Cir. 1996) and *Hung Ping Wang v. Hoffman*, 694 F.2d 1146, 1149 (9th Cir. 1982)). Likewise, in *Garcia*, the plaintiff alleged disparate impact on the basis of pregnancy discrimination because of a lifting requirement of 150 pounds for a nurse position. 97 F.3d at 812. The court held the plaintiff could show causation by showing that "all or substantially all pregnant women would be advised by their obstetrician not to lift 150 pounds" because "[s]tatistical evidence would be unnecessary if [plaintiff] could establish this point." *Id.* at 813. The same is true here.

Defendants argue that a plaintiff alleging disparate impact *must* plead statistics to prove causation. They are wrong. "[S]tatistics are not strictly necessary" in a disparate impact case, particularly "where a disparate impact is obvious." *Bolden-Hardge*, 63 F.4th at 1227 (collecting

---

[13] In a footnote, United seemingly implies that TDI is a non-discriminatory alternative to unprotected intercourse under the Plan because it could supposedly be performed at home without a physician's involvement. (United Mem. at 4, fn. 3.) This argument has no merit given Plaintiff, as pled, was *required by Defendants* to see a doctor for each IUI cycle to satisfy Option C, without any at-home option. (FAC ¶ 36.)

cases).[14] Moreover, while a plaintiff *may* prove a disparate impact case using statistics, "it would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery" like here. *Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511–12 (2002)); *see also Fujishige v. Amazon.com Servs. LLC*, 2024 WL 348826, at *7 (N.D. Cal. Jan. 30, 2024) ("Plaintiff does not provide any statistical evidence demonstrating a disparate impact on female warehouse employees. Nor does she need to at this [pleading] stage.") Here, as in *Garcia* and *Bolden-Harge*, the disparate impact is obvious and Plaintiff need not plead statistical data to prove causation because, as she alleged, all or "substantially all" same-sex couples and other individuals in non-heterosexual relationships enrolled in Defendants' Plan were denied equal access to it. *Bolden-Hardge,* 63 F.4th at 1228. (FAC ¶ 88.) Plaintiff adequately pled causation.

United argues that Plaintiff's allegation of a facially discriminatory policy is fatal to her disparate treatment claim.[15] (United Mem. at 17.) Not so. A plaintiff may plead alternate and even inconsistent claims, and any "pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case" at the pleading stage. *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985); Fed. R. Civ. P. 8(d). As such, pleading alternate theories of liability here does not render either to be insufficient. Further, to the extent this Court finds Plaintiff's pleadings to be insufficient, Plaintiff requests leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend its pleading] when justice so requires.")

### E.  Plaintiff Adequately Pled Class Claims

The Court should reject GEICO's argument that Plaintiff's entire complaint should be

---

[14] United appears to acknowledge as much, characterizing *Arnold v. Sessions*, 2018 WL 6728008, at *8 (N.D. Cal. Dec. 21, 2018) as holding that disparate impact causation is "usually accomplished" by statistics. (United Mem. at 19.)

[15] GEICO does not assert Plaintiff failed to allege a facially neutral policy but separately argues that the policy is facially neutral. (GEICO Mtn. pp. 11-13.)

1   dismissed for failure to adequately plead class allegations. "Class allegations generally are not

2   tested at the pleadings stage and instead are tested after one party has filed a motion for class

3   certification." *Majo v. Sony Interactive Ent. LLC*, 2022 WL 1188871, at *11 (N.D. Cal. Apr. 21,

4   2022); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (decided on a motion for

5   class certification) (citing cases); *Cruz v. Sky Chefs, Inc.*, 2013 WL 1892337, at *5-7 (N.D. Cal.

6   May 6, 2013) (noting sufficiency of class allegations are better addressed after some discovery is

7   conducted). "[C]ourts in this District have denied motions to dismiss class allegations, holding that

8   such arguments are more appropriately addressed through Rule 23 for procedural reasons." *Meyer*

9   *v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1104 (N.D. Cal. 2014). At the pleadings stage,

10  class claims are usually challenged under Rule 12(f), which permits courts to strike any

11  "insufficient defense or any redundant, immaterial, impertinent or scandalous matter," but such

12  motions are rarely granted. *See Clerkin v. MyLife.Com*, 2011 WL 3809912, at *3-4 & n.4 (N.D.

13  Cal., Aug. 29, 2011) (citing cases); *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130,

14  at *15 (N.D. Cal. Mar. 16, 2020) (class allegations may only be stricken at pleadings stage if

15  defendant presents an argument "that completely precludes certification of any class, not just the

16  class currently defined in the complaint.")

17          While Plaintiff does not dispute that she must plead the elements of Rule 23, GEICO

18  suggests that Plaintiff must specifically identify at least one other non-heterosexual couple who

19  suffered like she did. (GEICO Mem. at 16.) In support of this argument, GEICO misinterprets its

20  own authority, which is factually distinct in any event. Specifically, in *Ovieda v. Sodexo*

21  *Operations, LLC*, the court dismissed the class claims (with leave to amend) because "Plaintiff

22  allege[d] no facts to demonstrate or *even suggest* that any member of the putative class had similar

23  work experiences." 2012 WL 1627237, at *4 (C.D. Cal. May 7, 2012) (emphasis added). The

24  plaintiff's only allegation was that the defendant "subjected all of their hourly employees to the

25  identical violations" of several Labor Code provisions. *Id.* The court also held that Plaintiff failed

26  "to allege any facts showing that Defendants had any statewide policies or practices giving rise to

27  Plaintiff's causes of action such that common questions of fact and/or law could provide class-wide

28  answers and would be susceptible to class-wide proof." *Id*. Similarly, in *Zamora v. Penske Truck*

1  *Leasing Co., L.P.*, the court held the plaintiff's complaint was devoid of any factual basis to infer

2  that all non-exempt workers across the state had similar experiences to those of the plaintiff. 2021

3  WL 809403 (C.D. Cal. March 3, 2021). And in *Kittel v. City of Oxnard*, the complaint was

4  dominated by individualized allegations, as opposed to a uniform policy that could be challenged

5  on class certification. 2018 WL 6004524, (C.D. Cal. Feb. 20, 2018).

6    Here, in contrast to all three cases, Plaintiff challenges a specific policy—the Plan—to

7  which all class members were subject. (FAC ¶¶ 57-60.) Plaintiff alleges that the Plan itself is

8  discriminatory, either facially or in effect, on the basis of sex. (*Id.* ¶¶ 4, 13, 15, 37, 39, 54-55.) The

9  determination of whether the Plan is discriminatory is common to the class. (*Id.* ¶¶ 62-63.) A

10  common policy or practice can suffice to show commonality at this posture. *Castaneda v. Burger*

11  *King Corp.*, 597 F. Supp. 2d 1035, 1046 (N.D. Cal. 2009) (holding the plaintiff pled common

12  offending policies or design characteristics and Defendants offered no compelling reason why more

13  should be required at the pleading stage.) Plaintiff also alleges numerosity, with specific allegations

14  for both subclasses, and typicality. (FAC ¶¶ 61, 64.) GEICO presents no argument that "completely

15  precludes certification of any class" at this stage and its challenge to the class allegations fails.

16  *Rice-Sherman*, 2020 WL 1245130, at *15.

17            **F.  The Court Should Grant Leave to Amend**

18    Plaintiff should be given the right to amend her first amended complaint to address any

19  possible deficiencies that permit dismissal. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182

20  F.3d 1096, 1105 (9th Cir. 1999) ("Because this litigation is still in its early stages, leave should be

21  liberally granted unless amendment would be futile. *See* Fed. R. Civ. P. 15(a).") With leave to

22  amend, Plaintiff can allege additional facts that Defendants' Plan was facially and intentionally

23  discriminatory and had a disparate impact on individuals in non-heterosexual relationships, in

24  support of her FEHA and ACA claims.

25  //

26  //

27  //

28  //

-24-

1  **V.      <u>CONCLUSION</u>**

2          For these reasons, the Court should deny GEICO's and United's Motions to Dismiss in their

3  entirety. If not, Plaintiff should be given the right to amend her complaint to address any

4  deficiencies.

5
   Dated:  August 15, 2024                    Respectfully submitted,
6
                                              **NICHOLS KASTER, LLP**
7                                             **CALIFORNIA CIVIL RIGHTS LAW GROUP**

8
                                              By:  <u>/s/ *Matthew Helland*      </u>
9                                                   Matthew Helland

10                                            Attorneys for Plaintiff Reyna Dempsey

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28