GIBSON, DUNN & CRUTCHER LLP
HEATHER L. RICHARDSON, SBN 246517
    HRichardson@gibsondunn.com
LAUREN M. BLAS, SBN 296823
    LBlas@gibsondunn.com
ANGELA REID, SBN 323057
    AReid@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071
Telephone:    213.229.7000
Facsimile:    213.229.7520

GIBSON, DUNN & CRUTCHER LLP
JENNAFER M. TRYCK, SBN 291088
    JTryck@gibsondunn.com
MARCUS CURTIS, SBN 307726
    MCurtis@gibsondunn.com
3161 Michelson Drive
Irvine, California  92612
Telephone:    949.451.3800
Facsimile:    949.451.4220

*Attorneys for Defendant*
*United HealthCare Services, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Reyna Dempsey, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>Government Employees Insurance Company, United HealthCare Services, Inc., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:24-cv-00425-EKL-VKD<br><br>**DEFENDANT UNITED HEALTHCARE SERVICES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:        December 4, 2024<br>Time:        10:00 a.m.<br>Place:        Courtroom 7<br><br>Hon. Eumi K. Lee |

1

**TABLE OF CONTENTS**

2

Page

3

I.     INTRODUCTION ................................................................................................. 1

4

II.    ARGUMENT ....................................................................................................... 2

5

A.     Plaintiff Fails To State A Claim For Disparate Treatment Under Section 1157. ......... 2

6

7

1.     United's Plan Was Not Facially Discriminatory................................................ 3

2.     Plaintiff Did Not Plead Facts That Exclude The Obvious Alternative
        Explanation For United's Criteria. .................................................................... 8

8

9

3.     The Court Need Not, And Should Not, Follow *Berton*. .................................... 9

10

B.     Plaintiff Also Fails To State A Plausible Disparate Treatment Claim Under
        FEHA. ............................................................................................................ 11

11

12

C.     Plaintiff's Disparate Impact Allegations Are Fatally Deficient. ................................ 13

13

1.     Plaintiff Does Not Plead A Facially Neutral Policy........................................... 13

14

2.     Plaintiff's Claims Of "Obviousness" Don't State A Plausible Claim............. 14

15

III.   CONCLUSION ................................................................................................... 15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alhayoti v. Blinken*,
2022 WL 2869850 (N.D. Cal. July 21, 2022) ...................................................................11

*Allen v. City of Long Beach*,
2006 WL 2218220 (Cal. App. Aug. 4, 2006) ...................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................4, 6, 10

*Banaga v. GEICO*,
2019 WL 2451418 (S.D. Cal. June 12, 2019) .................................................................13

*Berton v. Aetna Inc.*,
2024 WL 869651 (N.D. Cal. Feb. 29, 2024).......................................................................9

*Bolden-Hardge v. Office of the Cal. State Controller*,
63 F.4th 1215 (9th Cir. 2023) .......................................................................................15

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644 (2020) .......................................................................................................5

*Camreta v. Greene*,
563 U.S. 692 (2011) .....................................................................................................10

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ........................................................................................3

*Cmty. House, Inc. v. City of Boise*,
490 F.3d 1041 (9th Cir. 2007) ........................................................................................4

*DiBiase v. SmithKline Beecham Corp.*,
48 F.3d 719 (3d Cir. 1995)....................................................................................2, 4, 5, 6

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014)........................................................................................4, 9

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011)........................................................................................6

*Garcia v. Woman's Hosp. of Texas*,
97 F.3d 810 (5th Cir. 1996).........................................................................................15

*Gerdom v. Continental Airlines, Inc.*,
692 F.2d 602 (9th Cir. 1982)........................................................................................10

*Haney v. Pritzker*,
563 F. Supp. 3d 840 (N.D. Ill. 2021) ...........................................................................14

*Klamath Waters Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir. 1999)................................................................................7

*Lelaind v. City & Cnty. of San Francisco*,
576 F. Supp. 2d 1079 (N.D. Cal. 2008) ..................................................................7

*Lindsey v. United Airlines, Inc.*,
2017 WL 2404911 (N.D. Cal. June 2, 2017) .........................................................14

*Liu v. Uber Techs. Inc.*,
551 F. Supp. 3d 988 (N.D. Cal. 2021) ...................................................................11

*Mahler v. Jud. Council of Cal.*,
67 Cal. App. 5th 82 (2021)....................................................................................15

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*,
942 F.2d 106 (2d Cir. 1992)..................................................................................14

*McCarthy v. Brennan*,
2016 WL 946099 (N.D. Cal. Mar. 14, 2016) .........................................................11

*Nielsen v. Thornell*,
101 F.4th 1164 (9th Cir. 2024)..............................................................................10

*Thomas v. San Francisco Housing Authority*,
2017 WL 878064 (N.D. Cal. Mar. 6, 2017)...........................................................14

*Trans World Airlines, Inc. v. Thurston*,
469 U.S. 111 (1985) ..............................................................................................12

*Villafana v. Cnty. of San Diego*,
57 Cal. App. 5th 1012 (2020)................................................................................14

*Weinreb v. Xerox Business Services, LLC Health and Welfare Plan*,
323 F. Supp. 3d 501 (S.D.N.Y. 2018) ......................................................................8

*Wilson v. ColourPop Cosmetics, LLC*,
2023 WL 6787986 (N.D. Cal. Sept. 7, 2023) ..........................................................7

Gibson, Dunn &
Crutcher LLP

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.     INTRODUCTION

The central premise of Plaintiff's claims is that she and other non-heterosexual couples did not have access to an allegedly "free" option for qualifying for fertility benefits—that is, showing 12 months or more of appropriate, timed unprotected intercourse (Option A)—to which heterosexual couples had access.  But Plaintiff's theory completely ignores the relevant basis for comparison.  To determine whether a policy is plausibly discriminatory, courts consider whether the policy treats *similarly situated* groups differently because of a protected status.  Here, the relevant groups are *not* non-heterosexual couples and heterosexual couples writ large.  Rather, the relevant groups under Plaintiff's theory are non-heterosexual couples and heterosexual couples who either can't or elect not to have reproductive intercourse.  Under that proper basis for comparison, the options to qualify for fertility benefits are exactly the same: both non-heterosexual couples *and* heterosexual couples who can't have reproductive intercourse can either (1) obtain a medical diagnosis of infertility, such as sexual dysfunction or a diagnosed ovulatory disorder (Option B), or (2) show 12 months or more of appropriate, timed therapeutic donor insemination (Option C).  Plaintiff herself qualified for benefits under Option B—an option that she does *not* allege involved any out-of-pocket costs, and that is, of course, equally available to non-heterosexual couples.

Plaintiff's attempts to argue her way into a plausible discrimination claim do not persuade. Plaintiff insists that the inclusion of Option A makes United's policy facially discriminatory.  That's implausible.  Whether a person can qualify for fertility benefits under the policy—including under the allegedly discriminatory Option A—depends on circumstances specific to the individual, not on the individual's sexual orientation.  Plaintiff maintains she has sufficiently pled facial discrimination because all individuals in heterosexual relationships could use the "no-cost" Option A to obtain benefits, but that's not true: women in heterosexual relationships who can't or elect not to have intercourse for whatever reason obviously can't demonstrate infertility by failing to conceive after regular unprotected intercourse, so those women would be in the exact same position as Plaintiff. Where, as here, the "conclusion that a plan is facially discriminatory require[s] referencing a fact outside the policy," the "plan cannot be said to be discriminatory on its face." *DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 727 (3d Cir. 1995).

Plaintiff also contends the district court's decision in *Berton v. Aetna, Inc.*—where Judge Gilliam found that a fertility policy similar to that at issue here was facially discriminatory—should compel this Court to follow suit. But *Berton*, while certainly similar, does not control here. For one thing, the plans at issue are different in important respects: United's policy includes a third, "medical diagnosis" option to qualify for benefits that the court in *Berton* never analyzed. The existence of this third option (an option that Plaintiff herself used to obtain benefits) clarifies, in a way the terms of the Aetna plan apparently didn't, that United's policy does not explicitly differentiate based on sexual orientation. For another, the analysis in *Berton* relied on precedent involving a challenge to a policy that specifically targeted a protected class, whereas here, the allegedly discriminatory policy is indifferent to sexual orientation. *Berton* cannot save Plaintiff's disparate treatment claims.

Finally, Plaintiff all but abandons her FEHA disparate impact claim. Most notably, she ignores entirely her burden to plead a facially neutral policy. That failure alone requires dismissal. In response, Plaintiff notes that a plaintiff is generally allowed to plead in the alternative, but Plaintiff here didn't do so—her entire complaint is premised on a disparate treatment theory. And Plaintiff's separate argument that she need not satisfy disparate impact's "robust causality requirement" because the impact is "obvious" doesn't withstand scrutiny—disparate impact cannot be "obvious" when qualifying for benefits under the Plan depended on individual circumstances and when Plaintiff's own allegations indicate she obtained benefits via a criterion (Option B) she does not allege was discriminatory. Under these circumstances, assertions of "obviousness" do not satisfy Plaintiff's basic obligation to plead a causal link between the challenged policy and a significant disparate impact on a protected group.

The Court should dismiss Plaintiff's complaint in its entirety.

## II.    ARGUMENT

### A.    Plaintiff Fails To State A Claim For Disparate Treatment Under Section 1157.

"Stating a claim for disparate treatment requires pleading facts giving rise to an inference that the employer intended to discriminate against the protected group." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 992 (N.D. Cal. 2021). The plaintiff "must allege either direct evidence of discrimination, such as derogatory comments about [her] gender or race, or circumstantial evidence, which may include allegations that similarly situated individuals outside his protected class were treated more favorably

or that other circumstances surrounding the at-issue employment action give rise to an inference of discrimination." *Alhayoti v. Blinken*, 2022 WL 2869850, at *6 (N.D. Cal. July 21, 2022). A discriminatory motive may be established by "a formal, facially discriminatory policy," but "liability depends on whether the protected trait . . . actually motivated the employer's decision." *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).

Plaintiff concedes that her disparate treatment claim rises or falls with her theory of facial discrimination—aside from the policy itself, she pleads no other direct or circumstantial evidence of discriminatory intent. Opp. 11 (arguing that, "Where a claim of discriminatory treatment is based upon facial discrimination, like here, a plaintiff 'need not otherwise establish the presence of discriminatory intent'"); *id.* 16 (asserting that "the operative question" is whether United's policy "suggests discriminatory motive because it is facially discriminatory"). But United's policy was not facially discriminatory, and Plaintiff's theory ignores the "obvious alternative explanation" for the challenged criteria—namely, that the criteria simply reflected the definitions of infertility used by the American Society for Reproductive Medicine (ASRM). In the end, Plaintiff simply cannot plead the requisite intent needed to state a plausible disparate claim. Her Section 1557 claim should be dismissed.

### 1. United's Policy Was Not Facially Discriminatory.

Plaintiff's primary contention is that she need not demonstrate discriminatory intent because the Plan is "facially discriminatory"—that is, regardless of Defendants' intent, "the text of the Plan" "treat[s] those in non-heterosexual relationship[s] differently based on their sex and sexual orientation." Opp. 12 (emphasis omitted). But "the text of the Plan" does no such thing. To the contrary, as United explained (Mot. 7-8), the text of the Plan draws no distinction whatsoever based on sex or sexual orientation; it classifies based on "a diagnosis of infertility." And infertility, regardless of sexual orientation, depends on circumstances specific to the individual. Mot. 9. Like Plaintiff, heterosexual women who cannot have intercourse for whatever reason—whether their own, or their partner's—will be unable to demonstrate infertility by failing to conceive "after 12 months or more of appropriate, timed unprotected intercourse." SPD at 124. That group—not heterosexual couples more broadly—is the relevant comparator. And that group of (heterosexual) women are in the exact same position under the Plan as Plaintiff—they can qualify for benefits via Options B or C, but not A. United's policy,

Gibson, Dunn &
Crutcher LLP

therefore, cannot be "facially" discriminatory: because the grant or denial of benefits turns on individual circumstances, not sexual orientation, the policy does not "*on its face* [apply] less favorably to a protected group." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1048 (9th Cir. 2007) (emphasis added); *id.* (a policy is "facially discriminatory" when it "*explicitly* treats women . . . different from men") (emphasis added).

This principle is well-established. In *DiBiase*, the Third Circuit considered whether a defendant's policy providing separation benefits to employees in return for a general release of all claims, including claims under the Age Discrimination in Employment Act (ADEA), facially discriminated against older workers vis-à-vis younger workers given that only persons aged 40 or older could bring ADEA claims. 48 F.3d 719, 723 (3d Cir. 1995). In finding the policy facially discriminatory, the district court reasoned that because the policy required employees over age 40 to give up "more claims" than younger workers (that is, potential ADEA claims) for the same benefit, the policy explicitly discriminated against older workers. *Id.* at 727. The Third Circuit reversed. It held that "it is impossible to examine [defendant's] policy and conclude that on its face it treats older workers disparately" because "the policy does not classify persons on the basis of age." *Id.* Instead, the court said, the only way to determine whether the policy was discriminatory was to reference "a fact *outside* the policy—namely the ADEA." *Id.* (emphasis added). Because the question of discrimination turned on facts beyond the "policy itself," the court concluded the policy could not be *facially* discriminatory. *Id.*

So too here. United's policy is not facially discriminatory because, like the policy in *DiBiase*, the alleged discrimination is not "apparent from the terms of the policy itself." *Id.* at 727. That is to say, the terms of the policy alone do not dictate whether non-heterosexual individuals are treated less favorably than similarly situated heterosexual individuals. Instead, that determination turns on individual factors "outside the policy" (*id.*), such as a heterosexual individual's ability to conceive through regular unprotected intercourse. As in *DiBiase*, then, the need to reference facts beyond the terms of United's policy to determine whether the policy results in discrimination means that the policy cannot be *facially* discriminatory.

In response, Plaintiff suggests *DiBiase* has no bearing here because in *DiBiase*, the plaintiff had

to "rely on the existence of an external statute" to show that the policy resulted in differential treatment. Opp. 13. But the principle in *DiBiase* was not limited to allegedly discriminatory policies that reference "an external statute"—nothing in the opinion supports that curiously narrow view. Instead, the *DiBiase* court stated unequivocally that a "plan cannot be said to be discriminatory on its face" when the "conclusion that the plan is facially discriminatory required referencing *a fact outside the policy*[.]" *Id.* at 727 (emphasis added). Here, "fact[s] outside the policy" dictate whether the policy is discriminatory. *Id.* Therefore, Plaintiff cannot plausibly allege the policy is "discriminatory on its face." *Id.*

Plaintiff alternatively contends the Plan is facially discriminatory because here "changing the employee's [sexual orientation] would have yielded a different choice by the employer." Opp. 10 (quoting *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 660 (2020)). That's obviously wrong. Changing Plaintiff's sexual orientation would *not* have given her different options to qualify for fertility benefits unless she *also* were medically and physically able to have heterosexual intercourse. In other words, even in Plaintiff's hypothetical, a "fact outside the policy"—namely, the individual's ability to have heterosexual intercourse—would determine what benefits she was entitled to. *See DiBiase*, 48 F.3d at 727. Far from supporting her position then, Plaintiff's emphasis on the hypothetical "changing" of her sexual orientation reinforces the conclusion that her Plan was not "facially" discriminatory. *Id.*

These same facts refute Plaintiff's argument that her Plan was facially discriminatory because infertility "was necessarily dependent on an individual's sex and sexual orientation." Opp. 16. Contrary to Plaintiff's assumption that only "individuals in non-heterosexual relationships" are precluded from establishing infertility under Option A, heterosexual women, too, can be in the same situation. *See* Mot. 9. Plaintiff doesn't even attempt to deny that "common sense" point. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (determining plausibility "requires the reviewing court to draw on its judicial experience and common sense"). Instead, she attempts to minimize it through three counterarguments, none of which persuade.

Plaintiff first suggests these women could still show infertility through the "appropriate, timed unprotected intercourse" required under Option A because it would be improper to assume on a motion to dismiss they "would never have sexual intercourse." Opp. 13. But United isn't improperly assuming anything—it's stating a "common sense" point regarding heterosexual women who can't have

Gibson, Dunn & Crutcher LLP

5

intercourse that the Court may properly consider when assessing plausibility. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014) (relying on "judicial experience and common sense" regarding the reality of fluctuations in real estate values to conclude plaintiff's allegations of fraud were implausible). And in any event, it's Plaintiff's suggestion that's improper: Just as no one would expect Plaintiff to have heterosexual intercourse simply because it's physically possible for her to do so, a heterosexual woman with a physical or medical condition preventing intercourse cannot be expected to endure the pain, risk, and anguish of "12 months or more of appropriate, timed unprotected intercourse" to demonstrate infertility. SPD at 124. Plaintiff cannot state a plausible claim for intentional discrimination based on the notion that heterosexual women should be forced to endure a burden that does not apply to Plaintiff.

Plaintiff next contends heterosexual women who can't have intercourse are nonetheless facially treated more favorably because the policy "does not impose any requirements regarding the 'timing and/or frequency of intercourse,'" such that heterosexual women "could have intercourse once in a year and satisfy the policy." Opp. 13. That argument does not withstand even a cursory reading of the policy. As relevant here, the policy defines infertility as the failure to conceive "after 12 months or more of appropriate, timed unprotected intercourse." SPD at 124. Under the plain language of the policy then, a heterosexual woman seeking benefits under this criterion is required to have "appropriate, timed" intercourse over the course of at least a year. There is simply no support in the text of her Plan for Plaintiff's contention that heterosexual women who generally can't have intercourse can satisfy the policy simply by having "intercourse once in a year." *Klamath Waters Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) ("Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself."); *Wilson v. ColourPop Cosmetics, LLC*, 2023 WL 6787986, at *3 (N.D. Cal. Sept. 7, 2023) ("[U]nwarranted inferences are insufficient to defeat a motion to dismiss.") (citation omitted).

Plaintiff's final attempt to minimize the experience of heterosexual women who can't have intercourse also misses the mark. Relying on *Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1099 (N.D. Cal. 2008), Plaintiff argues that it doesn't matter that there is a class of heterosexual women who can't have intercourse because "negative treatment of other employees

1    outside the protected class . . . does not defeat a plaintiff's prima facie case." Opp. 13.  But *Leland*—

2    a case in which a black woman alleged disparate treatment after she was routinely excluded from

3    meetings, received a negative performance evaluation, was passed over for promotion, and then

4    reassigned "after which she was given no work, office, or computer access"—does not help Plaintiff.

5    *Id.* at 1095.  In *Leland*, the plaintiff adequately pled a disparate treatment claim by pointing to similarly

6    situated non-black colleagues who received more favorable treatment.  It didn't matter, said the court,

7    that some non-black employees were also transferred and reassigned around the same time, because

8    the negative treatment suffered by plaintiff was not "equally directed" at these other employees.  *Id.* at

9    1099.  Here, though, the policy is "equally directed" at all members—every policyholder, regardless

10   of sexual orientation, must satisfy the Plan's definition of infertility to qualify for benefits.  And, unlike

11   in *Leland*, Plaintiff points to no "similarly situated comparator" who was treated more favorably.  Her

12   reliance on *Leland* is misplaced.

13         Plaintiff also takes issue with United's citation to *Weinreb v. Xerox Business Services, LLC*

14   *Health and Welfare Plan*, 323 F. Supp. 3d 501 (S.D.N.Y. 2018) on the ground that the plan in *Weinreb*

15   "affected *everyone* equally regardless of any other protected category." Opp. 14.  But that case supports

16   dismissal of Plaintiff's claims here.  In *Weinreb*, the plaintiffs alleged a benefits plan that extended

17   fentanyl coverage for GDA (an illness that affects only women) but not other illnesses, was

18   discriminatory because it provided "more comprehensive coverage" for females than males.  *Id.* at 516.

19   The court, however, dismissed the claim, explaining that, by covering fentanyl for an illness that

20   affected only women, the plan "[did] not delineate based on sex," but rather on whether the particular

21   fentanyl prescription was for "on-" or "off-label" use.  *Id.* at 517.  The court emphasized it was the

22   nature of the prescription that mattered in terms of whether it was covered, "not the sex of the

23   beneficiary." *Id.* at 516.

24         The same logic applies here.  United's policy "does not delineate based on sex"; it extends

25   coverage for IVF based on a participant's showing of infertility.  And contrary to Plaintiff's assertions

26   (Opp. 14), the policy's definition of infertility to include a failure to conceive after 12 months or more

27   of regular unprotected intercourse doesn't uniquely "target[]" and "exclude[]" individuals in non-

28   heterosexual relationships—heterosexual women who can't have intercourse are likewise precluded

1    from using that very same option.  To paraphrase *Weinreb*, "[i]t is the [inability to have heterosexual

2    intercourse] that [matters]," "not the sex of the beneficiary."  *Weinreb*, 323 F. Supp. 3d at 516.

3         As an alternative, Plaintiff contends that even if the policy were not facially discriminatory, the

4    Court can nonetheless infer United's discriminatory intent based on allegations that "Defendants

5    *applied* the policy in a discriminatory manner."  Opp. 14.  That argument completely ignores the

6    relevant standard for pleading a disparate treatment claim.  Where, as here, a plaintiff cannot show that

7    a challenged policy was facially discriminatory, she "must allege" either "direct" or "circumstantial"

8    evidence of discriminatory motive.  *Alhayoti*, 2022 WL 2869850, at *6.  Plaintiff's assertion that United

9    "applied the policy in a discriminatory manner," without more, comes nowhere close to satisfying

10   Plaintiff's burden to plead evidence "giving rise to an inference that [United] *intended* to discriminate

11   against the protected group."  *Id.* (emphasis added); *Weiss v. Permanente Med. Grp., Inc.*, 2023 WL

12   8420974, at *3 (N.D. Cal. Dec. 4, 2023) (theory that employer acted with discriminatory intent in

13   "applying" a challenged policy did not state disparate treatment claim where plaintiff pled "no facts

14   that reflect the policy was implemented to discriminate against 'Christian Jews'").

15        **2.    Plaintiff Did Not Plead Facts That Exclude The Obvious Alternative Explanation
             For United's Criteria.**

16        Plaintiff's failure to plead discriminatory intent—through a facially discriminatory policy or

17   otherwise—is enough to dismiss her disparate treatment claim.  But Plaintiff also fails completely to

18   contend with the "obvious alternative explanation" for the challenged policy—namely, that the

19   definitions of "infertility" used in the Plan simply reflect the definitions of infertility used by the

20   American Society for Reproductive Medicine (ASRM).  *See* Mot. 8-9.  Though she takes issue with

21   the reference, Plaintiff doesn't dispute that United's criteria tracked the ASRM's definitions.  *See* Dkt.

22   46-1 (Blas Decl.), Ex. 1, Practice Committee of the ASRM, *Definitions of Infertility and Recurrent

23   Pregnancy Loss: A Committee Opinion*, 99 Fertility & Sterility 1, 63 (2013) ("Infertility is a disease,

24   defined by the failure to achieve a successful pregnancy after 12 months or more of appropriate, timed

25   unprotected intercourse or therapeutic donor insemination."); Blas Decl., Ex. 2, Practice Committee of

26   the ASRM, *Definitions of Infertility and Recurrent Pregnancy Loss: A Committee Opinion*, 113

27   Fertility & Sterility 3, 533 (2020) ("Infertility is a disease historically defined by the failure to achieve

28

a successful pregnancy after 12 months or more of regular unprotected sexual intercourse or due to an impairment of a person's capacity to reproduce either as an individual or with her/his partner.").[1]  And Plaintiff doesn't dispute that the ASRM is the leading professional organization of experts in fertility and reproductive medicine.  Nor does Plaintiff allege that the ASRM's definitions were intentionally discriminatory.  The upshot is an "innocent explanation for the allegations" Plaintiff has failed to contend with.  *Nielsen v. Thornell*, 101 F.4th 1164, 1169 (9th Cir. 2024).  At most, Plaintiff's allegations are "merely consistent with [her] favored explanation" of intentional discrimination; she does not offer "facts tending to exclude the possibility that the alternative explanation is true."  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).  Having failed to provide the requisite "[s]omething more" beyond her own speculation, Plaintiff cannot "nudge [her] [discrimination] claims across the line from conceivable to plausible."  *Eclectic Props. E.*, at 996.

>     **3.**    **The Court Need Not, And Should Not, Follow *Berton*.**

In *Berton*, the plaintiff alleged that Aetna's fertility policy—a policy similar to the United policy at issue here—discriminated on the basis of sexual orientation in violation of Section 1557 of the ACA because the policy allowed heterosexual couples to establish infertility by showing "one year of unprotected heterosexual sex" or "12 cycles of 'donor insemination,'" while same-sex couples could show infertility only through donor insemination.  *Id.* at *1.  Judge Gilliam found that the plaintiff adequately pleaded facial discrimination because Aetna's policy allowed "individuals in heterosexual partnerships to show infertility without incurring any out-of-pocket costs," while same-sex partners "must go through expensive cycles of donor insemination."  *Id.* at *4.

*Berton* shouldn't determine the outcome here for several reasons.  First, the policies at issue, while similar, are different in relevant ways.  In *Berton*, the Aetna policy allegedly gave heterosexual couples "two ways" to establish infertility, while giving same-sex couples "only one avenue."  *Id.* at *1.  Here, by contrast, the United policy provided "three means to qualify for benefits" (Opp. 2): the

---

[1] As United explained in its RJN, the ASRM articles containing these definitions are properly subject to judicial notice because the documents are available from the online website of the scientific journal *Fertility and Sterility*, and their "contents can be accurately determined."  Dkt. 46-2.

9

UNITED'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 5:24-CV-00425-EKL-VKD

two at issue in *Berton*, plus a "medical diagnosis of infertility," such as a diagnosed ovulatory disorder. This "Option B" matters because it expands the scope of what the Court can take into account when assessing whether the Plan is *facially* discriminatory. There is no dispute that Option B, on its face, is equally open to individuals in non-heterosexual relationships and heterosexual relationships. Plaintiff herself ultimately received fertility benefits by satisfying this criterion. *See* Am. Compl. ¶¶ 52-53. The upshot then is that United's policy exhibited more facially equitable treatment than the policy the court considered in *Berton*. This additional option, which minimized the extent to which any alleged sex-based distinction would prevent a member of the protected group from actually obtaining benefits, makes it unreasonable to infer that United's policy was facially discriminatory, even if the Aetna policy was. *See* Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37522, 37594 (May 6, 2024) ("Not all differential treatment on the basis of sex constitutes unlawful discrimination under section 1557, and the final rule does not prohibit all differential treatment. If a sex-based distinction has only a *de minimis* impact, it is not prohibited discrimination.").

Second, the court in *Berton* was not confronted with, and did not answer, the question whether the striking similarities between the challenged policy and the definition of infertility used by the ASRM undercut the plausibility of the plaintiff's discrimination claim. Here, by contrast, that issue is front and center. As United has explained, the parallels between the policy's definition of infertility and the ASRM's definitions strongly suggest United's criteria simply reflected the views of the relevant medical community. Mot. 8-9; *Eclectic Props. E.*, 751 F.3d at 996 ("When considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior."). "As between that 'obvious alternative explanation' for" the policy's infertility definition, "and the purposeful, invidious discrimination [Plaintiff] asks [the Court] to infer, discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at 682. Nothing in *Berton* forecloses that argument, which independently defeats Plaintiff's claims here. *See Nielsen*, 101 F.4th at 1169 ("If an innocent explanation for the allegations is more likely, the complaint does not plausible state a claim for relief.").

Finally, even if one were to assume, for argument's sake, that the facts of *Berton* were the same as those presented to this Court, United respectfully submits that the analysis in *Berton* was flawed and should not be followed. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal

district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). In *Berton*, the court based its conclusion that Aetna's policy was facially discriminatory on the Ninth Circuit's decision in *Gerdom v. Continental Airlines, Inc.*, 692 F.2d 602 (9th Cir. 1982). Plaintiff here makes a similar argument. *See* Opp. 10-11. But the policy at issue in *Gerdom* was nothing like Aetna's policy, or United's policy here. In *Gerdom*, the plaintiff challenged a policy requiring "flight hostesses"—"a position held only by women"—to comply with strict weight requirements as facially discriminatory. *Id.* at 603. The court agreed because the policy applied "only to females," and "[b]y Continental's own admission, the policy was enforced only against women." *Id.* at 608.

Not so here. United's policy was indifferent to sexual orientation—both heterosexual and non-heterosexual individuals had to satisfy one of three criteria to be eligible for fertility benefits. And unlike in *Gerdom*, where the policy targeted a protected class, here the allegedly discriminatory criterion applies to non-heterosexual couples *and* heterosexual couples. Again, heterosexual women who cannot conceive through intercourse have the exact same options available under the policy as Plaintiff. *Those* women (i.e., heterosexual women who can't have intercourse) are the relevant comparator group, a fact the *Berton* court failed to grapple with. *Gerdom*, then, did not support the outcome reached in that case, and this Court should not follow the *Berton* court down the same path.

For all of these reasons, Plaintiff fails to state a plausible claim for disparate treatment under Section 1557 of the ACA.

**B.     Plaintiff Also Fails To State A Plausible Disparate Treatment Claim Under FEHA.**

Plaintiff's FEHA disparate treatment claim fails for the same reasons as her claim for disparate treatment under the ACA. To state a claim for disparate treatment under FEHA, a plaintiff must "plead[] facts giving rise to an inference that the employer *intended* to discriminate against the protected group." *Liu*, 551 F. Supp. 3d at 992. And where, as here, a plaintiff cannot rely on a facially discriminatory policy to plead discriminatory motive, the plaintiff must plead direct or circumstantial evidence of discriminatory intent. There is no dispute that Plaintiff failed to plead any such direct or circumstantial evidence here, since she relies exclusively on her contention that the policy is facially discriminatory. *See, e.g.*, Opp. 11 (arguing that "a plaintiff 'need not otherwise establish the presence

of discriminatory intent'" if she brings a "facial" discrimination claim).

Plaintiff reiterates her claim that the policy is facially discriminatory, but again, there are simply too many "fact[s] outside the policy" to account for, which makes it impermissible to infer that the policy is *facially* discriminatory.  *See supra* pp. 4-5.  At bottom, whether a woman can take advantage of Option A depends not on her sexual orientation, but on whether she has reproductive intercourse with a man.  And as detailed above, there are various reasons why a woman might not to do so, regardless of her sexual orientation.  There is nothing discriminatory about a benefits plan that equally applies to every policyholder regardless of their sex or sexual orientation.

Plaintiff's own cited authority shows that United's policy is different than the policies courts have found to be facially discriminatory under FEHA and analogous statutes.  For example, the policy at issue in *Trans World Airlines, Inc. v. Thurston* had an *explicit* age classification which prohibited pilots over the age of 60 from training as flight engineers.  469 U.S. 111, 121 (1985).  The Supreme Court concluded the policy facially discriminated in violation of the ADEA because the only thing that prevented all pilots from becoming flight engineers was age, and nothing else.  *Id.* at 112.  Further, the policy in *Thurston* was considered direct evidence of discrimination against individuals over 60 because it made age an express barrier to advancement.  *Id.* at 121.  *Thurston* has no application here because United's policy has no express classification referring to any protected characteristic, nor, for the reasons given above, is any particular group singled out even in the policy's application.

Plaintiff's reliance on *Allen v. City of Long Beach*—a case alleging discrimination under FEHA—is similarly misguided because the policy there explicitly targeted the marital status of individuals by requiring that a police officer could not supervise "a spouse presently employed by the City."  2006 WL 2218220 (Cal. Ct. App. Aug. 4, 2006).  In *Allen*, no inferences or presumptions were required to draw the conclusion that the policy was designed for the purpose of eliminating "a potential conflict of interest" involving "married couples."  *Id.* at *1.  In contrast, United's policy makes no reference to any protected status—it is neutral as to both heterosexual and non-heterosexual individuals.  Therefore, Plaintiff's argument that "[she] and others similarly situated could not qualify for Option A because of their sex and sexual orientation" (Opp. 17) does not reasonably imply that United *intentionally* discriminated against a protected class because the policy does not exclude anyone

1    on its face.  Plaintiff's FEHA disparate treatment claim, like her ACA claim, should be dismissed.[2]

2    **C.    Plaintiff's Disparate Impact Allegations Are Fatally Deficient.**

3        As United argued in its motion (Mot. 17-20), Plaintiff's FEHA disparate impact claim fails on

4    multiple levels: she doesn't plead a facially neutral policy; she doesn't plausibly allege any actual

5    disparity between groups; and she doesn't satisfy disparate impact's "robust causality requirement."

6    In response, Plaintiff insists she need not satisfy these requirements because "the disparate impact is

7    obvious."  Opp. 21.  But Plaintiff's claims of "obviousness" founder even under her own cited

8    authority, and in any event, the argument carries no weight here because the gravamen of Plaintiff's

9    complaint is disparate treatment, not disparate impact, and she does not sufficiently plead how her Plan

10   was facially neutral.  Mot. 17 (citing *Haney v. Pritzker*, 563 F. Supp. 3d 840, 864 (N.D. Ill. 2021)).

11       **1.    Plaintiff Does Not Plead A Facially Neutral Policy.**

12       The "touchstone" of a disparate impact claim is a facially neutral policy.  *Lindsey v. United*

13   *Airlines, Inc.*, 2017 WL 2404911, at *3 (N.D. Cal. June 2, 2017).  Plaintiff, however, attempts to plead

14   the opposite—that is, she alleges United's policy was facially discriminatory.  Mot. 17; *see, e.g.*, Am.

15   Compl. ¶¶ 4, 13, 75.  Indeed, Plaintiff's facial discrimination theory is the entire premise of her

16   complaint—she offers *no* allegations of disparate impact beyond the allegations of facial discrimination

17   she offers to support her disparate treatment claims.  That overlap dooms Plaintiff's disparate impact

18   claim: where, as here, "[t]he facially neutral employment practice that [a plaintiff] invokes as the

19   premise for disparate impact liability coalesces with the [discrimination] which [she] claims to have

20   constituted disparate treatment," the claim is one for disparate treatment, not disparate impact.

---

22   [2] Plaintiff tries to distinguish *Banaga v. GEICO*, 2019 WL 2451418 (S.D. Cal. June 12, 2019), on

23   grounds that the challenged policy there "applied equally to *all* employees," while here "Plaintiff pled

24   that the Plan did not apply neutrally because Plaintiff could never qualify for Option A."  Opp. 19.

25   That argument is wrong.  The fact that Plaintiff allegedly couldn't qualify for Option A can't plausibly

26   show discrimination where the relevant comparator group—heterosexual couples who can't have

27   reproductive intercourse—*also* couldn't qualify for Option A.  At bottom, qualifying for benefits under

28   Option A depended on individual circumstances and specific medical factors, not sexual orientation.

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 942 F.2d 106, 115 (2d Cir. 1992); *see also Garay v. Lowes Home Ctrs., LLC*, 2017 WL 5473887, at *2 n.2 (D. Or. Nov. 14, 2017) (dismissing disparate impact claim partly on grounds that plaintiff's allegations "suggest[ed] a policy of intentional discrimination and disparate treatment, not disparate impact resulting from a facially neutral policy").

Plaintiff contends that her "allegation of a facially discriminatory policy" does not prevent her from "plead[ing] alternate and even inconsistent claims." Opp. 22. That may be true in theory, but the problem for Plaintiff is that she never bothers to plead an "alternate" disparate impact claim because *she does not allege a facially neutral policy*. Plaintiff doesn't contend otherwise. If Plaintiff wanted to plead an "alternate" disparate impact claim, it was her burden to "plead facts that establish a facially neutral policy." *Villafana v. Cnty. of San Diego*, 57 Cal. App. 5th 1012, 1017 (2020). Despite having now had two chances to plead this theory, she still hasn't done so, so her disparate impact claim should be dismissed on this ground alone. *Thomas v. San Francisco Housing Authority*, 2017 WL 878064, at *5 (N.D. Cal. Mar. 6, 2017) (dismissing disparate impact claim where plaintiff failed to "sufficiently plead" how the challenged policy was "facially neutral").

**2.    Plaintiff's Claims Of "Obviousness" Don't State A Plausible Claim.**

Even if Plaintiff had adequately pled a facially neutral policy, she did not plead the requisite "robust" causal connection between United's policy and an actual disparate impact. Nor did she establish that any disparate impact was "obvious." And Plaintiff's allegations that individuals in non-heterosexual relationships cannot become pregnant through intercourse with each other do not transform the policy into one that has an "obvious" disparate impact on those individuals, particularly when heterosexual women who can't have intercourse due to physical or medical reasons *also* cannot satisfy Option A. Plaintiff's conclusory assertions of "obviousness" don't cut it.

Plaintiff's claim of "obvious" impact on non-heterosexual women also relies on key assumptions for which Plaintiff provides no factual allegations: (1) that every non-heterosexual woman is only willing to be in a relationship with another non-heterosexual woman; and (2) that every non-heterosexual woman categorically will not have reproductive intercourse with a man to take advantage of Option A. But these assumptions are premised on unsupported conclusions about the non-heterosexual community as a whole, as well as each individual policyholder's *personal* reproductive

14

choices, separate and apart from their relationship status with *another* individual.  Plaintiff has not alleged any facts to raise the inference that her personal experience should be generalized across every single non-heterosexual United policyholder.

The cases on which Plaintiff relies are not to the contrary.  Plaintiff cites *Bolden-Hardge v. Office of the California State Controller*, but there the court concluded the disparate impact was "obvious" because (i) the policy in question (a requirement that state employees pledge loyalty to the Constitution) impacted "all or substantially all" Jehovah's Witnesses (whose faith precludes adherents from swearing allegiance to any "human government") the same way, and (ii) other non-Jehovah's Witness employees did not face the same burden.  63 F.4th 1215, 1228 (9th Cir. 2023).  Here, by contrast, there are no well-pleaded facts that United's policy affected non-heterosexual individuals the same way—the fact that Plaintiff alleges non-heterosexual individuals only had Option C available under her Plan, while she herself received benefits under an entirely separate option (Option B), shows that there is no "obvious" disparate impact.  Nor did Plaintiff here, unlike the plaintiff in *Bolden-Hardge*, otherwise show that her class was uniquely burdened by the challenged policy.

*Garcia v. Woman's Hospital of Texas* is also distinguishable.  97 F.3d 810, 813 (5th Cir. 1996).  In *Garcia*, the Fifth Circuit noted in dicta that a pregnant woman challenging a hospital's 150-pound lifting requirement would not need to offer statistical evidence of disparate impact if she could show that "all or substantially all pregnant women would be advised by their obstetrician not to lift 150 pounds."  *Id.*  That was because, under such circumstances, the discriminatory impact of the lifting requirement would be "unique and specific" to pregnant women.  *Id.*  Here, Plaintiff has *not* shown that any discriminatory burden was "unique and specific" to non-heterosexual women.  Like non-heterosexual women, heterosexual women who cannot have regular unprotected intercourse also could not qualify for fertility benefits under Option A.  *Garcia*, then, does not free Plaintiff from satisfying disparate impact's "robust causality requirement."  *Mahler v. Jud. Council of Cal.*, 67 Cal. App. 5th 82, 113 (2021).  Plaintiff's disparate impact claim should also be dismissed.

### III.    CONCLUSION

For the foregoing reasons, and the reasons stated in United's motion to dismiss, the Court should dismiss Plaintiff's First Amended Complaint.

1

2      DATED: October 3, 2024                    Respectfully submitted,

3                                                 GIBSON, DUNN & CRUTCHER LLP

4
                                                  By:  */s/ Jennafer M. Tryck*
5                                                      Jennafer M. Tryck

6                                                 Attorneys for Defendant
                                                  United HealthCare Services, Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28