Lawrence A. Organ (SBN 175503)
Julianne K. Stanford (SBN 290001)
Kira Brekke (SBN 339757)
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, CA 94960
Tel. (415) 453-4740
Fax (415 785-7352
larry@civilrightsca.com
julianne@civilrightsca.com
kira@civilrightsca.com

Matthew C. Helland (SBN 250451)
NICHOLS KASTER, LLP
235 Montgomery St. Suite 810
San Francisco, CA 94104
Tel. (415) 277-7235
Fax (415) 277-7238
helland@nka.com

Anna P. Prakash (MN Bar No. 0351362)*
Ricardo G. Perez (MN Bar No. 0505964)*
NICHOLS KASTER, PLLP
4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel. (612) 256-3200
Fax (612) 215-6870
aprakash@nka.com
rperez@nka.com
*Admitted Pro Hac Vice

Attorneys for Plaintiff and the Putative Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Reyna Dempsey, individually, on behalf of others similarly situated, and on behalf of the general public<br><br>Plaintiff,<br><br>v.<br><br>United Healthcare Services, Inc., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:24-cv-00425-EKL<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RULE 23 CLASS CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Date:      August 26, 2026<br>Time:      10 a.m. Pacific<br>Courtroom: 7, 4th Floor, San Jose<br>Judge:     Eumi K. Lee |

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

TO DEFENDANT AND ITS COUNSEL OF RECORD: Please take notice that on August 26, 2026, at 10:00 a.m. in Courtroom 7 on the 4th Floor of the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose CA 95113, Plaintiff will and hereby does move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to certify the following class:

> (1) All women in a non-heterosexual relationship; (2) who are or were enrolled in a health insurance plan insured and/or administered by United Healthcare Services, Inc., wherein the eligibility criteria for Infertility Services are the same or substantially similar to the requirements in the GEICO Corporation Medical, Dental and Vision Care Plan in the United States at any time between January 24, 2020 and present; and (3) who sought infertility benefits under their plan; but (4) excluding people covered by fully-insured plans in states with mandated infertility benefits coverage wherein the definition of infertility is not the same or substantially similar to that in the GEICO Corporation Medical, Dental and Vision Care Plan.

In conjunction with class certification, Plaintiffs seek an order appointing Plaintiff Reyna Dempsey as Class Representative, appointing the law firm of Nichols Kaster and the California Civil Rights Law Group as Class Counsel, approving Plaintiff's proposed forms of notice for distribution to the Class, and ordering Defendant to produce information necessary to facilitate notice.

This Motion is based on the accompanying Memorandum of Law, the Declaration of Ricardo Perez and accompanying exhibits, the Declaration of Reyna Dempsey, the Declaration of Anna P. Prakash, the Declaration of Kira Brekke, the Declaration of Julianne Stanford, the Declaration of Eva Neczypor, arguments of counsel, and the papers, records, and pleadings on file in this matter.

## CERTIFICATION OF MEET-AND-CONFER

The parties have been engaged in substantial meet and confer regarding the deadline for this motion, the schedule for discovery, data to be provided as to the putative class, and a list of states subject to relevant state mandates. The parties last met and conferred about this Motion by videoconference on May 28, 2026, but were unable to reach agreement. *See* Standing Order for Civil Cases Before Judge Eumi K. Lee, Pt. VIII.A.

DATE: May 29, 2026

**NICHOLS KASTER, PLLP**

s/ Ricardo G. Perez
Ricardo G. Perez
**Nichols Kaster, LLP**
**California Civil Rights Law Group**
*Counsel for Plaintiff and the Putative Class*

---

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................................ ii

Memorandum of Law........................................................................................................1

I.    Introduction ...........................................................................................................1

II.   Relevant Background ............................................................................................2

      A. United's Definition of Infertility Reduced the Pathways for Women in Non-Heterosexual Relationships to Receive Coverage for Infertility Services .....................2

      B. United Defined Infertility in the Same Way for All Relevant Plans from the Start of the Statutory Period to at Least February 2024....................................................4

      C. United's New Definition Still Limits Pathways for Women In Non-Heterosexual Relationships to Receive Coverage Under Plans Subject to Medical Necessity Review........................................................................................................7

      D. United's Definition of Infertility Required Ms. Dempsey to Pay for Ineffective and Unnecessarily Burdensome Therapeutic Donor Insemination.......................................9

      E. United's Data Demonstrates that Numerous Class Members Faced Similar Issues as Ms. Dempsey and Would Make Class Adjudication Manageable...............................11

III.  Argument ............................................................................................................13

      A. The Proposed Class Satisfies the Requirements of Rule 23(a) ...................................14

         1. The Proposed Class is Sufficiently Numerous........................................................14

         2. The Proposed Class Shares Common Questions of Law and Fact .........................15

         3. Plaintiff is Typical of the Proposed Class ...............................................................16

         4. Plaintiff and Her Counsel are Adequate.................................................................16

      B. The Proposed Class Satisfies the Requirements of Rule 23(b)(3) .............................19

         1. Common Issues Predominate..................................................................................19

         2. A Class Action is the Superior Method of Resolving this Case .............................21

      C. The Court Should Approve Plaintiff's Proposed Notices and Notice Plan and Order United to Produce Information Necessary to Facilitate Notice .................................22

IV.  Conclusion .........................................................................................................25

Case No. 5:24-cv-00425-EKL          PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**TABLE OF AUTHORITIES**

Cases

*A. B. v. Hawaii State Dep't of Educ.*

    30 F.4th 828 (9th Cir. 2022)...................................................................................................14

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*

    568 U.S. 455 (2013)...............................................................................................................20, 21

*Berton v. Aetna Inc.*

    No. 23-cv-01849-HSG, 2024 WL 869651 (N.D. Cal. Feb. 29, 2024).....................................20

*Berton v. Aetna Inc.*

    No. 23-cv-01849-HSG, 2025 WL 3654087 (N.D. Cal. Dec. 17, 2025) ............................16, 24

*B.K. by next friend Tinsley v. Snyder*

    922 F.3d 957 (9th Cir. 2019)...................................................................................................16

*Bliss v. CoreCivic, Inc.*

    978 F.3d 1144 (9th Cir. 2020)............................................................................................ 17, 18

*Bor Pha v. Yia Yang*

    No. 2:12-cv-01580-TLN, 2014 WL 654559 (E.D. Cal. Feb. 19, 2014) ..................................24

*Bostock v. Clayton Cnty., Georgia*

    590 U.S. 664 (2020)................................................................................................................20

*Briseno v. ConAgra Foods, Inc.*

    844 F.3d 1121 (9th Cir. 2017)..................................................................................................14

*Bruton v. Gerber Prods. Co.*

    703 F. App'x 468 (9th Cir. 2017)...........................................................................................14

*Califano v. Yamasaki*

    442 U.S. 682 (1979)................................................................................................................13

*Cervantez v. Celestica*

    253 F.R.D. 562 (C.D. Cal. 2008) ........................................................................................17, 18

*Chinitz v. Intero Real Est. Servs.*

    No. 18-cv-05623-BLF, 2020 WL 5653153 (N.D. Cal. Sept. 23, 2020) ............................14, 15

*Crouch v. Anderson*

145 S. Ct. 2835 (2025) ...............................................................................................17, 18

*Deatrick v. Securitas Sec. Servs. USA, Inc.*

No. 13-cv-05016-JST, 2014 WL 5358723 (N.D. Cal. Oct. 20, 2014).....................................24

*Delessert v. Kaiser Found. Health Plan, Inc.*

No. 2:24-CV-02087-JNW, 2025 WL 2481235 (W.D. Wash. Aug. 28, 2025) ...................17, 18

*DeLuca v. Farmers Ins. Exch.*

No. 17-cv-00034-EDL, 2018 WL 1981393 (N.D. Cal. Feb. 27, 2018) ...............................17, 18

*Ellis v. Costco Wholesale Corp.*

657 F.3d 970 (9th Cir. 2011)...............................................................................................15, 16

*Erica P. John Fund, Inc. v. Halliburton Co.*

563 U.S. 804 (2011) ....................................................................................................................20

*Fain v. Crouch*

342 F.R.D. 109 (S.D.W. Va. 2022)......................................................................................17, 18

*Flack v. Wisconsin Dep't of Health Servs.*

331 F.R.D. 361 (W.D. Wis. 2019) ............................................................................................15

*Ganci v. MBF Inspection Servs., Inc.*

323 F.R.D. 249 (S.D. Ohio 2017) .....................................................................................17, 18

*Gen. Tel. Co. of the NW., Inc. v. E.E.O.C.*

446 U.S. 318 (1980).....................................................................................................................14

*Gen. Tel. Co. of Sw. v. Falcon*

457 U.S. 147 (1982).....................................................................................................................13

*Gessele v. Jack in the Box Inc.*

174 F.4th 1108 (9th Cir. 2026).....................................................................................................22

*Goodwin et al. vs. The Regents of the University of California*

No. 22STCV22330 (Los Angeles Cnty. Sup. Ct. Dec. 16, 2025)...........................................18

*Healy v. Milliman, Inc.*

164 F.4th 701 (9th Cir. 2026).......................................................................................................14

*In re Korean Ramen Antitrust Litig.*

No. 13-cv-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017)....................................22

*In re NVIDIA Corp. Sec. Litig.*

No. 18-cv-07669-HSG, 2026 WL 821418 (N.D. Cal. Mar. 25, 2026) ..................................21

*Just Film, Inc. v. Buono*

847 F.3d 1108 (9th Cir. 2017)..............................................................................................16

*Kadel v. Folwell*

100 F.4th 122 (4th Cir. 2024)..........................................................................................17, 18

*Lilly v. Jamba Juice Co.*

308 F.R.D. 231 (N.D. Cal. 2014).........................................................................................24

*Lopez Alfaro v. Blanche*

No. 25-1828, 2026 WL 1091576 (9th Cir. Apr. 22, 2026) .......................................................14

*Lytle v. Nutramax Lab'ys, Inc.*

114 F.4th 1011 (9th Cir. 2024), cert. denied, 145 S. Ct. 1308 (2025) .....................................21

*McKeen-Chaplin v. Provident Savings Bank, FSB*

862 F.3d 847 (9th Cir. 2017).........................................................................................17, 18

*Moreno v. JCT Logistics, Inc.*

No. ED-cv-172489-JGB-KKX, 2019 WL 3858999 (C.D. Cal. May 29, 2019) ......................22

*Nolen v. PeopleConnect, Inc.*

No. 20-cv-09203-EMC, 2023 WL 9423286 (N.D. Cal. Dec. 14, 2023)..................................22

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*

31 F.4th 651 (9th Cir. 2022).......................................................................................13, 14, 20

*Oman v. Delta Air Lines, Inc.*

No. 15-cv-00131-WHO, 2023 WL 6226369 (N.D. Cal. Sept. 22, 2023) ...........................17, 18

*Owen Diaz v. Tesla, Inc.*

598 F. Supp. 3d 809 (N.D. Cal. 2022) ................................................................................18

*Parsons v. Ryan*

754 F.3d 657 (9th Cir. 2014)........................................................................................15, 16

Case No. 5:24-cv-00425-EKL                    PLAINTIFF'S MOTION FOR CLASS
                                                              CERTIFICATION

*Powers v. McDonough*
      163 F.4th 1162 (9th Cir. 2025)......................................................................................15

*Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Illinois*
      159 F.4th 646 (9th Cir. 2025)..........................................................................................2

*Ray v. Cnty. Of Los Angeles*
      935 F.3d 703 (9th Cir. 2019)....................................................................................17, 18

*Ray v. Los Angeles Cnty. Dep't of Public Social Servs.*
      52 F.4th 843 (9th Cir. 2022)......................................................................................17, 18

*Roes, 1-2 v. SFBSC Mgmt., LLC*
      944 F.3d 1035 (9th Cir. 2019)...................................................................................22, 23

*Ruiz Torres v. Mercer Canyons Inc.*
      835 F.3d 1125, 1134 (9th Cir. 2016)...............................................................................20

*Schmitt v. Kaiser Found. Health Plan of Washington*
      965 F.3d 945 (9th Cir. 2020)............................................................................................2

*Silver v. Pennsylvania Higher Educ. Assistance Agency*
      No. 14-cv-00652-PJH, 2020 WL 607054 (N.D. Cal. Feb. 7, 2020) ........................................14

*Sparkman v. Comerica Bank*
      No. 2:24-cv-01206-DJC-CKD, 2025 WL 1192411 (E.D. Cal. Apr. 24, 2025) .......................23

*Stanic Rasin v. Cigna Health & Life Ins.*
      No. 2:25-cv-00407-CDS-DJA, 2026 WL 674493 (D. Nev. Mar. 10, 2026) .....................17, 18

*Taylor v. Tesla, Inc.*
      104 Cal. App. 5th 75 (2024), as modified (Aug. 30, 2024) .................................................17, 18

*Tyson Foods, Inc. v. Bouaphakeo*
      577 U.S. 442 (2016)...............................................................................................20, 21

*Vaughn v Tesla, Inc.*
      No. RG17882082, 2024 WL 2786025 (Alameda Cty. Sup. Ct. May 17, 2024).................17, 18

*Wal-Mart Stores, Inc. v. Dukes*
      564 U.S. 338 (2011).................................................................................................13, 20

v

Case No. 5:24-cv-00425-EKL                    PLAINTIFF'S MOTION FOR CLASS
                                                            CERTIFICATION

*West v. California Servs. Bureau, Inc.*

      323 F.R.D. 295 (N.D. Cal. 2017) ......................................................................14

*United States ex rel. Terry v. Wasatch Advantage Grp., LLC*

      No. 2:15-cv-00799-KJM-SCR, 2024 WL 4582295 (E.D. Cal. Oct. 25, 2024) .........................23

<u>Statute and Rule</u>

Section 1557 of the Affordable Care Act ......................................................... *passim*

Fed. R. Civ. P. 23 ...............................................................14-17, 20, 22-23

Case No. 5:24-cv-00425-EKL        PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**MEMORANDUM OF LAW**

## I.    INTRODUCTION

The question at the heart of this case is whether Defendant United Healthcare Services, Inc. ("United") violated Section 1557 of the Affordable Care Act ("Section 1557") through insurance plans that limit the ways women in non-heterosexual relationships can qualify for coverage of infertility services. The answer to this question will not change from person to person. There are no material variations in the relevant plan language. Rather, the plans at issue all provide the same pathways to coverage, including pathways—like requiring intercourse without a pregnancy for a set period of time—that are unavailable to women in non-heterosexual relationships. In other words, the plans have the same effect on all women in non-heterosexual relationships: their paths to coverage are limited.

This was true for Plaintiff Reyna Dempsey ("Plaintiff" or "Ms. Dempsey"), who had United insurance through her employer, GEICO. Unlike heterosexual couples who could report failure to conceive after a period of unprotected intercourse, Ms. Dempsey had to pay for time-consuming and ineffective procedures to qualify for subsequent coverage. In fact, United's own data shows that it denied over forty other women in non-heterosexual relationships coverage for infertility services during the statutory period. United's liability as to these women can be manageably resolved through this case, drawing on United's own and/or publicly available data to determine class membership and damages, and answer the predominant question of whether the common plan language at issue is discriminatory.

Accordingly, Ms. Dempsey now moves for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3) of the following proposed Class: (1) All women in a non-heterosexual relationship; (2) who are or were enrolled in a health insurance plan insured and/or administered by United Healthcare Services, Inc., wherein the eligibility criteria for Infertility Services are the same or substantially similar to the requirements in the GEICO Corporation Medical, Dental and Vision Care Plan in the United States at any time between January 24, 2020 and present; and (3) who sought infertility benefits under their plan; but (4) excluding people covered by fully-insured plans in states with mandated infertility benefits coverage wherein the definition of infertility is not the same or substantially similar to that in the GEICO Corporation Medical, Dental and Vision Care Plan.

1

## II.    RELEVANT BACKGROUND

United is an insurance company that is subject to Section 1557. (Ex. 40: United's Resp. to Interrog. No. 1.)[1] Section 1557 prohibits discrimination in health programs and activities, including in the design of insurance plans. *Schmitt v. Kaiser Found. Health Plan of Washington*, 965 F.3d 945, 949 (9th Cir. 2020). Insurance companies can be liable under Section 1557 even when simply "implementing plan terms drafted by a plan sponsor." *Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Illinois*, 159 F.4th 646, 661 (9th Cir. 2025). Here, Ms. Dempsey contends that United discriminated on the basis of sexual orientation through plans that limit the ways women in non-heterosexual relationships can receive coverage for infertility services. This contention can be resolved on a class-wide basis.

### A.  UNITED'S DEFINITION OF "INFERTILITY" REDUCED THE PATHWAYS FOR WOMEN IN NON-HETEROSEXUAL RELATIONSHIPS TO RECEIVE COVERAGE FOR INFERTILITY SERVICES.

Ms. Dempsey received health insurance through her employer, GEICO, and United administered that insurance plan. (Answer ¶ 1, ECF No. 77.) The relevant plan language provides:



---

[1] Exhibits 1 through 39 were introduced during depositions in this case and maintain the same exhibit number assigned then other than exhibits introduced during the Flores and Medlin depositions, which are preceded by an F or M respectively herein, e.g., M1, M2, etc. Exhibits 40 through 61 are newly marked record evidence and materials. (*See* Declaration of Ricardo G. Perez ("Perez Decl.") ¶¶ 13-15.)

Case No. 5:24-cv-00425-EKL                    PLAINTIFF'S MOTION FOR CLASS
                                                         CERTIFICATION

(Ex. 3: GEICO Summary Plan Description ("SPD"), UHC149-289, 196; *accord* Ex. 41: GEICO SPD Excerpts, UHC52, 338, 480.)[2] Excluding portions specific to men or other eligibility criteria, the plan's definition of infertility as applicable to women reads:

(Ex 3: GEICO SPD, UHC149-289, 196; *see* Ex. 42: Deposition of Alexander Dlugi ("Dlugi Dep."), 15-18, 20.)

---

[2] Zeros that immediately follow the prefix of bates number are omitted herein for concision.

3

████████████████████ (*See* Ex 3: GEICO SPD, UHC149-289, 196; *see also* Ex. 42: Dlugi Dep. 15-18, 20-22.) The first option of unprotected intercourse is not available to women in non-heterosexual relationships unless, as United's corporate representative offensively testified, ██████████████ ██████████████████████████████████████ (Ex. 42: Dlugi Dep. 15.) ████████████████████ ████████████████████████████████████████████ ████████████ (*Id.* at 18-19.) And the fourth option of infertility will only apply to a small subset of women. (Ex. 10: Optum White Paper, "Closely managing infertility yields better outcomes, lower costs," RDEMPSEY2580-2586, 2582 (stating infertility affects 12% of women age 15-44 in the U.S.).) ███████████████████████████ ████████████████████████████████████ ██████████████████████████ (Ex 3: GEICO SPD, UHC149-289, 196; *see* Ex. 42: Dlugi Dep. 15-18, 20, Ex. 10: Optum White Paper RDEMPSEY1258.) ███████████ ████████████████████████████████████████ (Ex 3: GEICO SPD, UHC149-289, 196; *see* Ex. 42: Dlugi Dep. 15-18, 20.) As one of United's case managers testified, "How you get that sperm, if you are in a heterosexual couple is going to be through unprotected intercourse. If you are without a male partner or in a same-sex relationship, that's going to be through some other source." (Ex. 48: Deposition of Nancy Michele Medlin ("Medlin Dep") 81.)

**B. UNITED DEFINED INFERTILITY IN THE SAME WAY FOR ALL RELEVANT PLANS FROM THE START OF THE STATUTORY PERIOD TO AT LEAST FEBRUARY 2024.**

At issue are plans like Ms. Dempsey's that require a plan member to meet United's definition of infertility to qualify for coverage of infertility services/benefits. These include fully-insured plans and self-funded plans. Fully-insured plans are those where United pays any claims and administers the plan. (Ex. 43: Deposition of Steve Pagella ("Pagella Dep.") 27.) The benefits offered through fully-insured plans are reflected in each plan's ████████████████████████████ ████████████ (*Id.* at 79-82; Ex. 42: Dlugi Dep. 41-42, 60-61.) ████████████ ████████████████████████████████████

Case No. 5:24-cv-00425-EKL                          PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

████████████████ (Ex. 42: Dlugi Dep. 27-28, 33, 50-51.)[3]

The other type of plan at issue are self-funded plans, also known as administrative services only or ASO plans. (Ex. 43: Pagella Dep. 27.) For those plans, the employer-sponsor pays claims, and United administers the plan. (*Id.* at 27.) When sponsors are setting up their plan, they meet with United. **(**Ex. 44: Deposition of Paul Minkler ("Minkler Dep") 14-23.) If the sponsor opts for infertility services/benefits (sometimes known as the "Fertility Solutions" product), United and the sponsor discuss various benefit components, including whether the sponsor wants to adopt United's definition of infertility, modify the definition, or not require members to meet the definition. (*Id.* at 7-23; Ex. 42: Dlugi Dep. 28, 32-33; Ex. 43: Pagella Dep. 72-73 ████████████████ ████████ ).) During his deposition, United's corporate designee on the matter testified that he was not aware of any sponsor modifying the definition. (Ex. 44: Minkler Dep. 23 ("Q. Are you aware of any client that has opted to modify the definition of infertility? A. No.").) From at least 2018 to 2024, United's definition of infertility did not change. (*Id.* at 23 ("Q. And the definition of infertility that is listed as a component, is that something that differs from client to client? A. Not that I'm aware of.").) Accordingly, there is no evidence that the definition of infertility materially varies amongst plans prior to ████████, except that some ASO plans may omit the definition entirely.

United records each sponsor's benefit selections in a document called a BDC. (*Id.* at 28-29.) The BDC ████████████████████████ ████████████ (*Id.* at 44-45, 74-75; Ex. 43: Pagella Dep. 54-55, 58.) ████████████ ████████████████████ ████████████████ (Ex. 43: Pagella Dep. 63 ████████ ████████████████ ████████████████ ), 65-

---

[3] Some states require fully-insured plans to provide infertility benefits using different definitions of infertility. The parties are discussing stipulating to which states do not require fully-insured plans to provide infertility benefits. (*See* Perez Decl. ¶ 10-11 (listing states).) Plaintiff has excluded states that mandate fully-insured plans to provide infertility benefits and that use different definitions of infertility from the class definition.

Case No. 5:24-cv-00425-EKL                    PLAINTIFF'S MOTION FOR CLASS
                                                            CERTIFICATION

66 (█████████████████████████████████████).) Moreover, United maintains internal tracking allowing it to ████████████████████ ███████████████████████ (Ex. 44: Minkler Dep. 52-54.) And indeed, in this litigation, United produced ████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████. (Ex. 31 Client List as of Sept. 10, 2025, UHC5518 (████████████████████████████████████████); Ex. 44: Minkler Dep. 28-29, 44-45, 52-54, 54 (████████████████████████ ████████████████████████████████████████), 74-78; Ex. 20: Fertility 101 Guide, UHC4526-4538, 4530 ████ ███████████████████████████████████████); *see* Ex. 44: Minkler Dep. 67 (██████████████████████████████████████████████); Ex. 42: Dlugi Dep. 15-18, 20 (███████████████████████████████████ ███████████████████) Ex. 4: GEICO 2021 Fertility Solutions BDC, UHC5517; *see* Ex. 42: Dlugi Dep 74-78; Ex. 43: Pagella Dep. 54-68 (████████████████████████████ ████████████████████████████████████████████████ ████████████████).)

To be sure, United is responsible for the definition of infertility in its fully-insured and ASO plans. ████████████████████████████████████████ ████████████████████████████████████. (Ex. 49: Deposition of Rochelle Flores ("Flores Dep.") 19-25; *see e.g.,* Ex. F2: United Medical Policy for Infertility (Jan. 1, 2025), UHC4733-4757.) Further, fully-insured plans ████████████████████████████████. (Ex. 42: Dlugi Dep. 27-28; Ex. 44: Minkler Dep. 26-27, 65-66.) And while ASO plan sponsors technically can modify the definition of infertility, United does not even present a list of potential modifications, rendering it unsurprising that there is no evidence that any ASO plan sponsor has, in fact, modified the definition to remove the TDI requirement. (*See* Ex. 44: Minkler Dep. 23-33; Ex. 42: Dlugi Dep. 44-45.) Rather, United employees receive on-the-job training and receive FAQs and job guides about how to discuss infertility benefit components with sponsors. (Ex. 44: Minkler Dep. 29-31, 36-37.) Moreover, United

6

has ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (Ex. 43: Pagella Dep. 76-77.) As one of United's corporate designees testified of fully-insured plans, they are essentially "off the shelf." (Ex. 45: Deposition of Denise Vail. 41, ("And if you think about fully-insured, the plans are picked off a shelf, if you will, so very limited variation. We're attaching a client to a fully-insured plan. Very little variation.").)

Tellingly, when asked why United ████████████████████████████████████████ United's corporate designee and medical director, Dr. Dlugi, testified that United is ██████████████████████████████████████████████████████████████████████ ██████████████ (Ex. 42: Dlugi Dep. 37.) When asked why ████████████████████████ ████████████████████████ Dr. Dlugi testified, ████████████████████████ (*Id.*)

## C. UNITED'S NEW DEFINITION STILL LIMITS PATHWAYS FOR WOMEN IN NON-HETEROSEXUAL RELATIONSHIPS TO RECEIVE COVERAGE UNDER PLANS SUBJECT TO MEDICAL NECESSITY REVIEW.

In October of 2023, the American Society for Reproductive Medicine ("ASRM"), a reproductive medicine organization in the United States, revised its definition of infertility. (*Id.* at 55-56.) In response, ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████. (*Id.* at 50-57; Ex. 49: Flores Dep. 48.) United applied ██████████████████████████████████████████████. (Ex. 42: Dlugi Dep. 27-28, 33.) For ASO plans, in or after ██████████████, if an existing client-sponsor initiated a conversation with United about the definition of infertility, or if the plan came up for routine renewal review, United would present that sponsor with the option to adopt, exclude, or modify the new definition, as they would for new sponsors. (*Id.* at 51-55; Ex. 44: Minkler Dep. 24-26, 33.) But again, there is no evidence that any sponsor modified the definition to remove the TDI requirement. (Ex. 44: Minkler Dep. 23, 33.) These ASO plans can be filtered as described above. (*See supra* Pt. II.B.)

That said, United's new definition did not solve the problem or actually mirror ASRM's definition. The ASRM October 2023 definition of infertility reads:

"Infertility" is a disease, condition, or status characterized by any of the following:

7

• The inability to achieve a successful pregnancy based on a patient's medical, sexual, and reproductive history, age, physical findings, diagnostic testing, or any combination of those factors.

• The need for medical intervention, including, but not limited to, the use of donor gametes or donor embryos in order to achieve a successful pregnancy either as an individual or with a partner.

• In patients having regular, unprotected intercourse and without any known etiology for either partner suggestive of impaired reproductive ability, evaluation should be initiated at 12 months when the female partner is under 35 years of age and at 6 months when the female partner is 35 years of age or older.

Nothing in this definition shall be used to deny or delay treatment to any individual, regardless of relationship status or sexual orientation.

(Ex. 6: ASRM Definition, RDEMPSEY2576-2579, RDEMPSEY2576.) Despite the fact that ASRM " ███████████████████████████████ (Ex. 42: Dlugi Dep. 57) ██████ ██████████████████████████████████████ "[t]he need for medical intervention, including, but not limited to, the use of donor gametes or donor embryos in order to achieve a successful pregnancy either as an individual or with a partner." (Ex. 6: ASRM Definition, RDEMPSEY2576-2579, RDEMPSEY2576, *see* Ex. 42: Dlugi Dep. 86-87.) Rather, United's belief is that ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████ (Ex. 42: Dlugi Dep. at 87; *see e.g.* Ex. 8: United Medical Policy for Infertility (May 1, 2025), UHC5278-5302, UHC5280.)

Regardless, women in non-heterosexual relationships still face an unfair burden. ████████ ██████████████████████████ (Ex 42: Dlugi Dep. 24-25, 30.) ████████ ██████████████████████████████████████████ ██████ (*Id.* at 24-25.) ████████████████████████████ (*Id.* at 30.) ██████ ██████████████████████████████████████████ ██████████████████████████████ (*Id.* at 118-119; Ex. 2: Medical

8

Necessity Guideline, UHC2189-2236.)

███████████████████████████████████████████████████████████

███████████████████████████████████████. (Ex. 42: Dlugi Dep. 10-11.) ████████████

███████████████████████████████████████████████████ (*Id.* at 114-120.) █████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ (*Id.* at 119-120.) As Dr. Dlugi testified:

A. ██████████████████████████████████████████████
   ██████████████████████████████.

Q. ██████████████████████████████████████████████
   ██████████████████████████████████████████████
   ██████████████████████████████████████████████
   ████████████████████████

[objection interposed]

A. ████████████████.

Q. ██████████████████████████████████████████████
   ████████████

A. ███.

Q. ████████████████████████

A. ██████████████████████.

(*Id.* at 120.)

**D. UNITED'S DEFINITION OF INFERTILITY REQUIRED MS. DEMPSEY TO PAY FOR INEFFECTIVE AND UNNECESSARILY BURDENSOME THERAPEUTIC DONOR INSEMINATION.**

Ms. Dempsey is a woman in a non-heterosexual relationship. (Declaration of Reyna Dempsey ("Dempsey Decl.") ¶ 3.) When she and her wife wanted to start a family, they sought coverage for IVF through United. (*Id.* at ¶¶ 5-6; Ex. 46: Dempsey Letter to GEICO, RDEMPSEY189-190.) United denied coverage because Ms. Dempsey did not meet United's original definition of infertility quoted above. (Ex. 9: Dempsey Insurance Communications, RDEMPSEY20-109, 48.) Because Ms. Dempsey

9

was in a same-sex relationship, she needed to undergo twelve months of TDI in order to become eligible to meet United's original definition of infertility. (*Id.*) Yet, as Dr. Dlugi confirmed:

- ████████████████████████████████████████ (Ex. 42: Dlugi Dep. 105-106.)

- IUI has been shown to have relatively low success rates depending on a variety of factors, particularly with older women, and a high likelihood of multiples births. (Ex. 42: Dlugi Dep. 112; Ex. 10: Optum White Paper, "Closely managing infertility yields better outcomes, lower costs," RDEMPSEY2580-2586, 2583 (quoting Dr. Dlugi).)

- While IVF is more expensive than IUI, costs for both procedures tend to even out when IVF is compared to multiple IUI cycles. (Ex. 42: Dlugi Dep. 114; Ex. 10: Optum White Paper, "Closely managing infertility yields better outcomes, lower costs," RDEMPSEY2580-2586, 2583.)

- ████████████████████████████████████████ ████████████████ (*Id.* at 120.)

- Ovarian stimulation / IUI cycles should generally not exceed four before other treatment options are considered. (*Id.* at 114; Ex. 10: Optum White Paper, "Closely managing infertility yields better outcomes, lower costs," RDEMPSEY2580-2586, 2583.)

Nonetheless, United's ████████████████████████████. (Ex. 3: GEICO SPD, UHC149-289, 196.) ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ (Ex. 42: Dlugi Dep. 108-109, 113.) But these categories were inapplicable to Ms. Dempsey and, notably, Dr. Dlugi's quote in Optum's White Paper does not make this distinction. (*See* Ex. 10: Optum White Paper, "Closely managing infertility yields better outcomes, lower costs," RDEMPSEY2580-2586, 2583.) Even Ms. Dempsey's doctor explained that Ms. Dempsey had undergone more IUI cycles than the ASRM recommends. (Ex. 9: Dempsey Insurance Communications, RDEMPSEY20-109, 48.)

So, in April of 2021, Ms. Dempsey began IUI cycles while continuing to seek coverage from United and administratively appeal United's decisions. United denied coverage and denied Ms. Dempsey's appeals. (Answer ¶¶ 40, 41, 45, 49, ECF No. 77; Ex. 9: Dempsey Insurance

Case No. 5:24-cv-00425-EKL                    PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Communications, RDEMPSEY20-109.) In connection with each procedure, Ms. Dempsey also attended related medical appointments for which she paid out-of-pocket, including but not limited to appointments for blood tests, ultrasounds, and trigger shots. (Ex. 47: Excerpt of Pl.'s Interrog. Resp., No. 1.) She was also required to take time off from work and incur travel expenses in connection with each IUI procedure. (*Id.* at No. 2.)

Relatedly, despite United's recent claim in this litigation that TDI can be conducted at home to not incur costs, United's policy is clear ████████████████████████████████. (Ex. 20: Fertility 101 Guide for UnitedHealthcare, UHC4526-4538, 4534 ████████████████████ ████████); *see* Ex. 44: Minkler Dep. 67 (████████████████████████████ ████████████████████████████████████████).) In fact, Ms. Dempsey's case manager at United explicitly stated in a voicemail to Ms. Dempsey that TDI must be medically supervised. (Ex. M2: Voicemail from Medlin to Dempsey; Ex. 48: Medlin Dep. 54-56; Ex. M1: Call Checklist, UHC6490-6513, 6509.) This case manager even testified that the "medically supervised" terminology she used came from her training when onboarding with United. (Ex. 48: Medlin Dep. 55-56, 75-77.) Similarly, United requires ████████████████████████ ████████ (Ex. 3: GEICO SPD, UHC149-289, 227.) In fact, United refused to credit Ms. Dempsey's 2020 ████████████████ because the doctor that made that diagnosis was not within United's network for fertility-approved doctors. (Dempsey Decl. ¶ 4.) And as to the election of IUI, as Dr. Dlugi testified, ████████████████████████████████ (Ex. 42: Dlugi Dep. 109-110.)

In any event, after Ms. Dempsey's eighth IUI cycle and over twenty months after starting IUI, United approved coverage for subsequent infertility services based on a "new" ████████████ ████████ made by one of its designated providers. (Dempsey Decl. ¶ 10.) Ms. Dempsey started IVF, and she and her wife welcomed a baby one year later. (Dempsey Decl. ¶¶ 11-12.) Unfortunately, however, Ms. Dempsey's situation is not an isolated occurrence given United's definition of infertility.

**E.  UNITED'S DATA DEMONSTRATES THAT NUMEROUS CLASS MEMBERS FACED SIMILAR ISSUES AS MS. DEMPSEY AND WOULD MAKE CLASS ADJUDICATION MANAGEABLE.**

To date, United has produced a fraction of the relevant data it possesses. The data produced to

11

date consists of claims, prior-authorization, and appeal data for ASO plans from 2019 to 2025. (Ex. 50: Initial ASO Claims Data; Ex. 51: Supplemental ASO Claims Data; Ex. 52: Initial Prior Authorization Data; Ex. 53: Corrected ASO Prior Authorization Data; Ex. 54: Supplemental ASO Prior Authorization Data; Ex. 55: ASO Appeals Data;[4] Ex. 56: May 8 Letter from Counsel.) ███████████████ ███████████████████████████████████ ████████████████████████████████ (Ex. 56: May 8 Letter from Counsel; Ex. 57: Expert Report of Dr. Jonathan F. Fox ("Fox Report") at 6; *see also* Ex. 8: United Medical Policy for Infertility, UHC5278-5302, UHC5280-5284 (████████████████████████ ██████████████.) ███████████████████████████████████████ ███████████████████████████████████████████████████ (Ex. 50: Initial ASO Claims Data; Ex. 51 Supplemental ASO Claims Data.) United's ████████ ███████████████████████████████████████████████ ████████████████████████████████ (Ex. 52: Initial ASO Prior Authorization Data; Ex. 53: Corrected ASO Prior Authorization Data; Ex. 54: Supplemental ASO Prior Authorization Data.) United has also produced data on ████████████████████████████ ██████ (Ex. 55: ASO Appeals Data.) As to fully insured plans, the parties are negotiating a stipulation under which United would produce a sample of data on fully-insured plans. (Perez Decl. ¶ 5; Ex. 46: May 8 Letter from Counsel.) Further, United has represented through counsel that it possesses names, addresses, and email addresses for all plan members. (Ex. 56: May 8 Letter from Counsel.) United's case managers also maintain a █████████████████████████████████ ████████████████████████████████ (Ex. 48: Medlin Dep. 17, 31-32, 46-47, 65; *see e.g.,* Ex. M1: Call Checklist, UHC6490-6513, 6496-97.)

---

[4] These manually-filed exhibits do not have Bates numbers but do have the following file names: prod_LGL_DEMPSEY_CLAIMS_20250813.xlsx (Ex. 50), prod_LGL_DEMPSEY_CLAIMS_2019_2025.xlsx (Ex. 51), prod_HCE_MI_Dempsey_United_Prior_Auth_Reports.xlsx (Ex. 52), prod_HCE_MI_Dempsey_United_Prior_Auth_Reports_20250814.xlsx (Ex. 53), prod_HCE_MI_Dempsey_Prior_Auth_Reports_2019_2025.xlsx (Ex. 54), and 2025.10.20 Appeals Data Production.xlsx (Ex. 55).

12

Plaintiff's expert, Dr. Jonathan F. Fox—an expert in healthcare planning and statistical analysis who holds a Ph.D. in Economics—has analyzed United's data. (Ex. 57: Fox Report at 3-9.) Dr. Fox reviewed claims and prior authorization data for plans that United's counsel described as ██████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████" (Ex. 56: May 8 Letter from Counsel at 2-3, 6; *see* Ex. 57: Fox Report at 3-9.) Using this data, Dr. Fox estimates ████████████████████████ ██████████████████████████████████████████████████████████████████████████████. (Ex. 57: Fox Report at 8, 9, 17, 18, 20.) ████████████████████████████████████████ ██████████████████████████████ (*Id.* at 9.)

This is hardly surprising given that United enrolled approximately 29.65 million members in its commercial health insurance plans in 2025. *See* United Health Group Q4 2025 Form 10-K at 30, https://www.unitedhealthgroup.com/content/dam/UHG/PDF/investors/2025/UNH-Q4-2025-Form-10-K.pdf (last accessed May 28, 2026). Indeed, Ms. Dempsey's assigned United case manager, one of up to twenty case managers, testified that working with same-sex couples on infertility coverage issues is a regular part of her job and that she has worked with dozens of same-sex couples over the six to eight years she has been in the job. (Ex. 48: Medlin Dep. 18, 57-60.) And as another United plan member has explained, "I am in a same-sex relationship with my wife…. Because United denied my request for coverage of IUI and related services, I was required to pay out-of-pocket for therapeutic donor insemination in order to attempt to meet United's definition of infertility." (Declaration of Eva Neczypor, ¶¶ 5, 9.)

## III.    ARGUMENT

A class action "saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion[.]" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)) (cleaned up). A court must conduct a "rigorous analysis" to confirm that a plaintiff has met Rule 23's requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). But a plaintiff need only "prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are

13

satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022). That is, it is enough to simply show that it is more likely than not that a proposed class satisfies Rule 23's requirements. *See Lopez Alfaro v. Blanche*, No. 25-1828, 2026 WL 1091576, at *1 (9th Cir. Apr. 22, 2026) (explaining that preponderance of the evidence means "slightly greater than fifty percent"). Here, Plaintiff has more than met this standard.

### A. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a).

#### 1. The Proposed Class is Sufficiently Numerous.

A class must be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). While the numerosity requirement is fact-specific and "imposes no absolute limitations," courts have generally found numerosity satisfied when a class includes at least forty members. *A. B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022) (quoting *Gen. Tel. Co. of the NW., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)). "In analyzing numerosity a court may make common-sense assumptions and reasonable inferences." *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (internal quotations omitted).

While some circuits require an "administratively feasible" way to identify or "ascertain" class members, the Ninth Circuit does not. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), abrogated on other grounds as recognized by *Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026); *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) ("The district court erred when it held that the class could not be certified because it was not 'ascertainable.'"); *Silver v. Pa. Higher Educ. Assistance Agency*, No. 14-cv-00652-PJH, 2020 WL 607054, at *8 (N.D. Cal. Feb. 7, 2020) ("[P]laintiff is correct that the Ninth Circuit recognizes that an ascertainability showing is not required under Rule 23(a).").

Here, it is more likely than not that the proposed class is sufficiently numerous. Based on United's own data, Plaintiff's expert estimates there are well over forty Class Members. (*See supra* Pt. II.E (discussing Plaintiff's expert's estimate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮); *see Chinitz v. Intero Real Est. Servs.*, No. 18-cv-05623-BLF, 2020 WL 5653153, at *2 (N.D. Cal. Sept. 23, 2020) ("Accepting the process and data relied upon by Plaintiff's expert and making common-sense assumptions and reasonable inferences established numerosity."). Moreover, a United

14

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

case manager who is just one of up to twenty such case managers, testified to working with dozens of same-sex couples seeking infertility services. (*See supra* Pt. II.E.) This makes sense given United's substantial enrollment population. (*See supra* Pt. II.E.) And all of that aside, "if joinder were possible it would be ill-advised and difficult to achieve because of the sensitive nature of the claims" and nationwide scope of the proposed class. *Flack v. Wis. Dep't of Health Servs.*, 331 F.R.D. 361, 368 (W.D. Wis. 2019). Numerosity is satisfied.

### 2.   The Proposed Class Shares Common Questions of Law and Fact.

The commonality inquiry asks whether there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The requirement is "construed permissively," and all questions need not be common. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). So long as there is "even a single common question," commonality exists even where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class[.]" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (citations omitted). Notably, the Ninth Circuit has held that the commonality requirement is satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Powers v. McDonough*, 163 F.4th 1162, 1185 (9th Cir. 2025). That is the situation here.

Indeed, this lawsuit challenges United's system-wide policy and practice of imposing its definition of infertility on those seeking fertility services under the ASO and fully-insured plans described above. (*See supra* Pt. II.B, C.) And that affects all Class Members because they are women in non-heterosexual relationships who sought infertility benefits through plans where meeting United's definition of infertility was a prerequisite to coverage. (*See supra* Pt. II.A.) This gives rise to common factual or legal questions, including:

- Whether United's definition of infertility imposes a greater burden on women in non-heterosexual relationships than other plan members;
- Whether United's plan design for plans containing United's definition of infertility is discriminatory; and
- Whether United's conduct violates Section 1557.

15

Commonality is satisfied. See e.g., *Berton v. Aetna Inc.,* No. 23-cv-01849-HSG, 2025 WL 3654087, at *5 (N.D. Cal. Dec. 17, 2025) ("Common questions of law and fact include whether Defendants' Definition of Infertility discriminated based on sex, including sexual orientation and gender identity, in violation of Section 1557 of the ACA.").

### 3. Plaintiff is Typical of the Proposed Class.

The class representative's claims must be typical of those of the potential class members. Fed. R. Civ. P. 23(a)(3). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Parsons*, 754 F.3d at 685 (internal quotations and brackets omitted). Typicality does not mean that the class representative's claims must be identical to those of class members. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). Rather, typicality exists if the class representative's claims are "reasonably coextensive with those of absent class members[.]" *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 969-70 (9th Cir. 2019) (internal quotations omitted).

Here, Ms. Dempsey's claim arises under Section 1557, as do the claims of all Class Members. (*See supra* Pt. II at 2.) Like Ms. Dempsey, all are women in non-heterosexual relationships who sought infertility benefits under their plans with United. (*See supra* Pt. II.E.) And like Ms. Dempsey, all had to meet United's definition of infertility to have infertility services covered. (*See supra* Pt. II.B, C, E.) Ms. Dempsey's claims are more than reasonably coextensive with the Class Members' claims. *See e.g., Parsons,* 754 F.3d at 686 (finding typicality where "each of the named plaintiffs is similarly positioned to all other [class members] with respect to a substantial risk of serious harm resulting from exposure to the defendants' policies and practices governing health care."); *Berton*, 2025 WL 3654087, at *5. Typicality is satisfied.

### 4. Plaintiff and Her Counsel are Adequate.

The class representative and class counsel must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4), (g)(1), (4). As to the class representative, the inquiry focuses on whether she has any conflict of interest with other class members and whether she will "prosecute the action vigorously on behalf of the class[.]" *Ellis*, 657 F.3d at 985. Here, Ms. Dempsey has no conflicts with and has and will continue to prosecute the action vigorously on behalf of the Class. (*See* Dempsey

16

Decl. ¶¶ 14-16; Perez Decl. ¶ 2.) As Ms. Dempsey has explained:

> I have worked with my lawyers throughout this litigation to respond to United's requests. I have spent considerable time searching for and providing documents and am willing to be deposed. I also attended mediation in August of 2025, which was unsuccessful. I am committed to this litigation, and to doing what I can, including by going to trial, to obtain relief for all people like me who suffered because of United's discriminatory policy and practice[.] I am not aware of any conflicts of interest with other class members[.] This case is important to me and the LGBTQ+ community. People in same-sex relationships deserve infertility services to start a family in the same ways people in heterosexual relationships are provided. It is unfair, dangerous and discriminatory to require queer people to suffer through unnecessary and costly procedures to receive medical coverage to start a family.

(Dempsey Decl. ¶¶ 14-16.)

As to the adequacy and appointment of class counsel, in addition to considering whether they will "fairly and adequately represent the interests of the class[,]" Fed. R. Civ. P. 23(g)(4), a court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1).

Here, proposed Class Counsel are adequate. The law firm of Nichols Kaster ("NK") is a leader in plaintiff-side civil litigation, with offices in San Francsico and Minneapolis, and a nation-wide practice. (Declaration of Anna P. Prakash ("Prakash Decl.") ¶¶ 2-6; Ex. A: NK Firm Resume.)[5] The firm has been lead or co-lead counsel on hundreds of class and collective actions, frequently achieves class certification in both the litigation and settlement context, and has considerable experience in healthcare-related litigation and civil rights, as well in the Ninth Circuit. (Prakash Decl. ¶¶ 2-6; Ex. A: NK Firm Resume.) *See e.g., Vaughn v Tesla, Inc.*, Case No. RG17882082, 2024 WL 2786025 (Alameda Cty. Sup. Ct. May 17, 2024) (certifying class and appointing NK, including Matthew

---

[5] Exhibit A is attached to the Prakash Decl.

Helland, class counsel); *Oman v. Delta Air Lines, Inc.*, No. 15-cv-00131-WHO, 2023 WL 6226369 (N.D. Cal. Sept. 22, 2023) (same); *DeLuca v. Farmers Ins. Exch.*, No. 17-cv-00034-EDL, 2018 WL 1981393 (N.D. Cal. Feb. 27, 2018) (same); *Ganci v. MBF Inspection Servs., Inc.*, 323 F.R.D. 249 (S.D. Ohio 2017); *Cervantez v. Celestica*, 253 F.R.D. 562 (C.D. Cal. 2008) (same); *Fain v. Crouch*, 342 F.R.D. 109 (S.D. W. Va. 2022) (certifying class in ACA case and appointing NK, including Anna Prakash, class counsel); aff'd sub nom. *Kadel v. Folwell,* 100 F.4th 122 (4th Cir. 2024), judgment vacated sub nom. on other grounds *Crouch v. Anderson*, 145 S. Ct. 2835 (2025); *Delessert v. Kaiser Found. Health Plan, Inc.*, No. 2:24-CV-02087-JNW, 2025 WL 2481235, at *1 (W.D. Wash. Aug. 28, 2025) (denying motion to dismiss ACA claim in case litigated by Ms. Prakash of NK); *Rasin v. Cigna Health & Life Ins.*, No. 2:25-cv-00407-CDS-DJA, 2026 WL 674493 (D. Nev. Mar. 10, 2026) (denying, in part, motion to dismiss ACA claim and granting leave to amend in case litigated by Ms. Prakash at NK); *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144 (9th Cir. 2020) (reversing order dismissing case in case argued by Ms. Prakash at NK); *Taylor v. Tesla, Inc.*, 104 Cal. App. 5th 75 (2024), as modified (Aug. 30, 2024) (affirming denial of defendant's motion in case argued by Mr. Helland); *McKeen-Chaplin v. Provident Savings Bank*, *FSB*, 862 F.3d 847 (9th Cir. 2017) (remanding for judgment in the plaintiffs' favor in case argued by Mr. Helland); *Ray v. Cnty. Of Los Angeles*, 935 F.3d 703 (9th Cir. 2019) (finding for plaintiff in case argued by Mr. Helland); *Ray v. Los Angeles Cnty. Dep't of Public Social Servs.*, 52 F.4th 843 (9th Cir. 2022) (same).

The California Civil Rights Law Group ("CCRLG") is a leading plaintiff-side civil rights firm with offices in Southern and Northern California that is dedicated to harassment, discrimination, retaliation, and related cases. (Declaration of Julianne K. Stanford ("Stanford Decl.") ¶ 3; Declaration of Kira Brekke ("Brekke Decl.") ¶ 8.) CCRLG has litigated hundreds of cases in California and has achieved some of the largest discrimination verdicts in the country, including a $136.9 million verdict in a race harassment case against Tesla involving use of the N-word. *Owen Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809 (N.D. Cal. 2022). In *Goodwin et al. vs. The Regents of the University of California*, CCRLG represented five employees of color who claimed race discrimination and harassment, resulting in a $5,7000,000 settlement. *See* No. 22STCV22330 (Los Angeles Cnty. Sup. Ct. Dec. 16, 2025) (*See* Brekke Decl. ¶ 13; Stanford Decl. ¶ 3.) And more than 75% of the CCRLG's active matters

involve representative or multi-plaintiff litigation. (Stanford Decl. ¶ 14.) Julianne Stanford is CCRLG's managing partner and has litigated matters through all stages of proceedings, with an exclusive focus on civil rights and related cases. (*Id.* at ¶¶ 3-6.) Kira Brekke is also an attorney at CCRLG, whose experience includes representing plaintiffs across California in civil rights and discrimination cases. (Brekke Decl. ¶¶ 4, 11.) She, too, has litigated numerous multi-plaintiff cases. (*Id.* ¶ 13.)

Additional information about each of the lawyers and firms proposed as Class Counsel is available in the accompanying declarations. (*See* Prakash Decl. ¶¶ 7-19 (discussing Mr. Helland, Ms. Prakash, and Mr. Perez, as well as NK); Ex. A: NK Firm Resume; Brekke Decl. ¶¶ 2-15 (discussing CCRLG, Mr. Organ, and Ms. Brekke); Stanford Decl. ¶¶ 2-14 (discussing CCRLG and Ms. Stanford).

Aside from their experience handling class actions and knowledge of the applicable law, proposed Class Counsel have no known conflicts with and have vigorously prosecuted this action on behalf of the Class over the more than two years since it was filed. (Prakash Decl. ¶¶ 20-25.) CCRLG investigated potential claims in this case after Ms. Dempsey contacted them. (Brekke Decl. ¶ 14.) They thoroughly vetted potential claims and examined relevant documents, including Ms. Dempsey's insurance policy. (*Id.*) They filed a charge of discrimination on behalf of Ms. Dempsey with the EEOC in June of 2023. (*Id.*) From there, CCRLG worked with NK to investigate additional statutory claims and evaluate, with Ms. Dempsey, her willingness and ability to be the Class Representative. (*Id.*) And after filing this case, CCRLG and NK together have successfully defeated United's motion to dismiss, deposed six of United's witnesses, reviewed hundreds of United's documents, negotiated various discovery issues with United, extensively worked with their experts, strategically shaped their theory of class certification, and have incurred over $500,000 in attorneys' fees and paid more than $67,000 in out-of-pocket litigation costs, none of which have been paid or reimbursed. (Prakash Decl. ¶¶ 24-25.) Proposed Class Counsel anticipate both these costs and fees will at least double as the case grows closer to trial, and they are prepared and able to fund this case. (*Id.*) In short, proposed Class Counsel and Ms. Dempsey are adequate.

**B. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(3).**

**1. Common Issues Predominate.**

The predominance inquiry asks whether "the questions of law or fact common to class members

19

predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). A proposed class satisfies the predominance requirement where "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean*, 31 F. 4th at 663-64 (quoting *Tyson Foods*, *Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). And because the common question that predominates must relate to a central issue in a plaintiff's claim, courts examine the elements of a claim when evaluating predominance. *Olean*, 31 F. 4th at 665 (quoting *Wal-Mart*, 564 U.S. at 349-50; *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). To prove liability under Section 1557 based on sex discrimination, a plaintiff must show: "(1) the defendant is a healthcare program that receives federal financial assistance; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination in the provision of healthcare services; and (3) this treatment occurred on the basis of sex." *Berton v. Aetna Inc.*, No. 23-cv-01849-HSG, 2024 WL 869651, at *3 (N.D. Cal. Feb. 29, 2024).

Here, common questions predominate. First, whether United is a healthcare program that receives federal financial assistance is a question about United as an entity, not any specific Class Member. Thus, that question can be answered the same way for every Class Member based on common evidence or admissions about the nature of United's business and whether it receives federal funds. Second, whether Class Members were subjected to discrimination with respect to coverage for infertility services is also a class-wide issue. Again, the question on the merits will be whether United's definition of infertility is discriminatory. Because that definition does not vary in any material way in the plans at issue, this question can be decided for all Class Members at once. Third, the definition of infertility is substantially the same in all the plans at issue. Whether that definition constitutes exclusion, denial, or discrimination on the basis of sex is a question specific to the definition and not any one class member. And it is undisputed that sexual orientation discrimination is sex discrimination. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 664 (2020).

United will undoubtedly argue that there are other questions that are not capable of class-wide resolution. "Predominance is not, however, a matter of nose-counting." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). Courts give "more weight" to "questions apt to drive the resolution of the litigation[.]" *Id.* So even if certain matters may need to be addressed individually, such

20

as out-of-pocket costs or individualized defenses, predominance is still satisfied where the central liability issues are common and predominating. *Tyson Foods*, 577 U.S. at 453; *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) ("Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof.") (emphasis in original, brackets and quotations omitted). And here the elements of the ACA claim are most apt to drive resolution of the litigation. Indeed, United's definition of infertility is at the core of this case and part and parcel of evaluating whether Plaintiff has proven the elements of a sex discrimination claim under Section 1557.

In any event, as to damages, Dr. Fox has explained ███████████████████████ ██████████████████████████████████████████████████████. (Ex. 57: Fox Report at 21.) Specifically, ████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████ (*Id.*) This is sufficient to show predominance. *See Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1025-29 (9th Cir. 2024), cert. denied, 145 S. Ct. 1308 (2025) (holding that a showing that damages *could* be calculated on a classwide basis, even where such calculations have not yet been performed is sufficient at the class certification stage.).

### 2. A Class Action is the Superior Method of Resolving this Case.

Courts examine four factors to determine superiority: (1) the class members' interests in controlling separate litigation; (2) the extent and nature of any existing litigation by class members concerning the controversy; (3) the desirability of concentrating the litigation in one forum; and (4) likely difficulties in managing a class action. Fed. R. Civ. Proc. 23(b)(3)(A)–(D).

Here, proposed Class Counsel is unaware of any Class Member who is interested in controlling separate litigation or who is litigating an existing case concerning this controversy. (Prakash Decl. ¶¶ 20-21.) "Concentration of this litigation in this forum promotes efficiency and avoids inconsistent adjudication." *In re NVIDIA Corp. Sec. Litig.*, No. 18-cv-07669-HSG, 2026 WL 821418, at *9 (N.D. Cal. Mar. 25, 2026). And proposed Class Counsel does not anticipate any manageability issues. (Prakash Decl. ¶ 22.) That said, United is likely to argue that identifying absent Class Members and

providing them notice will prove unmanageable. The record and applicable law refute this argument.

First, United has names, addresses, and email addresses for all plan members, as well as the ability to identify which ASO plans contain the relevant language at issue. Further, United's claims data lists the sex of members and whether they have spousal dependents. And for at least some members, United has data on a spouse's gender. Given this, both identification and email notice to many—if not the majority—of Class Members is possible. Regardless, even in the manageability context, administrative feasibility is not a prerequisite to class certification. *See Moreno v. JCT Logistics, Inc.*, No. ED-cv-172489-JGB-KKX, 2019 WL 3858999, at *17 (C.D. Cal. May 29, 2019).

Second, Plaintiff's proposed notice method discussed below permits notice recipients to self-identify as Class Members, which is allowable. *See Nolen v. PeopleConnect, Inc.*, No. 20-cv-09203-EMC, 2023 WL 9423286, at *24 (N.D. Cal. Dec. 14, 2023); *In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2017 WL 235052, at *21 (N.D. Cal. Jan. 19, 2017) (granting certification where class members would have to self-identify and stating that "[p]ost-judgment claims forms and other tools can be used to allow defendants to test an absent class member's purported entitlement to damages and to appropriately apportion damages between class members.").

Third, there is no requirement that all class members receive actual notice to be included in a class. *Gessele v. Jack in the Box Inc.*, 174 F.4th 1108, 1128 (9th Cir. 2026) ("Neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member.") (brackets and citation omitted). Rather, all Rule 23 requires is "the best notice that is practicable under the circumstance, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). As explained below, Plaintiff's proposed notice plan meets these requirements.

For all of these reasons, a class action is the superior method for resolving this dispute.

**C. THE COURT SHOULD APPROVE PLAINTIFF'S PROPOSED NOTICES AND NOTICE PLAN AND ORDER UNITED TO PRODUCE INFORMATION NECESSARY TO FACILITATE NOTICE.**

Given the foregoing, Plaintiff proposes three forms of notice: email, publication, and a long form notice posted on a webpage maintained by a third-party class administrator. These forms of notice are permissible. Fed. R. Civ. P. 23(c)(2)(B) ("The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."); *see Roes, 1-2 v. SFBSC Mgmt.,*

22

*LLC*, 944 F.3d 1035, 1047 (9th Cir. 2019) ("Publication notice has long been used as a supplement to other forms of notice[.]").

As to the class administrator, Plaintiff proposes soliciting bids from three reputable vendors and selecting the most cost-effective option that is capable of carrying out this notice plan. The class administrator would be responsible for creating a website on which the long form notice is posted, emailing the email notice, and handling any phone calls or communications from people responding to self-certify or to any of the notices, all of which are attached as Exhibits 58-61.

As to email and long form notices, Plaintiff proposes the notices attached as Exhibits 59 and 60. Both meet the requirements of Rule 23. Specifically, they are clear, concise, and states "in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). (*See* Ex. 59; 60.) The notices generally follow templates designed by the Notice Project, led by a nonprofit organization, the Impact Fund, to simplify and clarify class notices. *See* https://noticeproject.org/about (last accessed May 27, 2026); *see e.g., Sparkman v. Comerica Bank*, No. 2:24-cv-01206-DJC-CKD, 2025 WL 1192411, at *2 (E.D. Cal. Apr. 24, 2025) (approving notice based on Notice Project template); *United States ex rel. Terry v. Wasatch Adv. Grp., LLC*, No. 2:15-cv-00799-KJM-SCR, 2024 WL 4582295, at *5 (E.D. Cal. Oct. 25, 2024) ("To the parties' credit, those notices employ unusually clear and straightforward language to describe this case, the proposed settlement, the class members' options and the other information required by Rule 23(c)(B)(i)." (referencing notices filed in that case at ECF No. 544-2, pp. 62-74)).

Further, the email notice will be directed to those who are most likely to be in the Class; namely, those enrolled in plans that United administered and that United reasonably believes provided infertility benefits under a design similar to GEICO's during the statutory period. United has already identified members who are enrolled in such plans within the ASO universe. For fully-insured plans, the notice will be directed to members in plans with infertility benefits in states without a mandate requiring a

different definition of infertility. Within the identified ASO plan, and potentially the fully-insured plans, the distribution list could be further narrowed by excluding (1) members designated in the data as male; and (2) members designated in the data as female with a spousal beneficiary who is designated in the data as male. So, as part of this plan, Plaintiff requests that the Court order United to produce email addresses for plan members who fit these criteria from January 24, 2020 through the date the Court grants class certification. *Deatrick v. Securitas Sec. Servs. USA, Inc.*, No. 13-cv-05016-JST, 2014 WL 5358723, at *5 (N.D. Cal. Oct. 20, 2014) ("Courts routinely require defendants to produce the contact information of putative class members.").

The email notice and long form notice also provide a link to the administrator's website, allowing recipients to self-identify as Class Members. (*See* Ex. 61: Proposed Self-Identification Form.) This, too, is permissible. *See e.g., Bor Pha v. Yia Yang*, No. 2:12-cv-01580-TLN, 2014 WL 654559, at *5 (E.D. Cal. Feb. 19, 2014) (finding a class action manageable where "members of the subclass can easily self-identify upon class notice[.]"); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 239 (N.D. Cal. 2014) ("This case, like others, will require at least some potential class members to respond to a general notice and then assert their class membership by attesting to the fact that they purchased the challenged products.").

As to publication notice, Plaintiff proposes the notice attached as Exhibit 58 and proposes that the parties meet and confer about which publications are likely to have wide LGBTQ+ readership and would allow cost-effective placement of notice and agree on affinity groups that could also place notice or distribute it to their members. *See e.g., Berton*, 2025 WL 3654087, at *10 (approving settlement notice where "[a]ds will also be placed in publications whose target audience is the California LGBTQ+ community[.]"). Like the email notice, the publication notice provides a link to the administrator's website, allowing recipients to self-identify as Class Members. (*See* Ex. 58.)

The parties could then use self-identification forms as a baseline for verifying membership in the Class with United's data. That is, Plaintiff proposes that all people conclusively identified through United's records as falling within the Class and who do not timely and validly opt out will be deemed Class Members. All other people who submit a complete and timely self-certification form will be deemed Class Members unless United's records conclusively disprove they are not Class Members or

24

the parties agree that they are not properly within the Class. Accordingly, if notice recipients wish to be included in the Class and are unsure if United's records conclusively show they are in the Class, they must submit a timely and valid self-certification form. The notices so advise recipients.

Given this process, Plaintiff proposes that the long form, email, and publication notice be posted/distributed on the same day, that the publication notice run for 60 days, and that the exclusion deadline be 60 days thereafter, i.e., 120 days from when the long form and email notices are posted/distributed.

In sum, Plaintiff has proposed a notice plan that allows for a combined approach—individualized notice where reasonable under the circumstances and general notice allowing class members to self-identify. This meets the requirements of due process and supports the manageability of this case as a class action.

## IV. CONCLUSION

For the reasons discuss above, Plaintiff Reyna Dempsey respectfully requests that the Court certify the proposed Class, appoint her Class Representative and her counsel Class Counsel, approve Plaintiff's proposed notices and plan of distribution, and order United to produce all relevant information in their possession, custody, and control necessary to facilitate notice within one month of the Court's order granting class certification.

DATE: May 29, 2026

**NICHOLS KASTER, PLLP**
s/ Ricardo G. Perez
Ricardo G. Perez
**Nichols Kaster, LLP**
**California Civil Rights Law Group**
*Counsel for Plaintiff and the Putative Class*

25